UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| **RYAN D. BURNETT,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. |
| ) | |
| **OCEAN PROPERTIES, LTD.**, ) | |
| ) | |
| Defendant ) | |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Ryan D. Burnett, by and through the undersigned counsel, hereby complains against Defendant Ocean Properties, Ltd. as follows:

## INTRODUCTION

1. This case arises under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, the Maine Human Rights Act ("MHRA"), 5 M.R.S. § 4571 *et seq.*, and the Maine Whistleblower Protection Act ("MWPA"), 26 M.R.S. § 831 *et seq*.

2. This case challenges the Defendant's: (1) unlawful disability discrimination and retaliation against Plaintiff in violation of the ADA and the MHRA; (2) disability discrimination in a place of public accommodation; and (3) unlawful whistleblower retaliation against Plaintiff in violation of the MWPA.

## THE PARTIES

3. Plaintiff Ryan D. Burnett ("Mr. Burnett") is an individual residing in the Town of Eliot, County of York, and State of Maine.

4. Defendant Ocean Properties, Ltd. is a duly authorized Maine business corporation that operates numerous hotels including the Marriott Sable Oaks in South Portland.

5. At all times herein relevant, Mr. Burnett was an employee of AmeriPort, LLC, which is, or at all times herein relevant was, an integrated enterprise with its parent company, Ocean Properties, Ltd.

6. AmeriPort, LLC has been administratively dissolved in the State of New Hampshire and therefore is no longer authorized to do business in the State of Maine.

7. Accordingly, Plaintiff's employer and the entity that owned and operated the hotel in which Plaintiff worked was Ocean Properties, Ltd. (hereinafter "OPL").

8. OPL has employed more than 500 employees nationwide in each of 20 or more calendar weeks in the current and preceding calendar years.

## JURISDICTION AND VENUE

9. Prior to filing this Complaint, Mr. Burnett filed a charge of discrimination with the Maine Human Rights Commission and the EEOC, and received a notice of right to sue letter pursuant to 5 M.R.S.A. § 4612, sub-§6 and 4622, sub-§1, ¶C, on or about December 28, 2015.

10. Mr. Burnett received a notice of right to sue letter from the EEOC on or about April 5, 2016.

11. Venue is proper in this Court because all of the discriminatory practices alleged herein occurred in the County of Cumberland and State of Maine.

12. The Court has federal question subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331.

## STATEMENT OF FACTS

13. In May of 2009, OPL hired Mr. Burnett to work as a reservation agent in the Portland Marriott call center located at 200 Sable Oaks Drive in South Portland.

14. Mr. Burnett sustained an injury at the age of 14 that left him paralyzed from the T-9 level of his spine, meaning that he no longer had function or sensation below the T-9 vertebra.

15. Mr. Burnett has used a wheelchair for his entire adult life.

16. Mr. Burnett is able to drive to and from work using a truck with specially designed hand controls.

17. Mr. Burnett's truck includes a complex wheelchair lift that enables him to exit the vehicle on his own without assistance.

18. Mr. Burnett is a qualified individual with a disability under both state and federal law.

19. On the very first day of his employment with OPL, Mr. Burnett was unable to access the building. The door beside the wheelchair ramp was locked, and Mr. Burnett had to wheel his chair across the lawn to get in to work.

20. From the early days of his employment, Mr. Burnett reported to the office manager Carol Welch that the building was not accessible. OPL's solution was to give Mr. Burnett a key card to access the door beside the accessible ramp, but the key card often did not work.

21. OPL's maintenance workers sometimes blocked the handicapped spots near the ADA accessible ramp when Mr. Burnett would try to park his truck there; when Mr. Burnett reported this to management, Carol Welch told him she could not control where people park.

22. After a snow storm, Mr. Burnett had a hard time getting his chair through the snow, ice and slush in the parking lot.

23. On at least one occasion, the shoveled path to access the building through the snow was not wide enough for Mr. Burnett's chair to fit through.

24. During one particular snow storm on New Year's Eve, Mr. Burnett arrived to work and the accessible ramp was not shoveled. Mr. Burnett lost one day's pay because he could not get into the building that day.

25. When Mr. Burnett reported this ADA accessibility issue to OPL's human resources department, he was told to park under a canopy in the front of the building if the parking lot was not plowed.

26. However, when Mr. Burnett had parked under the canopy in the past in order to access the building, the hotel manager and/or front desk clerk told Mr. Burnett to move his truck "or it will be towed."

27. As a T-9 paraplegic, Mr. Burnett has no control over bowel and bladder function and therefore has to self-catheterize four to six times per day in order to drain his bladder. This is a process that takes at least 20 minutes to complete, and involves the use of sterile gloves, a catheter, and a duffle bag with supplies.

28. Due to the loss of bowel and bladder function that he experiences, Mr. Burnett was sometimes late to work and would explain to OPL that he was late for "personal" reasons. OPL never requested more information about the reason for Mr. Burnett's lateness.

29. However, an office manager for OPL was critical of Mr. Burnett for taking too long to use the bathroom during his shift. At one point she humiliated Mr. Burnett by asking him: "how long does it take for you to go to the bathroom?"

30. Mr. Burnett suffered from bed sores and other medical issues due to his paralysis, and needed to miss work for doctor's appointments more often than non-disabled employees.

31. OPL unfairly criticized Mr. Burnett for tardiness or absences that were directly related to and caused by his disability, in violation of the ADA.

32. The chair lift in Mr. Burnett's truck often suffered mechanical failures or a blown fuse, which would cause him to be late to or absent from work; OPL held these disability-related absences against Mr. Burnett as well.

33. For instance, in a September 2010 corrective action, OPL wrote that: "Over the past 60 days, July & August, Ryan has been late for his scheduled shifts on numerous occasions," and "Ryan is expected to arrive, on time, for all scheduled shifts.  If Ryan needs to adjust his availability in order to avoid being tardy he should consider this option right away.  Future attendance issues will result in disciplinary action up to and including termination."

34. One such instance of tardiness OPL criticized was on 7/2/10, when Mr. Burnett called out with "chair lift issues."

35. In 2011, OPL told Mr. Burnett that one of his ongoing goals was to "improve attendance."

36. Mr. Burnett received another corrective action on March 25, 2012, which explained that: "Ryan's attendance over the past 60 days has been unacceptable.  Ryan has been late for numerous scheduled shifts."  In this corrective action, OPL was critical of Mr. Burnett for calling out sick on 1/25/2012 and calling out with a "chair issue" on 2/9/2012.

37. OPL wrote Mr. Burnett up again on June 24, 2012 for being "either absent from or late for an unacceptable number of shifts," including "May 7: called out truck trouble," "May 30: called out sick," and a doctor's appointment the following day.

38. Even though Mr. Burnett's absences were often related to his disability or due to mechanical factors beyond his control, OPL wrote in the June 24, 2012 corrective action that: "If Ryan needs to request time off he must do so at least two weeks in advance."

39. In an August 13, 2014 corrective action, OPL was critical of Mr. Burnett for calling out "sick" or "personal" on numerous occasions, most of these pertaining to his disability.

40. In a December 2014 performance review, OPL wrote: "Ryan needs to start arriving on time or alter his availability to [better] suit his personal schedule."

41. Aside from disability-related absences, Mr. Burnett had a record of performance that met or exceeded the standards of his profession for the duration of his employment with OPL.

42. In or around December of 2013, OPL's reservation call center moved to 505 Country Club Drive in South Portland, Maine.

43. OPL assigned Mr. Burnett to work on the second floor of the building.

44. Although Mr. Burnett had already mentioned ADA accessible bathrooms to OPL, when the reservation center moved into the new building, the bathrooms were not ADA compliant.

45. For instance, when OPL moved into the new building Mr. Burnett could not wheel his chair into the bathroom stall.

46. Mr. Burnett reported this ADA accessibility issue, and was subsequently forced to miss several days of work while the bathroom was renovated to comply with the ADA.

47. After the renovation, Mr. Burnett was able to maneuver his wheelchair into a stall, but the toilet, grab bars and restroom sinks still failed to meet the accessibility requirements of the ADA.

48. The entry and exit doors of the new building were also difficult for Mr. Burnett to access.

49. On August 28, 2014, Mr. Burnett contacted Nick Robertshaw, the Office Manager, via email to inform him that the doors were heavy and hard for him to hold open and push a wheelchair through at the same time.

50. Mr. Burnett reasonably requested that the doors be converted to push-button or automatic doors as an accommodation for his disability.

51. OPL ignored Plaintiff's request for a reasonable accommodation and failed to respond to the email.

52. Adding automatic entry to the doors would not have posed an unreasonable hardship for OPL.

53. Mr. Burnett also had difficulty accessing the second floor of the new building when the elevators stopped working.

54. On February 20, 2015, Mr. Burnett arrived at 7:00 a.m. for his shift to find that the elevator was not working.

55. A supervisor determined that Mr. Burnett should be sent home until the situation was resolved.

56. OPL at first refused to pay Mr. Burnett for this time that he lost from work, and then offered to pay him for half of the time (4 hours).

57. In March of 2015, OPL explained that the elevator would be taken out of service for several weeks in May for a scheduled repair.

58. OPL moved Mr. Burnett to a first floor work station for the duration of the repair.

59. During this time, he did not have access to the second floor employee break area.

60. Mr. Burnett arrived for work on May 5, 2015 and discovered that the desk at his temporary first floor work station could not accommodate his wheelchair.

61. During a tour of the area, Mr. Burnett had previously informed OPL that this area would not accommodate his wheelchair, but OPL ignored his complaints.

62. Plaintiff also reported to General Manager Joyce Dawson that the work area was uncomfortably cramped because it was set up to be shared by two employees.

63. OPL repeatedly failed to accommodate Mr. Burnett's disability in violation of the ADA.

64. OPL refused to meaningfully engage in the interactive process with Mr. Burnett regarding his need to be late to or absent from work on occasion due to his disability.

65. OPL failed to make its public accommodations accessible to Mr. Burnett in violation of Title III of the ADA.

66. Based on the above discrimination and retaliation against Mr. Burnett, he had no choice but to leave his employment.

67. OPL constructively discharged Plaintiff from employment as of February 26, 2016.

68. Defendant unlawfully discriminated against Mr. Burnett with reckless indifference to his state and federally protected rights.

69. Defendant's conduct amounted to a willful and knowing violation of Mr. Burnett's state and federally protected rights.

## COUNT I – DISABILITY DISCRIMINATION
## UNDER THE ADA
## (42 U.S.C. § 12101 *et seq*.)

70. Plaintiff repeats the allegations contained in Paragraphs 1 through 69 of his Complaint as if fully set forth herein.

71. At all times herein relevant, Mr. Burnett was a qualified individual with a disability within the meaning of the ADA.

72. OPL engaged in unlawful disability discrimination against Mr. Burnett in violation of the ADA.

73. OPL's stated reasons for disciplining Mr. Burnett were really pretext for disability discrimination.

74. OPL regarded Mr. Burnett as being disabled.

75. Mr. Burnett has a record of a disability.

76. OPL failed to engage in the appropriate interactive process with Mr. Burnett, despite being aware of and taking adverse action against him as a result of his known disability.

77. OPL failed to provide Mr. Burnett with all of the reasonable accommodations that were necessary for his obvious disability in order to perform the essential functions of his job.

78. As a result of Defendant's discriminatory actions, Mr. Burnett has suffered and is entitled to damages, including but not limited to: lost wages and benefits, front pay, compensatory damages including emotional pain and suffering and lost enjoyment of life, attorney's fees, costs and expenses.

WHEREFORE, Plaintiff Ryan D. Burnett requests that the Court award him damages in the form of lost back pay, front pay, compensatory damages, liquidated damages, punitive

damages, attorney's fees, costs and expenses, equitable and injunctive relief, and all other relief afforded to him by law.

### COUNT II – VIOLATION OF TITLE III OF THE ADA
### (42 U.S.C. § 12101 *et seq*.)

79. Plaintiff repeats the allegations contained in Paragraphs 1 through 78 of his Complaint as if fully stated herein.

80. OPL owns and operates a hotel located at 505 Country Club Drive in South Portland that is a place of public accommodation.

81. OPL knowingly and willfully failed to make its hotel accessible to Ryan Burnett.

82. By denying Mr. Burnett, a disabled individual, the equal benefit and use of its premises, OPL engaged in disability discrimination against Mr. Burnett in violation of Title III of the ADA.

WHEREFORE, Plaintiff Ryan D. Burnett requests that the Court award him statutory, compensatory, liquidated, and punitive damages, attorney's fees, costs and expenses, equitable and injunctive relief, and all other relief afforded to him by law.

### COUNT III – RETALIATION UNDER THE ADA
### (42 U.S.C. § 12101 *et seq*.)

83. Plaintiff repeats the allegations contained in Paragraphs 1 through 82 of his Complaint as if fully stated herein.

84. OPL took adverse action against Mr. Burnett in violation for filing a charge of discrimination with the Maine Human Rights Commission while he was still employed.

85. Throughout his employment, OPL retaliated against Mr. Burnett for making multiple reports of ADA violations and requesting accommodations for his disability.

86. As a result of Defendant's retaliatory actions, Mr. Burnett has suffered and is entitled to damages, including but not limited to: lost wages and benefits, front pay, compensatory damages including emotional pain and suffering and lost enjoyment of life, attorney's fees, costs and expenses.

WHEREFORE, Plaintiff Ryan D. Burnett requests that the Court award him damages in the form of lost back pay, front pay, compensatory damages, liquidated damages, punitive damages, attorney's fees, costs and expenses, equitable and injunctive relief, and all other relief afforded to him by law.

## COUNT IV – VIOLATION OF THE MAINE WHISTLEBLOWER PROTECTION ACT
**(26 M.R.S. § 831 *et seq.*)**

87. Plaintiff repeats the allegations contained in Paragraphs 1 through 86 of his Complaint as if fully set forth herein.

88. Mr. Burnett engaged in protected activity within the meaning of the Maine Whistleblower Protection Act by making multiple complaints of ADA violations.

89. Mr. Burnett engaged in protected activity within the meaning of the Maine Whistleblower Protection Act by making a complaint about not receiving full pay for shifts where he was sent home due to problems beyond his control, such as the elevator malfunctions that made his work station inaccessible.

90. Mr. Burnett engaged in protected activity within the meaning of the Maine Whistleblower Protection Act by making a complaint about his May 2015 temporary work station to Joyce Dawson, the general manager.

91. Mr. Burnett further engaged in protected activity by filing a charge of discrimination against OPL with the Maine Human Rights Commission.

92. Mr. Burnett had a reasonable basis for believing that all of the aforementioned conduct and/or OPL's responses to his reasonable accommodation requests amounted to unlawful, illegal disability discrimination.

93. Mr. Burnett engaged in the aforementioned protected activity in good faith.

94. The aforementioned instance of protected conduct bears a causal relationship to the adverse employment action(s) alleged herein.

95. As a result of Defendant's whistleblower retaliation, Mr. Burnett has suffered and is entitled to damages, including but not limited to: lost wages and benefits, front pay, compensatory damages including emotional pain and suffering and lost enjoyment of life, attorney's fees, costs and expenses.

WHEREFORE, Plaintiff Ryan D. Burnett requests that the Court award him damages in the form of lost back pay, front pay, compensatory damages, liquidated damages, punitive damages, attorney's fees, costs and expenses, equitable and injunctive relief, and all other relief afforded to him by law.

## COUNT V – VIOLATION OF THE MHRA
### (5 M.R.S. § 4571 *et seq*.)

96. Plaintiff repeats the allegations contained in Paragraphs 1 through 95 of his Complaint as if fully stated herein.

97. For all of the reasons set forth in Counts I to IV above, unlawful disability discrimination and retaliation have occurred within the meaning of the Maine Human Rights Act.

WHEREFORE, Plaintiff Ryan D. Burnett requests that the Court award him statutory, compensatory, liquidated, and punitive damages, attorney's fees, costs and expenses, equitable and injunctive relief, and all other relief afforded to him by law.

## **JURY TRIAL DEMAND**

Plaintiff Ryan D. Burnett hereby demands a jury trial on all matters so triable under the laws and Constitution of the United States and the State of Maine.

Dated: July 1, 2016                         */s/ Laura H. White*
                                    _____
                                    Laura H. White, Bar No. 4025
                                    *Attorney for Plaintiff*
                                    BERGEN & PARKINSON, LLC
                                    62 Portland Rd., Suite 25
                                    Kennebunk, ME 04043
                                    (207) 985-7000
                                    *lwhite@bergenparkinson.com*