RYAN D. BURNETT,         )
                                    )
        Plaintiff,         )
                                    )
        v.                )       2:16-cv-00359-JAW
                                    )
OCEAN PROPERTIES LTD.   )
and AMERIPORT LLC,       )
                                    )
        Defendants.     )

## ORDER ON MOTION TO DISMISS

A disabled employee brings suit against Ocean Properties Ltd. (Ocean Properties) and AmeriPort LLC (AmeriPort) (collectively, Defendants), alleging violations of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, the Maine Whistleblower Protection Act, 26 M.R.S. § 831 *et seq.*, and the Maine Human Rights Act, 5 M.R.S. § 4571 *et seq.* The Defendants move to dismiss as to Ocean Properties, arguing that Mr. Burnett failed to exhaust his administrative remedies. Similarly, the Defendants move to dismiss as to AmeriPort, arguing that Mr. Burnett failed to file a timely civil complaint against AmeriPort. Further, the Defendants move to strike certain allegations in Mr. Burnett's Amended Complaint as impertinent.

The Court denies the Defendants' motion to dismiss as to both Ocean Properties and AmeriPort because a more detailed factual record is necessary to determine if the two entities share an identity of interest. The Court also denies the

motion to strike, concluding that the allegations may provide relevant background evidence in support of Mr. Burnett's timely claims.

## I. BACKGROUND

### A. Procedural History

On July 1, 2016, Ryan D. Burnett filed a complaint against Ocean Properties. *Compl.* (ECF No. 1). Mr. Burnett alleged in the Complaint that his employer was AmeriPort LLC but that AmeriPort was "an integrated enterprise with its parent company, Ocean Properties, Ltd." *Id.* ¶ 5. He then alleged that AmeriPort had been administratively dissolved and was no longer authorized to do business in the state of Maine. *Id.* ¶ 6. He therefore asserted that his employer was Ocean Properties as it owned and operated the hotel where he worked. *Id.* ¶ 7.

On September 6, 2016, Ocean Properties filed a motion to dismiss the complaint under Rule 12(b)(1) and 12(b)(6), asserting, among other things, that it is not a proper party to the lawsuit. *Def.'s Mot. to Dismiss Pl.'s Compl.* (ECF No. 5). On September 26, 2016, Mr. Burnett filed an amended complaint pursuant to Rule 15(a) in which he added AmeriPort as a party defendant. *First Am. Compl.* (ECF No. 7) (*Am. Compl.*).

On November 25, 2016, the Defendants filed a partial motion to dismiss Mr. Burnett's Amended Complaint, as well as a motion to strike certain allegations in the Amended Complaint. *Defs.' Partial Mot. to Dismiss Pl.'s Am. Compl. and Mot. to Strike Impertinent Allegations* (ECF No. 19) (*Defs.' Mot.*). On December 16, 2016, Mr. Burnett filed a response. *Pl.'s Opp'n to Defs.' Partial Mot. to Dismiss Am. Compl. and*

*Opp'n to Mot. to Strike* (ECF No. 23) (*Pl.'s Resp.*). The Defendants replied on December 30, 2016. *Defs.' Reply in Supp. of Partial Mot. to Dismiss and Mot. to Strike Impertinent Allegations* (ECF No. 24) (*Defs.' Reply*).

## B.     The Alleged Facts[1]

### 1.     The Parties

Ryan D. Burnett is a resident of Eliot, Maine. *Am. Compl.* ¶ 3. Mr. Burnett sustained an injury at the age of fourteen that left him paralyzed from the T-9 level of his spine, meaning that he no longer had function or sensation below the T-9 vertebra. *Id.* ¶ 22. Mr. Burnett has used a wheelchair his entire adult life. *Id.* ¶ 23.

Ocean Properties Ltd. is a duly authorized Maine business corporation that operates numerous hotels nationwide, including the Marriott Sable Oaks in South Portland. *Id.* ¶ 4. Ocean Properties calls its Marriott Sable Oaks property "AmeriPort, LLC," or property number 219. *Id.* ¶ 5. Ocean Properties has employed more than five hundred employees nationwide in each of twenty or more calendar weeks in 2015 and 2016. *Id.* ¶ 16.

### 2.     200 Sable Oaks Drive Call Center

In May 2009, Ocean Properties[2] hired Mr. Burnett to work as a reservation agent in the Portland Marriott call center located at 200 Sable Oaks Drive in South

---

[1]     In considering a motion to dismiss, a court is required to "accept as true all the factual allegations in the complaint and construe all reasonable inferences in favor of the plaintiff []." *Sanchez v. Pereira-Castillo,* 590 F.3d 31, 41 (1st Cir. 2009) (quoting *Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co.,* 267 F.3d 30, 33 (1st Cir. 2001)).

[2]     Mr. Burnett argues that AmeriPort and Ocean Properties are an "integrated enterprise." *Am. Compl.* ¶ 15. Perhaps to drive home this point, Mr. Burnett refers to AmeriPort and Ocean Properties collectively as "OPL," which is the same abbreviation he uses when referring just to Ocean Properties. *Id.* This is particularly unhelpful because in order to determine whether AmeriPort and Ocean

Portland. *Id.* ¶ 21. Mr. Burnett is able to drive to and from work using a truck with specially designed hand controls. *Id.* ¶ 24. Mr. Burnett's truck includes a complex wheelchair lift that enables him to exit the vehicle on his own without assistance. *Id.* ¶ 25. On his very first day of work at the call center, Mr. Burnett was unable to access the building. *Id.* ¶ 27. The door beside the wheelchair ramp was locked, and Mr. Burnett had to wheel his chair across the lawn to get in to work. *Id.*

From the early days of his employment, Mr. Burnett reported to the office manager, Carol Welch, that the building was not accessible. *Id.* ¶ 28. Ocean Properties' solution was to give Mr. Burnett a key card to access the door beside the accessible ramp, but the key card often did not work. *Id.* Ocean Properties' maintenance workers sometimes blocked the handicapped spots near the ADA accessible ramp when Mr. Burnett would try to park his truck there; when Mr. Burnett reported this to management, Carol Welch told him she could not control where people park. *Id.* ¶ 29.

After a snow storm, Mr. Burnett had a hard time getting his chair through the snow, ice, and slush in the parking lot. *Id.* ¶ 30. On at least one occasion, the shoveled path to access the building was not wide enough for Mr. Burnett's chair to fit through. *Id.* ¶ 31. During one particular snow storm on New Year's Eve, the accessible ramp

---

Properties are in fact integrated, the Court must first analyze AmeriPort and Ocean Properties separately, and Mr. Burnett's use of "OPL" for both entities complicates the Court's task. For instance, when Mr. Burnett alleges that "OPL" hired Mr. Burnett, the Court is unable to determine whether Mr. Burnett is referring to AmeriPort or Ocean Properties. *Id.* ¶ 21. The Court assumes for purposes of this motion that "OPL" refers to "Ocean Properties" because this best comports with Mr. Burnett's argument that Ocean Properties was his actual employer. *Pl.'s Resp.* at 3. If the "integrated enterprise" issue persists, the Court encourages Mr. Burnett to distinguish between AmeriPort and Ocean Properties in future filings.

was not shoveled when Mr. Burnett arrived to work. *Id.* ¶ 32. Mr. Burnett lost one day's pay because he could not get into the building that day. *Id.* When Mr. Burnett reported this ADA accessibility issue to Ocean Properties' human resources department, he was told to park under a canopy in the front of the building if the parking lot was not plowed. *Id.* ¶ 33. However, when Mr. Burnett had parked under the canopy previously in order to access the building, the hotel manager and front desk clerk told Mr. Burnett to move his truck "or it will be towed." *Id.* ¶ 34.

As a T-9 paraplegic, Mr. Burnett has no control over bowel and bladder function and therefore has to self-catheterize four to six times per day in order to drain his bladder. *Id.* ¶ 35. This is a process that takes at least twenty minutes to complete, and involves the use of sterile gloves, a catheter, and a duffle bag with supplies. *Id.* Due to his loss of bowel and bladder function, Mr. Burnett was sometimes late to work and would explain to Ocean Properties that he was late for "personal" reasons. *Id.* ¶ 36. Ocean Properties never requested more information about the reason for Mr. Burnett's lateness. *Id.* However, an office manager for Ocean Properties was critical of Mr. Burnett for taking too long to use the bathroom during his shift. *Id.* ¶ 37. At one point she humiliated Mr. Burnett by asking him, "How long does it take for you to go to the bathroom?" *Id.*

Mr. Burnett has suffered from bed sores and other medical issues due to his paralysis and needed to miss work for doctor appointments. *Id.* ¶ 38. Ocean Properties criticized Mr. Burnett for tardiness or absences directly related to and caused by his disability. *Id.* ¶ 39. Additionally, the chair lift in Mr. Burnett's truck

often suffered mechanical failures or a blown fuse, which would cause him to be late to or absent from work; Ocean Properties held these disability-related absences against Mr. Burnett as well. *Id.* ¶ 40. For instance, Ocean Properties criticized Mr. Burnett for tardiness on July 2, 2010, when Mr. Burnett called out with "chair lift issues." *Id.* ¶ 42. In a September 2010 corrective action, Ocean Properties wrote:

> Over the past 60 days, July & August, Ryan has been late for his scheduled shifts on numerous occasions . . . Ryan is expected to arrive, on time, for all scheduled shifts. If Ryan needs to adjust his availability in order to avoid being tardy he should consider this option right away. Future attendance issues will result in disciplinary action up to and including termination."

*Id.* ¶ 41.

In 2011, Ocean Properties told Mr. Burnett that one of his ongoing goals was to "improve attendance." *Id.* ¶ 43. Mr. Burnett received another corrective action on March 25, 2012, which explained, "Ryan's attendance over the past 60 days has been unacceptable. Ryan has been late for numerous scheduled shifts." *Id.* ¶ 44. In this corrective action, Ocean Properties was critical of Mr. Burnett for calling out sick on January 25, 2012, and for calling out with a "chair issue" on February 9, 2012. *Id.* Ocean Properties wrote Mr. Burnett up again on June 24, 2012, for being "either absent from or late for an unacceptable number of shifts," including "May 7: called out truck trouble," "May 30: called out sick," and a doctor appointment the following day. *Id.* ¶ 45. Even though Mr. Burnett's absences were often related to his disability or due to mechanical factors beyond his control, Ocean Properties wrote in the June 24, 2012 corrective action that "[i]f Ryan needs to request time off he must do so at least two weeks in advance." *Id.* ¶ 46. In an August 13, 2014 corrective action, Ocean

Properties was critical of Mr. Burnett for calling out "sick" or "personal" on numerous occasions, most pertaining to his disability. *Id.* ¶ 47. In a December 2014 performance review, Ocean Properties wrote: "Ryan needs to start arriving on time or alter his availability to [better] suit his personal schedule." *Id.* ¶ 48. Aside from disability-related absences, Mr. Burnett had a record of performance that met or exceeded the standards of his profession for the duration of his employment with Ocean Properties. *Id.* ¶ 49.

### 3. 505 Country Club Drive Call Center

In or around December 2013, Ocean Properties' reservation call center moved to 505 Country Club Drive in South Portland, Maine. *Id.* ¶ 50. Ocean Properties assigned Mr. Burnett to work on the second floor of the building. *Id.* ¶ 51. Although Mr. Burnett had already mentioned ADA accessible bathrooms to Ocean Properties, when the reservation center moved into the new building, Mr. Burnett determined that the bathrooms were not ADA compliant. *Id.* ¶ 52. For instance, when Ocean Properties moved into the new building, Mr. Burnett could not wheel his chair into the bathroom stall. *Id.* ¶ 53. Mr. Burnett reported this accessibility issue, and was subsequently forced to miss several days of work while the bathroom was renovated. *Id.* ¶ 54. After the renovation, Mr. Burnett was able to maneuver his wheelchair into a stall, but according to Mr. Burnett, the toilet, grab bars, and restroom sinks still failed to meet the accessibility requirements of the ADA. *Id.* ¶ 55.

The entry and exit doors of the new building were also difficult for Mr. Burnett to access. *Id.* ¶ 56. On August 28, 2014, Mr. Burnett emailed Nick Robertshaw, the

office manager, to inform him that the doors were heavy and hard for him to hold open and push a wheelchair through at the same time. *Id.* ¶ 57. Mr. Burnett requested that the doors be converted to push-button or automatic doors as an accommodation for his disability. *Id.* ¶ 58. Ocean Properties ignored the request and did not respond to Mr. Burnett's email. *Id.* ¶ 59.

Mr. Burnett also had difficulty accessing the second floor of the new building when the elevators stopped working. *Id.* ¶ 61. On February 20, 2015, Mr. Burnett arrived at 7:00 a.m. for his shift to find that the elevator was not working. *Id.* ¶ 62. A supervisor determined that Mr. Burnett should be sent home until the situation was resolved. *Id.* ¶ 63. Ocean Properties at first refused to pay Mr. Burnett for this time that he lost from work and then offered to pay him for four hours, half of the time that Mr. Burnett missed. *Id.* ¶ 64. In March of 2015, Ocean Properties explained that the elevator would be taken out of service for several weeks in May for a scheduled repair. *Id.* ¶ 65. Ocean Properties moved Mr. Burnett to a first floor work station for the duration of the repair. *Id.* ¶ 66. During this time, he did not have access to the second floor employee break area. *Id.* ¶ 67.

Mr. Burnett arrived for work on May 5, 2015, and discovered that the desk at his temporary first floor work station could not accommodate his wheelchair. *Id.* ¶ 68. On a previous tour of the area, Mr. Burnett had informed Ocean Properties that this area would not accommodate his wheelchair. *Id.* ¶ 69. Mr. Burnett also reported to General Manager Joyce Dawson that the work area was uncomfortably cramped because it was set up to be shared by two employees. *Id.* ¶ 70. Based on the

discrimination and retaliation that he believed he encountered in the workplace, Mr. Burnett felt that he had no choice but to leave his employment. *Id.* ¶ 73. According to Mr. Burnett, Ocean Properties constructively discharged him from employment as of February 26, 2016. *Id.* ¶ 74.

### 4. Charge of Discrimination

On June 9, 2015, Mr. Burnett signed an EEOC charge of discrimination, which the Maine Human Rights Commission (MHRC) received on June 29, 2015. *Redacted Document*, *Compl. of Discrimination* (ECF No. 32) (*Charge*). In the Charge, Mr. Burnett identified AmeriPort LLC as his employer and asserted, "I have been employed by AmeriPort LLC as a Reservation Agent since May 18, 2010." *Id.* at 1. The Charge contained no reference to Ocean Properties.

Additionally, in the Charge, Mr. Burnett provided details about the discrimination that he allegedly faced. *Id.* at 1–2. He described the discrimination as a "continuing action" that began at the earliest on January 1, 2014—i.e., shortly after his move to the call center at 505 Country Club Drive. *Id.* at 1. The Charge did not mention any discrimination at the 200 Sable Oaks Drive call center. *Id.* at 1–2.

During the MHRC investigation into the Charge, Ocean Properties' in-house counsel represented AmeriPort and provided a position statement to the MHRC on AmeriPort's behalf. *Am. Compl.* ¶ 10. According to Mr. Burnett, Ocean Properties falsely informed the MHRC that AmeriPort owned and operated the Portland reservation center. *Id.* ¶ 9. However, Mr. Burnett states that AmeriPort is a former New Hampshire limited liability company and is no longer authorized to do business

in either Maine or New Hampshire. *Id.* ¶ 11. AmeriPort was administratively dissolved and has not filed an annual report since 2011. *Id.* ¶ 12.

### 5. Mr. Burnett's Employer

Despite identifying AmeriPort as his employer in his Charge, Mr. Burnett alleges in his Amended Complaint that Ocean Properties was his employer. *Id.* ¶¶ 13–14. For support, Mr. Burnett alleges: On May 16, 2005, Mr. Burnett signed a 90-day probationary period acknowledgment form for Ocean Properties. *Id.* ¶ 13. Throughout his employment, Mr. Burnett took reservations for various Ocean Properties locations other than the Marriott Sable Oaks, such as the Samoset and the Harborside resorts located in Bar Harbor, Maine.[3] *Id.* ¶ 8. Mr. Burnett's supervisor, Carol Welch, was an employee of Ocean Properties. *Id.* ¶ 13. A July 11, 2009 corrective action form listed Mr. Burnett's place of employment as "Ocean Properties." *Id.* Mr. Burnett's email signature included the name "Ocean Properties, Ltd." *Id.* During his employment, Mr. Burnett participated in an Ocean Properties 401(k) retirement plan. *Id.* On September 20, 2013, Ocean Properties gave Mr. Burnett a certificate of training completion for the Portland reservation center. *Id.*

### C. Counts in the Amended Complaint

In Count I, Mr. Burnett alleges that Ocean Properties engaged in unlawful disability discrimination against him in violation of the ADA. *Id.* ¶¶ 77–85. In particular, Mr. Burnett asserts that Ocean Properties "failed to provide Mr. Burnett

---

[3]     Although the Court is required to accept the allegations in the Amended Complaint as true, and although it makes no difference for purposes of the resolution of this motion exactly where The Samoset Resort is located, the Court is aware that The Samoset Resort is located in Rockport, Maine, not Bar Harbor, Maine.

with all of the reasonable accommodations that were necessary for his obvious disability in order to perform the essential functions of his job." *Id.* ¶ 84. In Count II, Mr. Burnett alleges that Ocean Properties violated the ADA when it took adverse action against him in retaliation for filing a charge of discrimination with the MHRC and for requesting accommodations for his disability. *Id.* ¶¶ 86–89. In Count III, Mr. Burnett asserts that Ocean Properties violated the Maine Whistleblower Protection Act by retaliating against him for making multiple complaints of ADA violations. *Id.* ¶ 90–98. Finally, in Count IV, Mr. Burnett contends that Ocean Properties violated the Maine Human Rights Act by engaging in unlawful disability discrimination and retaliation. *Id.* ¶ 99–100.

The Defendants move the Court to dismiss Counts I, II, and IV with prejudice. *Defs.' Mot.* at 4–9. Moreover, the Defendants move to strike paragraphs 27–48, 73, and 74 of the Amended Complaint because they fall outside the scope of Mr. Burnett's Charge. *Id.* at 9–12.

## II. LEGAL STANDARD

### A. Rule 12(b)(6)[4]

---

[4] The Defendants move to dismiss the Amended Complaint as to Ocean Properties for failure to exhaust administrative remedies and as to AmeriPort for failure to timely file a civil suit. The Defendants move pursuant to both Rule 12(b)(1) and 12(b)(6). *Defs.' Mot.* at 1. However, with respect to exhaustion, the First Circuit has held that "[a]lthough generally a plaintiff must name a defendant in the proceedings before the EEOC in order to proceed against that defendant in federal court . . . this charging requirement is nonjurisdictional, thus subject to waiver, estoppel and equitable tolling." *McKinnon v. Kwong Wah Restaurant*, 83 F.3d 498, 505 (1st Cir. 1996); *see also Cartinez-Rivera v. Commonwealth of P.R.*, 812 F.3d 69, 73 (1st Cir. 2016) (suggesting that the district court should have analyzed an ADA exhaustion claim under Rule 12(b)(6) rather than Rule 12(b)(1)). Moreover, with respect to timely filing a civil complaint, the First Circuit has held that the 90-day limitation period to bring a civil suit following receipt of a notice of right to sue letter is nonjurisdictional and subject to equitable exceptions. *McKinnon*, 83 F.3d at 505 (citing *Rice v. New England College*, 676 F.2d 9, 10 (1st Cir. 1982)). The Court analyzes the Defendants' motion to dismiss pursuant to Rule 12(b)(6). *See*

Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). To state a claim, a complaint must contain, among other things, "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations[.]'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Towmbly*, 550 U.S. 544, 555 (2007)). Rather, to survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

Although a court must accept as true the factual matter contained in the complaint, the court is "not bound to credit 'bald assertions, unsupportable conclusions, and opprobrious epithets.'" *Campagna v. Mass. Dep't of Envtl. Prot.*, 334 F.3d 150, 155 (1st Cir. 2003) (quoting *Dartmouth Review v. Dartmouth Coll.*, 889 F.2d 13, 16 (1st Cir. 1989), *overruled on other grounds by Educadores Puertorriqueños en Acción v. Hernández*, 367 F.3d 61, 64 (1st Cir. 2004)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). The First Circuit

---

*DePaolo v. Ocean Properties*, No. 2:16-cv-468-NT, 2017 U.S. Dist. LEXIS 12793, at *1, n.1 (D. Me. Jan. 31, 2017).

summarized the proper analytic path in *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50 (1st Cir. 2012):

> Step one: isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements. Step two: take the complaint's well-pled (*i.e.*, non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief.

*Schatz*, 669 F.3d at 55 (1st Cir. 2012) (internal citations omitted).

"[W]hen 'a complaint's factual allegations are expressly linked to—and admittedly depend upon—a document (the authenticity of which is not challenged),' then the court can review it upon a motion to dismiss." *Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 34 (1st Cir. 2001) (quoting *Beddall v. State St. Bank & Trust Co.*, 137 F.3d 12, 17 (1st Cir. 1998)); *see also Trans-Spec Truck Serv., Inc. v. Caterpillar Inc.*, 524 F.3d 315, 321 (1st Cir. 2008) (explaining that a court may consider any documents attached to the complaint when ruling on a motion to dismiss, including any other documents "'integral to or explicitly relied upon in the complaint, even though not attached to the complaint'") (quoting *Clorox Co. P.R. v. Proctor & Gamble Commercial Co.*, 228 F.3d 24, 32 (1st Cir. 2000)).  In this case, the Court considers Mr. Burnett's Charge that he filed with the MHRC.  Both parties attached the Charge to their filings in this case, and neither challenge the authenticity of the document.

## B.     Rule 12(f)

Federal Rule of Civil Procedure 12(f) governs motions to strike pleadings.  Rule 12(f) provides:

> The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. The court may act: (1) on its own; or (2) on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading.

FED. R. CIV. P. 12(f). A Rule 12(f) motion is directed to the discretion of the district court. *McGlauflin v. RCC Atl. Inc.*, 269 F.R.D. 56, 57 (D. Me. 2010); *see also* 5C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1381 (3d ed. 2004) (WRIGHT & MILLER). Motions to strike, however, are "narrow in scope, disfavored in practice, and not calculated readily to invoke the court's discretion." *Boreri v. Fiat S.p.A.*, 763 F.2d 17, 23 (1st Cir. 1985). Rule 12(f) motions are disfavored because "[m]odern litigation is too protracted and expensive for the litigants and the court to expend time and effort pruning or polishing the pleadings." *McGlauflin*, 269 F.R.D. at 57 (quoting WRIGHT & MILLER § 1382 (2009 Supp.)).

The Defendants in this case move to strike the pleadings as "impertinent." *See Defs.' Mot.* at 1. A matter is "impertinent" if it "consists of statements that do not pertain, and are not necessary, to the issues in question." *Ashey v. Lily Transp. Corp.*, No. 01-57-B-S, 2001 U.S. Dist. LEXIS 8350, at *2 (D. Me. June 18, 2001) (quoting WRIGHT & MILLER § 1382) A court may not strike a pleading as impertinent "[i]f part of the challenged material is found to be so connected with the subject matter of the suit that it might be deemed to present a question of law or fact that the district court is obligated to hear and determine[.]" *McGlauflin*, 269 F.R.D. at 57 (quoting WRIGHT & MILLER § 1382 (2009 Supp.)); *see also Ashey*, 2001 U.S. Dist. LEXIS 8350, at *3 (quoting *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2nd Cir. 1976))

("[W]here the stated ground for the motion is impertinence or immateriality, the Second Circuit holds that 'the motion will be denied, unless it can be shown that no evidence in support of the allegation would be admissible'").

## III.  DISCUSSION

### A.  Motion to Dismiss

The Defendants argue that the Court should dismiss the Amended Complaint as to Ocean Properties because Mr. Burnett failed to name Ocean Properties in his Charge. *Defs.' Mot.* at 4–7. Further, the Defendants assert that the Court should dismiss the Amended Complaint as to AmeriPort because Mr. Burnett did not file a civil complaint against AmeriPort within 90 days of receiving a notice of right to sue letter. *Id.* at 7–9. The Court addresses these arguments in turn.

#### 1.  Failure to Name Ocean Properties in EEOC Charge

Before bringing a civil action, an employee alleging discrimination under the ADA must first exhaust his administrative remedies by filing a claim with the EEOC or with a parallel state agency. *Rivera-Diaz v. Humana Ins. of P.R., Inc.*, 748 F.3d 387, 389–90 (1st Cir. 2014) (holding that claims under the ADA are subject to the procedural requirements of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e). The administrative filing requirement "serves several purposes. Most importantly, it gives notice to both the employer and the agency of an alleged violation and affords an opportunity to swiftly and informally take corrective action necessary to reconcile the violation." *Thornton v. UPS, Inc.*, 587 F.3d 27, 31 (1st Cir. 2009) (citing *Powers v. Grinnell Corp.*, 915 F.2d 34, 37 (1st Cir. 1990)).

Pursuant to the procedural requirements of Title VII, a plaintiff "may not maintain a suit against a defendant in federal court if that defendant was not named in the administrative proceedings and offered an opportunity for conciliation or voluntary compliance." *McKinnon v. Kwong Wah Rest.*, 83 F.3d 498, 504 (1st Cir. 1996) (citing 42 U.S.C. § 2000e–5(f)). However, this general rule is not absolute. *Id.* at 505. For instance, under the "identity of interests" exception, a party may file suit against a defendant who was not originally named in the administrative filing if there is a clear identity of interest between the named and unnamed defendants. *See Russell v. Enterprise Rent-A-Car Co. of Rhode Island*, 160 F. Supp. 2d 239 (D.R.I. 2001). In *McKinnon*, the First Circuit cited *Glus v. G.C. Murphy Co.*, 562 F.2d 880 (3rd Cir. 1977), in which the Third Circuit announced a four-factor test to determine whether an identity of interest exists between a named and unnamed defendant. 83 F.3d at 505 (citing *Glus*, 562 F.2d at 888). The factors include:

> 1) whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint; 2) whether, under the circumstances, the interests of the named are so similar as the unnamed party's that for purposes of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed in the EEOC proceedings; 3) whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party; 4) whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party.

*Glus*, 562 F.2d at 888. "The *Glus* test is a fact-intensive inquiry." *DePaolo v. Ocean Properties*, No. 2:16-cv-468-NT, 2017 U.S. Dist. LEXIS 12793, at *5 (D. Me. Jan. 31, 2017) (citing *EEOC v. Simbaki, Ltd.*, 767 F.3d 475, 485 n.16 (5th Cir. 2014)).[5]

In their motion to dismiss, the Defendants do not squarely address the "identity of interests" exception. By contrast, Mr. Burnett asserts that "there could be no clearer case of 'identity of interests' than this one." *Pl.'s Resp.* at 6. Although Mr. Burnett does not specifically reference the *Glus* case, he makes several assertions that relate to that case's four factors. He explains that he is now suing Ocean Properties because "AmeriPort is a sham[.]" *Id.* at 7. Presumably, at the time he filed his EEOC charge with the MHRC, he believed his employer was AmeriPort. Indeed, Mr. Burnett asserts that Ocean Properties' in-house counsel told the MHRC during the administrative process that AmeriPort was Mr. Burnett's employer. However, as far as the Court can tell, it appears that Mr. Burnett later discovered that AmeriPort was dissolved in 2013 and that its authority to conduct business in Maine ceased at that time. *Id.* at 3 (citing 31 M.R.S. § 1626(3)). Consequently, Mr. Burnett now asserts that "[Ocean Properties] was Mr. Burnett's actual employer." *Id.* at 2. Moreover, he contends that Ocean Properties had notice of the

---

[5]     The *DepPaolo* case gives the Court pause. Cary DePaolo worked at the South Portland Marriot at Sable Oaks for sixteen years until his resignation in April 2015. *DePaolo*, 2017 U.S. Dist. LEXIS 12793, at *1. Many of Mr. DePaolo's years of employment at Sable Oaks coincided with Mr. Burnett's years of employment at Sable Oaks. Mr. DePaolo filed a complaint alleging discriminatory conduct against GHM Portland MAR LLC and Ocean Properties, Ltd. *Id.* As here, in the DePaolo lawsuit, Ocean Properties, Ltd., moved to dismiss on the ground that Mr. DePaolo did not name it as a respondent in the administrative charge. *Id.* at *3. Mr. DePaolo's and Mr. Burnett's troubles identifying their employer suggest that whoever the corporate employer is, GHM Portland MAR LLC, AmeriPort, LLC, or Ocean Properties, Ltd, The Portland Marriott at Sable Oaks is not as clear to its employees as it should be as to which entity is employing them, and could be hiding the employer peanut among its corporate shells.

administrative proceedings against AmeriPort because Ocean Properties' own in-house counsel represented AmeriPort throughout the administrative process and provided a position statement to the MHRC on AmeriPort's behalf. *Id.* at 7.

A more developed factual record is necessary for the Court to determine whether the "identity of interests" exception applies to permit Mr. Burnett to bring a civil action against Ocean Properties. *DePaolo*, 2017 U.S. Dist. LEXIS 12793, at *5 ("Whether the identity of interest exception applies requires a more detailed factual record . . . and is better suited for resolution at summary judgment"). The Court denies the Defendants' motion to dismiss as to Ocean Properties.

With respect to Mr. Burnett's state law claims, the Defendants argue that they must be dismissed because "[t]he doctrine of exhaustion of remedies is equally applicable to claims under the Maine Human Rights Act." *Defs.' Mot.* at 5. The Defendants are incorrect. "[T]he Maine Law Court has never read an exhaustion provision into the MHRA." *DePaolo*, 2017 U.S. Dist. LEXIS 12793, at *6 (citing *Flood v. Bank of Am. Corp.*, No. 12-105-GZS, 2012 U.S. Dist. LEXIS 174310, at *4 (D. Me. Dec. 10, 2012)) (internal quotation marks omitted). "Unlike federal law, the Maine Human Rights Act permits an employee to sue under the Act even if she has not first filed a claim administratively with the [MHRC]." *Flood*, 2012 U.S. Dist. LEXIS 174310, at *4. The Act states that the Court may not award a plaintiff attorney's fees or compensatory, punitive, or civil penal damages if the plaintiff failed to file a claim with the MHRC before bringing a civil suit. 5 M.R.S. § 4622. However, other remedies remain available despite a plaintiff's failure to properly exhaust claims with

the MHRC.  *DePaolo*, 2017 U.S. Dist. LEXIS 12793, at *6.  In this case, Mr. Burnett is also seeking equitable relief, *Compl.* ¶ 100, and thus his state claims survive the Defendants' motion to dismiss.

### 2.  Failure to Name AmeriPort in the Civil Complaint

In his original Complaint, Mr. Burnett filed suit only against Ocean Properties. *Compl.*  Ocean Properties argued that it was not the proper party and moved to dismiss the Complaint.  *Def.'s Mot. to Dismiss Pl.'s Compl.*  Even though Mr. Burnett argues that Ocean Properties was his actual employer, he filed an amended complaint in which he added AmeriPort as a defendant.  *Am. Compl.*

The Defendants now argue that Mr. Burnett's action against AmeriPort is time-barred because he failed to file suit against AmeriPort within 90 days of receiving his notice of right to sue letter from the EEOC in accordance with 42 U.S.C. § 2000e-5(f)(1).  *Defs.' Mot.* at 7–9.  AmeriPort received his notice of right to sue letter on April 5, 2016.  *Am. Compl.* ¶ 18.  He filed his original Complaint 87 days later on July 1, 2016.  *Compl.*  However, he did not file his Amended Complaint until September 26, 2016, 174 days after receiving the notice of right to sue letter.  *Am. Compl.*  Therefore, the Defendants argue that Counts I, II, and IV are untimely and subject to dismissal as to AmeriPort.  *Defs.' Mot.* at 9.

In response, Mr. Burnett asserts that under Federal Rule of Civil Procedure 15(c), his Amended Complaint "relates back to the original filing on July 1, 2016,

making the claim against both Defendants timely."[6]  *Pl.'s Resp.* at 8.  As an initial matter, the Supreme Court has held that the procedures contained in Title VII do not enjoy "special status under the Rules of Civil Procedure."  *Baldwin Cty. Welcome Center v. Brown*, 466 U.S. 147, 150 (1984).  Thus, even though the procedures set forth in Title VII required Mr. Burnett to file suit within 90 days of receiving a notice of right to sue, the provisions of Rule 15 still apply to Mr. Burnett's Amended Complaint.  *See Ayala-Gonzalez v. Toledo Davila*, 623 F. Supp. 2d 181, 188 (D.P.R. 2009).

Rule 15(c)(1) provides that an amendment to a pleading relates back to the date of the original pleading when:

(A)  the law that provides the applicable statute of limitations allows relation back;

(B)  the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading; or

(C)  the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:

(i)  received such notice of the action that it will not be prejudiced in defending on the merits; and

---

[6]  Anticipating this argument, the Defendants contend that the Amended Complaint should not relate back, citing *Romains v. Grand Casinos of Miss., LLC-Gulfport*, No. 1:07CV510 LG-JMR, 2009 U.S. Dist. LEXIS 72309 (S.D. Miss. Aug. 14, 2009).  *Defs.' Mot.* at 8–9.  In *Romains*, the plaintiff filed an EEOC charge against her employer but later brought suit only against the employer's parent company.  *Romains*, 2009 U.S. Dist. LEXIS 72309, at *1.  The parent company moved to dismiss, arguing that it was not the plaintiff's employer, and the plaintiff subsequently attempted to amend her complaint to substitute her employer for the parent company.  *Id.*  Although the time period for filing her complaint had lapsed, she argued that her new complaint related back to the date of her original filing.  *Id.* at *3.  However, the district court found that the complaint did not relate back because the plaintiff clearly knew the identity of her employer, yet she chose to sue her employer's parent company.  *Id.*  In this case, by contrast, it is not clear that Mr. Burnett knew the identity of his employer.  Therefore, *Romains* is inapposite to the present case.

(ii)    knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

FED. R. CIV. P. 15(c)(1). The parties have cited no authority and the Court is aware of none that expressly allows relation back as regards the 90-day time limit in Title VII. Therefore, the Court must determine in this case whether the Amended Complaint meets the requirements of Rule 15(c)(1)(B) and (C).

Here, the Court concludes that the Amended Complaint arises out of "the conduct, transaction, or occurrence set out . . . in the original pleading[.]" FED. R. CIV. P. 15(c)(1)(B). The Amended Complaint adds AmeriPort as a party but does not include any claims that did not first appear in Mr. Burnett's original Complaint. Likewise, the factual assertions in the Amended Complaint are a near replica of the allegations in the Complaint.

The question thus becomes whether, within the period provided by Rule 4(m)— i.e., within 90 days of the original complaint being filed—AmeriPort "(i) received such notice of the action that it will not be prejudiced in defending on the merits; and (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." FED. R. CIV. P. 15(c)(1)(C). The First Circuit has held that the "identity of interests" concept serves as a "judicial gloss" that helps determine whether the added party had notice of the action for purposes of Rule 15(c). *See Ayala Serrano v. Lebron Gonzalez*, 909 F.2d 8, 12 (1st Cir. 1990) (quoting *Hernandez Jimenez v. Calero Toledo*, 604 F.2d 99, 102 (1st Cir. 1979). Under the "identity of interests" concept:

> [T]he institution of the action serves as constructive notice of the action to the parties added after the limitations period expired, when the original and added parties are so closely related in business or other activities that it is fair to presume the added parties learned of the institution of the action shortly after it was commenced. The identity of interest principle is often applied where the original and added parties are a parent corporation and its wholly owned subsidiary, [or] two related corporations whose officers, directors, or shareholders are substantially identical and who have similar names or share office space[.]

*Hernandez Jimenez*, 604 F.2d at 102–03 (citing WRIGHT & MILLER § 1499 (2nd ed. 1990)); *see also Young v. Lepone*, 305 F.3d 1, 14–15 (1st Cir. 2002).

The First Circuit makes clear, however, that the "identity of interests" concept only bears on the requirement that the added party "received such notice of the action that it will not be prejudiced." *Id.* at 103 (citing FED. R. CIV. P. 15(c)(1)(C)(i)). Thus, in order for the Amended Complaint to relate back, Mr. Burnett must show that AmeriPort "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." FED. R. CIV. P. 15(c)(1)(C)(ii).

Without a more detailed factual record, the Court is unable to determine whether AmeriPort and Ocean Properties share an "identity of interests" for purposes of Rule 15(c), or whether AmeriPort knew or should have known that Mr. Burnett would have brought an action against it but for the mistake in identity. The facts appear to indicate a close corporate relationship between AmeriPort and Ocean Properties, especially given that Ocean Properties' in-house counsel represented AmeriPort during the administrative proceedings. *Am. Compl.* ¶ 10. Additionally, Mr. Burnett asserts that his supervisor, Carol Welch, was an employee of Ocean

Properties, that Mr. Burnett participated in an Ocean Properties 401(k) retirement plan, that a corrective action listed his place of employment as Ocean Properties, and that he took reservations for various Ocean Properties locations around the state of Maine. *Compl.* ¶ 13. Based on an initial review, it may well be that the relationship between Ocean Properties and AmeriPort is sufficiently close to ultimately conclude that they share an "identity of interests" for purposes of Rule 15(c); nevertheless, without a more complete factual record, the Court is unwilling to definitively draw this conclusion. Moreover, the parties' filings leave the Court with several questions regarding the status of AmeriPort and Mr. Burnett's reasons for bring suit against Ocean Properties alone. Additional facts are required to resolve this uncertainty, and therefore the Court denies the Defendants' motion to dismiss at to AmeriPort.

## B.     Motion to Strike Impertinent Allegations

The Defendants move to strike 21 paragraphs from the Amended Complaint. Paragraphs 27–46 relate to discrimination that allegedly occurred when Mr. Burnett worked at the 200 Sable Oaks Drive call center from 2009 until the end of 2013. Paragraphs 47–48 describe criticism that Mr. Burnett received for absenteeism attributable to his disability following his transfer to the 505 Country Club Drive call center in 2014. Paragraphs 73–74 concern Mr. Burnett's constructive discharge from Ocean Properties in 2016. The Defendants contend that these paragraphs are "impertinent" because they fall outside the scope of Mr. Burnett's EEOC Charge. *Defs.' Mot.* at 1. In his Charge, Mr. Burnett only asserted discrimination that allegedly occurred in 2014 and 2015, during which time Mr. Burnett worked at the

505 Country Club Drive call center. *Charge* at 1–2. According to the Defendants, because paragraphs 27–48 and 73–74 constitute separate acts of alleged discrimination that were not timely asserted, Mr. Burnett's claims related to those acts must be dismissed, and the Court should strike the paragraphs from the Amended Complaint. *Defs.' Mot.* at 9–12.

The Court declines to strike these paragraphs from the Amended Complaint, noting that in this Circuit, motions to strike are "narrow in scope, disfavored in practice, and not calculated readily to invoke the court's discretion." *Boreri*, 763 F.2d at 23. The Court does not need to reach the question of whether the specific allegations contained in the paragraphs are time-barred because even if they are, the allegations may still serve as "background evidence" in support of Mr. Burnett's other timely claims. *See National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). That is, "time-barred incidents of discrimination are not to be erased from a case because of their tardiness." *Jones v. B&J Rocket Am., Inc.*, No. 3:14-CV-135, 2016 U.S. Dist. LEXIS 64606, at *20 (N.D. Ind. May 17, 2016) (quoting *Abdulrahim v. Gene B. Glick Co.*, 612 F. Supp. 256, 260 (N.D. Ind. 1985)). Consequently, the Defendant's motion to strike is denied.

## IV. CONCLUSION

The Court DENIES Ocean Properties Ltd. and AmeriPort LLC's Partial Motion to Dismiss Plaintiff's Amended Complaint and Motion to Strike Impertinent Allegations (ECF No. 19).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 11th day of April, 2017