UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

RYAN D. BURNETT, )
)
    Plaintiff )
v. ) No. 2:16-cv-00359-JAW
)
OCEAN PROPERTIES, LTD., et al., )
)
    Defendants )

### MEMORANDUM DECISION AND ORDER ON PLAINTIFF'S MOTION TO QUASH SUBPOENA

In this employment discrimination action, plaintiff Ryan D. Burnett moves pursuant to Federal Rule of Civil Procedure 45(d)(3) to quash a subpoena commanding his current employer, FCi Federal, Inc. ("FCi"), to produce employment records to the defendant Ocean Properties, Ltd. ("OPL"), his former employer; he argues that the information sought is irrelevant to any claim or defense, and disproportional, and that OPL seeks to intimidate and harass him by making the existence of this suit known to his current employer. *See* Plaintiff's Motion To Quash Subpoena Duces Tecum ("Motion") (ECF No. 42) at 1-3.[1] While I conclude that the specified contents of the plaintiff's personnel file are relevant to the claims and defenses in this action, I grant the plaintiff's motion because the defendants have improperly used the subpoena as a first, not a last, resort.

---

[1] The defendants, OPL and AmeriPort, LLC ("AmeriPort"), dispute that OPL was the plaintiff's employer. *See* Defendants' Response to Plaintiff's Motion To Quash Subpoena Duces Tecum to FCi Federal, Inc. ("Response") (ECF No. 43) at 2 n.1. I need not resolve that matter for purposes of this Motion. For ease of reference, I will refer to the plaintiff's employer as "OPL/AmeriPort" or the "defendants."

1

## I. Applicable Legal Standards

Federal Rule of Civil Procedure 45 provides, in relevant part, "On timely motion, the court for the district where compliance is required must quash or modify a subpoena that . . . requires disclosure of privileged or other protected matter, if no exception or waiver applies[.]" Fed. R. Civ. P. 45(d)(3)(A)(iii).

In support of his argument that his personnel file contents are protected, the plaintiff invokes 26 M.R.S.A. § 631, *see* Motion at 1, which directs that employers "take adequate steps to ensure the integrity and confidentiality" of records in an employee's "personnel file," 26 M.R.S.A. § 631. "[A] personnel file includes, but is not limited to, any formal or informal employee evaluations and reports relating to the employee's character, credit, work habits, compensation and benefits and nonprivileged medical records or nurses' station notes relating to the employee that the employer has in the employer's possession." *Id*.

"Where, as here, a party seeks discovery relevant to both federal and state civil claims, federal law governs the discovery of information protected by a state confidentiality statute." *Steinberg v. Mount Sinai Med. Ctr., Inc.*, No. 12 Civ. 51 (SLT)(VMS), 2014 WL 1311572, at *2 (E.D.N.Y. Mar. 31, 2014) (citations and footnotes omitted).

"A Rule 45 subpoena must fall within the scope of proper discovery under Fed. R. Civ. P. 26(b)(1)." *Green v. Cosby*, 152 F. Supp.3d 31, 34 (D. Mass. 2015), *modified on other grounds on recon.,* 160 F. Supp.3d 431 (D. Mass. 2016) (citation and internal quotation marks omitted). Pursuant to Rule 26(b)(1), unless otherwise limited by court order, the scope of discovery is as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the

> importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

"If the information sought is confidential but not privileged, FRCP 26 does not limit disclosure of otherwise discoverable information." *Steinberg*, 2014 WL 1311572, at *2 (citations omitted). "Nevertheless, federal courts must balance [a party's] interest in disclosure against the state's legitimate concern for protecting the confidentiality of the requested information." *Id*. at *3 (citation and internal punctuation omitted) (material in brackets added). "In striking this balance, courts have considered the parties' need for the materials at issue and whether a protective order issued by the court can address the purposes underlying the confidentiality statute." *Id*. (citations and footnote omitted). *See also, e.g., Parker v. Delmar Gardens of Lenexa, Inc*., Case No. 16-2169-JWL-GEB, 2017 WL 1650757, at *6 (D. Kan. May 2, 2017) ("Plaintiff contends her personnel files and employment records are confidential and should be protected from 'wide dissemination.' This Court does not disagree with the sensitivity and confidentiality of the records. However, Plaintiff's argument is incomplete. It is well-established that confidentiality of information does not equate to a privilege against its production.") (footnotes omitted); *In re One Bancorp Sec. Litig*., 134 F.R.D. 4, 9-10 (D. Me. 1991) (although defendant's financial records were confidential pursuant to Maine law, plaintiffs' motion to compel access to them was granted when parties had entered into a confidentiality stipulation and the records were highly relevant to the issues in the litigation).

## II. Discussion

### A. Whether Subpoena Should Be Quashed

As the plaintiff observes, *see* Motion at 3, federal courts "have recognized that subpoenas directed at litigants' employers concerning disputes with past employers can have a direct negative effect on present employment and should be used only as a last resort[,]" *EEOC v. Texas Roadhouse, Inc.*, 303 F.R.D. 1, 3 (D. Mass. 2014) (citation and internal quotation marks omitted). *See also, e.g., Graham v. Casey's Gen. Stores*, 206 F.R.D. 251, 256-57 (S.D. Ind. 2002) (quashing subpoena served on plaintiff's current employer; noting that plaintiff "has a legitimate concern that a subpoena sent to her current employer under the guise of a discovery request could be a tool for harassment and result in difficulties for her in her new job").

This is a sensible approach to a valid concern, and it aligns with Maine's recognition of the confidentiality and sensitivity of personnel files. Accordingly, I adopt it here.

From all that appears, the defendants did not use other means to obtain the personnel file documents at issue before resorting to a subpoena of the plaintiff's personnel file from his current employer. On that basis, the subpoena must be quashed.

### B. Whether Documents Should Be Produced by Other Means

This disposition renders it unnecessary to reach the plaintiff's alternative argument that the personnel file materials at issue are not discoverable pursuant to Rule 26(b)(1). *See* Motion at 2-3. However, because the parties' August 1, 2017, discovery deadline looms, I have considered whether the personnel file, or any portion thereof, is discoverable by other means. For the reasons that follow, I conclude that, on the showing made, OPL/AmeriPort are entitled to what I shall refer to as the "specified contents" of that file.

1. Factual Background

    a. The Plaintiff's Claims

The plaintiff alleges that he sustained an injury at age 14 that left him paralyzed from the T-9 level of his spine, meaning that he no longer had function or sensation below the T-9 vertebra. First Amended Complaint and Demand for Jury Trial (ECF No. 7) ¶ 22. He has used a wheelchair for his entire adult life and is able to drive to and from work using a truck with specially designed hand controls. *Id*. ¶¶ 23-24. His truck is equipped with a complex wheelchair lift that enables him to exit the vehicle on his own without assistance. *Id*. ¶ 25. OPL/AmeriPort hired him in May 2009 to work as a reservation agent in the Portland Marriott call center in South Portland. *Id*. ¶ 21.

The plaintiff alleges that, beginning on his first day of work for OPL/AmeriPort, he was hindered from entering the workplace or performing his job while at work by physical barriers that were not adequately addressed despite his complaints, including a locked door at the end of a wheelchair ramp for which he was not initially provided a keycard and then was given a keycard that did not always work, unshoveled snow on the wheelchair ramp, and issues following an office move in December 2013, including a lack of wheelchair-accessible bathrooms and office space and a malfunctioning elevator. *Id*. ¶¶ 27-34, 50-70. He further alleges that he was sometimes late to work due to a loss of bowel and bladder function related to his disability and late or absent due to mechanical and other issues with the chair lift in his truck, and that he suffered from bed sores and other medical issues related to his paralysis that caused him to miss work for doctor's appointments more often than nondisabled employees. *Id*. ¶¶ 36, 38, 40. He complains that, instead of engaging in an interactive process to accommodate his disability, OPL/AmeriPort failed to make reasonable accommodations and issued him multiple corrective actions related to his tardiness/attendance issues. *Id*. ¶¶ 39, 41-48, 71-72.

The plaintiff claims that he was constructively discharged as of February 26, 2016, when the alleged disability-based discrimination and retaliatory acts of OPL/AmeriPort left him no choice but to leave his employment. *Id.* ¶¶ 73-74. He claims that OPL/AmeriPort discriminated against him and/or retaliated against him in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, the Maine Human Rights Act, 5 M.R.S.A. § 4571 *et seq.*, and the Maine Whistleblower Protection Act, 26 M.R.S.A. § 831 *et seq. Id.* ¶¶ 1-2, 77-100.

### b. The Defendants' Affirmative Defenses

The defendants raise several affirmative defenses, including that (i) any adverse employment action that they took with respect to the plaintiff was for legitimate, non-discriminatory, and non-retaliatory reasons and, (ii) to the extent that the plaintiff requested any accommodation, they were not required to grant it because it would have imposed an undue hardship. *See* Defendant Ocean Properties, Ltd.['s] Answer and Affirmative Defenses to Plaintiff's First Amended Complaint (ECF No. 20) at 13, 15; Defendant AmeriPort, LLC's Answer and Affirmative Defenses to Plaintiff's First Amended Complaint (ECF No. 21) at 11, 13.

### c. The Subpoena

The subpoena at issue requests that FCi produce "[r]ecords including electronically stored information pertaining to the employment of [the plaintiff], including the following: (a) Employment Applications; (b) resumes; (c) interview notes; (d) descriptions of job duties; (e) time cards and/or attendance sheets; (f) evaluations; (g) disciplinary records; and (h) documents reflecting reasons for leaving if any." Exh. 1 (ECF No. 42-1) to Motion at Page ID # 217. The documents described in subsections (a) through (h) are the "specified contents" of the plaintiff's FCi personnel file.

## 2. Analysis

The plaintiff argues that the contents of his FCi personnel file are irrelevant and disproportional to the needs of this case because:

1.   He has already testified under oath that he is not making a back pay claim for lost wages, distinguishing this case from many in which current payroll records may be relevant to back pay or mitigation of damages. *See* Motion at 2.

2.   He was not fired for performance-related reasons. *See id.* Rather, "[t]his is a case about [OPL/AmeriPort's] failure to accommodate his disability, such as by writing him up in corrective actions for tardiness instead of engaging in the interactive process regarding his disability." *Id.*

3.   Whether or not his current employer has written him up or accommodated his disability has no bearing on whether OPL/AmeriPort did so. *See id.* at 3. Moreover, he has already testified under oath that he has not been subjected to employee discipline at FCi. *See id.*

4.   The requested interview notes, employment applications, job duties, and electronic communications have nothing to do with whether OPL/AmeriPort violated the ADA. *See id.*

However, the defendants make a persuasive argument that the specified contents of the personnel file are relevant to claims and defenses in this case.

The requested job descriptions, time cards/attendance sheets, evaluations, disciplinary records, and documents reflecting any reasons for leaving are relevant to (i) the plaintiff's claims that OPL/AmeriPort discriminated against him based on his disability and retaliated against him for invoking his rights to be free of such discrimination, (ii) the defendants' argument that he cannot show that he is "qualified individual" with a disability because he could not perform an essential function of the OPL/AmeriPort job, timeliness, and (iii) the defendants' defenses that any

7

adverse actions were taken for legitimate reasons and any accommodation would have imposed an undue hardship. Response at 2-3.

As the defendants argue, *see id.* at 3, the plaintiff's testimony that he has not been subjected to discipline by FCi still leaves three possibilities: that (i) his attendance issues have continued at FCi but he has yet to be disciplined, (ii) contrary to his testimony, he has been disciplined, and (iii) after he left OPL/AmeriPort, he found a way to arrive at work on time despite his disability.

If the plaintiff has been able to arrive at FCi in a timely fashion, that would tend to call into question whether he required a disability-based attendance accommodation at OPL/AmeriPort. *See id*. at 2-3. Conversely, if he has been unable to arrive at FCi in a timely fashion, that would tend to bolster the defendants' argument that he could not perform an essential function of his job and their defenses that adverse actions were taken for legitimate reasons and any accommodation would have imposed an undue hardship. *See id*. at 3.

In reply, the plaintiff asserts that, as of the time of the filing of his reply brief, his girlfriend had just testified that he is late to work at his current employment due to his disability, providing the information that the defendants seek. *See* Plaintiff's Reply to Defendant's Opposition to Motion To Quash Subpoena Duces Tecum (ECF No. 44) at 2. Yet, for purposes of discovery, a party need not accept a witness's testimony at face value. *See, e.g., Quinn v. Conagra Foods Packaged Foods LLC*, No. 3:09-cv-214, 2010 WL 3603780, at *1 (S.D. Ohio Sept. 10, 2010) (observing, in case in which potentially relevant information in plaintiff's subsequent employers' personnel files included his job duties, whether his disability affected his performance, and whether he requested an accommodation, "Of course, Defendants can depose Plaintiff on these questions, but any competent cross-examiner would want to see and use relevant documents in the course of such a deposition.").

8

The requested employment applications, resumes, and interview notes are also relevant to the plaintiff's claims of constructive discharge because, as the defendants argue, the reasons the plaintiff provided to FCi for his departure from OPL/AmeriPort bear on his allegations that he was forced to resign. *See* Response at 3-4.

The production of the specified personnel file contents, which are within the plaintiff's possession, custody, or control, *see* 26 M.R.S.A. § 631 (employees are entitled to obtain copies of their personnel files), is not disproportional to the needs of this case, and their confidentiality can be adequately protected by their production pursuant to a confidentiality order, *see, e.g., Lannigan v. S.D. Warren Co.*, Civil No. 08-401-P-H, 2009 WL 1421093, at *3 (D. Me. May 19, 2009) (ordering production of personnel file to plaintiff pursuant to confidentiality order).

### III. Conclusion

For the foregoing reasons, I **GRANT** the plaintiff's motion to quash the subpoena issued to FCi, **DIRECT** that, within seven days, or on or before August 7, 2017, the parties file a motion for the entry of a confidentiality order modeled on the court's form of order contained in Appendix II to its Local Rules, and **DIRECT** that, within 14 days, or on or before August 14, 2017, the plaintiff produce to the defendants, pursuant to the confidentiality order, the following specified contents of the plaintiff's FCi personnel file: (a) employment applications, (b) resumes, (c) interview notes, (d) descriptions of job duties, (e) time cards and/or attendance sheets, (f) evaluations, (g) disciplinary records, and (h) documents reflecting reasons for leaving, if any. Finally, in light of this ruling, I **STAY** all remaining pretrial deadlines, pending a telephonic scheduling conference with counsel that I **DIRECT** the clerk of court to convene for a date after August 14, 2017.

## NOTICE

*In accordance with Federal Rule of Civil Procedure 72(a), a party may serve and file an objection to this order within fourteen (14) days after being served with a copy thereof.*

*Failure to file a timely objection shall constitute a waiver of the right to review by the district court and to any further appeal of this order.*

Dated this 31st day of July, 2017.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge