RYAN D. BURNETT,         )
                               )
        Plaintiff,     )
                               )
       v.          )     No. 2:16-cv-00359-JAW
                               )
OCEAN PROPERTIES, LTD.   )
and AMERIPORT, LLC,     )
                               )
        Defendants.    )

## ORDER ON OCEAN PROPERTIES' POST-TRIAL MOTIONS

An employer, after receiving an unfavorable jury verdict in an action under the ADA and the MHRA, filed various post-trial motions, including a motion for judgment as a matter of law, a motion for a new trial, and a motion for remittitur on damages. The Court denies the motions.

## I. BACKGROUND

On November 1, 2018, after a three-day trial, a jury returned a verdict for Plaintiff Ryan Burnett and awarded $150,000 in compensatory damages and $500,000 in punitive damages. *Jury Verdict* at 1 (ECF No. 179) (*Verdict*); *Jury Punitive Damages Verdict* at 1 (ECF No. 180) (*Punitive Damages Verdict*). As part of its verdict on compensatory damages, the jury made the following findings of fact: (1) that Ocean Properties was an employer or joint employer of Mr. Burnett; (2), that Ocean Properties and AmeriPort were integrated employers of Mr. Burnett; and (3) that Mr. Burnett's employer had more than 500 employees when he worked for that employer. *Verdict* at 1-2. The jury also made the following findings with regard to

punitive damages: (1) that Mr. Burnett has proven, by a preponderance of the evidence, that the Defendants knew their actions violated the ADA or acted in reckless disregard to that risk; (2) that Mr. Burnett has proven, by clear and convincing evidence, that the Defendants either intentionally or with reckless indifference violated the Maine Human Rights Act. *Punitive Damages Verdict* at 1. The jury awarded Mr. Burnett $200,000 in punitive damages pursuant to the ADA and $300,000 pursuant to the MHRA. *Id*. at 1-2. Judgment entered on behalf of Mr. Burnett on November 13, 2018. *J.* (ECF No. 188).

On December 11, 2018, Defendant Ocean Properties Limited (Ocean Properties) filed a motion for judgment as a matter of law, motion for a new trial, motion for remittitur, and motion for oral argument. *Def. Ocean Properties, LTD.'s Mot. for J. as a Matter of Law* (ECF No. 200) (*Def.'s Rule 50(b) Mot.*); *Defs., Ocean Properties, LTD.'s Mot. for New Trial by Ocean Properties Ltd.* (ECF No. 201) (*Def.'s Mot. for New Trial*); *Defs., Ocean Properties, Ltd.'s Mot. for Remittitur* (ECF No. 202) (*Def.'s Mot. for Remittitur*); *Mot. for Oral Arg. On Post-Trial Mots.* (ECF No. 203).

Mr. Burnett responded in opposition to the instant motions on February 5, 2019. *Pl.'s Opp'n to Def. OPL's Mot. for J. as a Matter of Law* (ECF No. 212) (*Pl.'s Opp'n to Rule 50(b) Mot.*); *Pl.'s Opp'n to Def. Ocean Properties, LTD.'s Mot. for New Trial* (ECF No. 209) (*Pl.'s Opp'n to Mot. for New Trial*); *Pl.'s Opp'n to Def. OPL's Mot. for Remittitur* (ECF No. 210). Ocean Properties replied on March 1, 2019. *Ocean Properties, LTD's Reply to Pl.'s Opp'n to Mot. for J. as a Matter of Law* (ECF No. 222) (*Def.'s Reply Rule 50(b) Mot.*); *Def.'s Reply to Pl.'s Opp'n to Def. Ocean Properties,*

*LTD's Mot. for New Trial* (ECF No. 223) (*Def.'s Reply Mot. for New Trial*); *Def.'s Reply to Pl.'s Opp'n to Def. Ocean Properties, LTD's Mot. for Remittitur* (ECF No. 224) (*Def.'s Reply Mot. for Remittitur*).

## II. MOTION FOR JUDGMENT AS A MATTER OF LAW

### A. Positions of the Parties

#### 1. Ocean Properties' Motion

Ocean Properties moves for judgment as a matter of law pursuant to Federal Rules of Civil Procedure 50 and 59. Ocean Properties first contends that no proof was brought at trial to show that Ocean Properties has fifteen or more employees; therefore, Mr. Burnett failed to establish that Ocean Properties is a covered entity pursuant to the ADA, and he is precluded from recovering damages under the MHRA. *Def.'s Rule 50(b) Mot.* at 2. According to Ocean Properties, the First Circuit requires that a party prove the numerosity requirement of federal employment discrimination laws by offering evidence of payroll records at trial, *id.* at 4 (citing *Aly v. Monhegan Council, Boy Scouts of America*, 711 F. 3d 34, 45 (1st Cir. 2013)), but Mr. Burnett failed to do so. *Id.* Ocean Properties maintains that "Plaintiff relies upon conjecture rather than credible evidence concerning the number of employees that could be attributed to OPL." *Id.* at 5. Mr. Burnett's alleged failure to prove Ocean Properties has fifteen or more employees also precludes his recovery under a theory of integrated/single employer, according to Ocean Properties. *Id.* at 7. Ocean Properties further contends that it "cannot be both an 'integrated/single employer' with

AmeriPort and a 'joint employer . . ..,'" which it says resulted from the Court's failing to correctly instruct the jury that one theory of liability should be selected. *Id.*

Furthermore, according to Ocean Properties, no evidence was presented at trial that proves it acted as an integrated single employer with AmeriPort. Ocean Properties outlines First Circuit caselaw, which considers four factors in determining whether an integrated single employer relationship exists between two entities: (1) interrelation of operations; (2) common management; (3) centralized control over labor relations; and (4) common ownership. *Id.* (citing *Romano v. U Haul Int'l*, 233 F.3d 655, 665 (1st. Cir. 2000)). Ocean Properties contends that "the lack of common ownership, alone, is sufficient to doom the Jury's finding that OPL and AmeriPort are a single/integrated employer." *Id.* at 9 (citing *Arroyo-Perez v. Demir Group Int'l*, 762 F. Supp. 2d 374 (D.P.R. 2011)[1]). Ocean Properties notes that "a series of emails and other documents . . . that reference OPL," offered into evidence by Mr. Burnett, "are insufficient to establish OPL as an integrated/single employer." *Id.* at 10 (citing *Nesbit v. Gears Unltd., Inc.*, 347 F.3d 72, 88 (3d Cir. 2003)). According to Ocean Properties, "there was no evidence that OPL had anything to do with AmeriPort's day-to-day labor decisions," as required to show centralized control. *Id.* at 11.

Ocean Properties also argues the evidence presented by Mr. Burnett is legally insufficient to establish the interrelation of operations. *Id.* It contends that in *Englehardt v. S.P. Richards Company*, 472 F.3d 1 (1st Cir. 2006), the First Circuit held that there was no integrated/single employer relationship despite "evidence that

---

[1] Counsel for Ocean Properties erroneously identifies *Arroyo-Perez* as a First Circuit case in its brief. It is not. *See infra* n4.

plaintiff's actual employer SPR adopted its parent GPC's personnel policies, corporate conduct and security policies, handbooks, benefit plans, brochures, and registration forms, and that these forms as well as paycheck stubs and letterhead used by SPA contained GPC's name and logo," because no evidence was presented that GPC was involved in SPR's labor relations decisions. *Id.* at 12 (citing *Englehardt,* 472 F. 3d at 7).

Ocean Properties contends that the Court erred in denying Ocean Properties' Rule 50(a) motion because it "improperly limited its consideration of *Englehardt* to the similarity of the forms in the cases . . .." *Id.* at 13. It concedes that "perhaps this form could arguably be cited for the proposition that OPL was a 'joint employer,' but adds no support whatsoever to Plaintiff's claim that OPL was an integrated/single employer." *Id.* at 13-14. Ocean Properties also avers that the pay stubs referencing Ocean AP, Inc., the employee handbook called Ocean Properties Reservations Center Training Manual, and the shared marketing materials of "Ocean Properties Hotels Resorts and Affiliates" do not satisfy the integrated employer requirements, because they do not show shared daily labor decisions. *Id.* at 14-16.

Ocean Properties also argues that Mr. Burnett failed to establish AmeriPort and Ocean Properties were joint employers, which requires proof that "one employer while contracting in good faith, with an otherwise independent company, has retained for itself sufficient control of the terms and conditions of employment of the employees who are employed by the other employer." *Id.* at 18 (citing *Rivas v. Federacion de Associaciones Pecurias de. P.R.*, 929 F.2d 814, 820 n.17 (1st Cir. 1991)). According to

Ocean Properties, there was no evidence presented of its involvement with AmeriPort's employees. *Id.* Moreover, Ocean Properties states that Mr. Burnett failed to show that Ocean Properties, as a joint employer, had fifteen employees separate from AmeriPort. *Id.* at 19 (citing *Robinson v. SABIS Educ. Sys., Inc.*, 1999 U.S. Dist. LEXIS 9065, at *22 (N.D. Ill. 1999); *Serrano v. 900 5th Ave Corp.*, 4 F. Supp. 2d 351, 318 (S.D.N.Y. 1998); *Burdi v. Uniglobe Cihak Travel, Inc.*, 932 F. Supp. 1044, 1048 (N.D. Ill. 1996)).

Finally, Ocean Properties echoes two arguments made by AmeriPort in its parallel motion for judgment as a matter of law: (1) that Mr. Burnett's claim fails because he did not name Ocean Properties in his administrative charge,[2] and (2) that Mr. Burnett failed to meet his burden to show liability for punitive damages. *Id.* at 19-20. Furthermore, Ocean Properties contends that if found liable under a joint employer theory, it cannot be responsible for punitive damages because a finding that two entities are joint employers does not impact the entities' liability to the employee for each other's actions, and there is no evidence to show any Ocean Properties' employees were associated with Mr. Burnett's requests for accommodation. *Id.* at 20.

## 2. Ryan Burnett's Opposition

Mr. Burnett opposes the motion, noting that the jury verdict is "entitled to significant deference." *Pl.'s Opp'n to Rule 50(b) Mot.* at 1. He also argues that Ocean Properties has waived several of its arguments at this juncture because it failed to

---

[2] The Court addressed this argument in its order on AmeriPort's renewed motion for judgment as a matter of law and adopts its conclusion by reference here. *See Order Denying AmeriPort's Motion for Judgment as a Matter of Law* (ECF No. 241).

bring them in its Rule 50(a) motion at trial. *Id.* at 2. These arguments include (1) Ocean Properties' challenge on the basis that Mr. Burnett failed to prove the numerosity requirement; (2) its contention that Mr. Burnett is not entitled to damages because he did not include Ocean Properties in his administrative charge; and (3), that Mr. Burnett failed to show reckless disregard or malice on the part of Ocean Properties to sustain an award of punitive damages. *Id.* According to Mr. Burnett, "[i]n the pre-verdict motion for judgment as a matter of law, the grounds raised were only that the Plaintiff had not established integrated or joint employer." *Id.* (citing *Trial Tr. II 269:16-21* (ECF No. 191) (*Trial Tr. II*)). Mr. Burnett also notes that Ocean Properties never objected to the jury instructions on the issues it now raises. *Id.*

Addressing the merits of Ocean Properties' contentions, Mr. Burnett avers that the evidence at trial overwhelmingly supports the conclusion that Ocean Properties had more than fifteen employees, and likely more than five hundred. *Id.* at 1. Mr. Burnett states that Lori Darsaoui testified that Ocean Properties is one of the largest privately held hotel companies in North America. *Id.* at 4 (citing *Trial Tr. I* 128:23-25 (ECF No. 190) (*Trial Tr. I*)). Furthermore, "Ms. Darsaoui admitted that she assumed that if all of the employees who worked at the various OPL hotels and affiliates were added together, there would be over 500 employees." *Id.* (citing *Trial Tr. I* 128:23-25). This, along with the fact that "it would be impossible for one of the largest hotel companies in North America, with numerous properties under its brand, to operate with no employees whatsoever," supports the jury's finding that Ocean

Properties has over fifteen employees, according to Mr. Burnett. *Id*. Mr. Burnett also contends that Ms. Darsaoui testified that OPL was larger in size than AmeriPort, which she stated had between seventy-five and one hundred employees depending on the season. *Id*. (citing *Trial Tr. II* 224:7-13).

In response to Ocean Properties' contention that it was not an integrated enterprise or joint employer with AmeriPort, Mr. Burnett argues that the evidence supports either finding. *Id*. at 5. Mr. Burnett also notes—in response to Ocean Properties' argument that the Court erred in failing to instruct the jury that Ocean Properties cannot be both a joint employer and in integrated enterprise with AmeriPort—that Ocean Properties never objected to the instruction, and never objected to the Court's exact answer to the jury's question on the issue. *Id*. at 6 (citing *Trial Tr. III* 335; 368-69; 375 (ECF No. 192) (*Trial Tr. III*). Mr. Burnett argues that Ocean Properties has waived its present argument.

Mr. Burnett also contends that the evidence at trial is sufficient to show Ocean Properties is a joint employer of AmeriPort, because Ocean Properties had sufficient control over Mr. Burnett during his employment. *Id*. at 7 (citing *Acosta v. Harbor Holdings & Operations, Inc.,* 674 F. Supp. 2d 351, 371 (D. P. R. 2009)). He cites *Rivera-Vega v. Conagra Inc.,* 70 F.3d 153, 163 (1st Cir. 1995), as setting forth the factors to be considered when determining whether a "joint employer relationship" existed between two companies. *Id*. Here, Mr. Burnett argues, the Ocean Properties employee handbook, Ocean Properties-provided employee benefits, and hiring statement naming "Ocean Properties Hotels, Resorts, and Affiliates" all show that

the two entities "'share or co-determine those matters governing essential terms and conditions or employment.'" *Id.* at 7-8 (quoting *Holyoke Visiting Nurses Ass'n v. NLRB*, 11 F.3d 302, 307 (1st Cir. 1993)).

According to Mr. Burnett, the record demonstrates that an integrated enterprise relationship existed between Ocean Properties and AmeriPort. *Id.* at 5. Mr. Burnett says that the evidence the jury could have found to support common ownership includes that:

> The AmeriPort call center took reservations for 45 different properties, all marketed under the OPL umbrella. *Trial Tr. I* 125:14-21. Plaintiff testified that he understood his employer to be Ocean Properties. *Id.* 42:17-22. He was given an OPL employee handbook, *Pl. Tr. Ex.* 3, which is highly probative of interrelated business operations and control of labor relations. He signed a 90-day probationary hire form that stated that he "recognize[s] and accept[s] as a term of hire a 90-day probationary period with Ocean Properties." *Id.*; *Pl. Tr. Ex. 1.*

*Id.* at 10. Mr. Burnett states that this evidence shows Ocean Properties "directed the operations of its reservation call centers." *Id.* at 11. He also contends that Portsmouth Corporate Financial Services, Inc., (PCFSI), the entity that employs Joyce Dawson, Ms. Darsaoui's supervisor, and human resources employee Cedric Rothkegel, and is the office referenced in the Employee Hiring Statement signed by Mr. Burnett and the office where Ms. Darsaoui submits AmeriPort payroll, has been demonstrated at trial to be "solidly connected" to AmeriPort. *Id.* at 11-13.

Mr. Burnett says that Ocean Properties' cannot now contend that the Court erred in failing to include in its jury instructions that the jury could only assign liability to Ocean Properties as a joint employer or integrated enterprise with AmeriPort but that it could not find both, as Ocean Properties failed to object to the

jury instructions on this ground. *Id.* at 14. In the absence of objection, the Court can only consider a plain error in jury instructions if it "affects substantial rights." *Id.* (citing FED. R. CIV. P. 51(d)). Mr. Burnett argues that the outcome would not have been different if the Court had instructed them that they could find either joint employer or an integrated enterprise, but not both, because there was "substantial evidence of connection between the two companies." *Id.* at 15.

In response to Ocean Properties' argument that the administrative charge was defective, entitling it to judgment as a matter of law, Mr. Burnett reiterates his position that the "identity of interests" doctrine applies with respect to the named defendant, AmeriPort, and the unnamed defendant, Ocean Properties. *Id.* at 16.

Finally, Mr. Burnett disputes that he failed to provide evidence of reckless indifference with respect to Ocean Properties to justify a punitive damages award. He contends that Ocean Properties failed to object to the jury instructions given during the punitive damages, and has therefore waived its present argument that, if found to be a joint employer with AmeriPort, it cannot be held liable for AmeriPort's actions with respect to punitive damages. *Id.* at 17 (citing *Romano*, 233 F.3d at 663).

### 3.  **Ocean Properties' Reply**

Ocean Properties replies that Mr. Burnett still "fails to point to specific evidence" to counter its contentions, "instead cling[ing] to . . . conclusory assertions, speculation, and disconnected reference points." *Def.'s Reply Rule 50(b) Mot.* at 1. It further contends that "the requirement to move for judgment as a matter of law before the case is submitted to the jury" does not require strict adherence, because "many

courts take a 'functional approach' rather than imposing a 'formal requirement' of an explicit motion at a certain point in trial." *Id.* at 2 (citing FED. R. CIV. P. 50, Advisory Comm. Note to 2006 Amendment; *Simon v. Navon*, 71 F.3d 9, 14 (1st Cir. 1995); C. WRIGHT & A. MILLER, FEDERAL PRACTICE & PROCEDURE, § 2537, at 576-80 (2008)).

Ocean Properties again contends that the evidence offered by Mr. Burnett shows that he "may have been employed by an affiliated entity, but he failed to establish anything more." *Id.* at 3. Ocean Properties points to the fact that Ms. Darsaoui testified "she had no 'legal knowledge' if 'Ocean Properties Hotels Resorts and Affiliates was a legal entity.'" *Id.* at 4 (citing *Trial Tr. I* 125-126). As such, Ocean Properties contends, the Court must enter judgment as a matter of law because Mr. Burnett failed to prove Ocean Properties and AmeriPort were integrated employers or that Ocean Properties meets the numerosity requirement under the ADA.

Finally, Ocean Properties reiterates its contention that under the theory of joint employer liability, it has demonstrated no reckless disregard or malicious conduct to allow a punitive damages verdict to stand against it. *Id.* at 6-7.

**B.    DISCUSSION**

**1.    Legal Standard: Judgment as a Matter of Law**

The procedure governing judgment as a matter of law is set forth in Federal Rule of Civil Procedure 50. Generally, once a party has been fully heard on an issue at trial,

> And the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may: (A) resolve the issue against the party; and (B) grant a motion for judgment as a matter of law against the party on a claim or defense

that, under the controlling law, can be maintained or defeated only with
a favorable finding on that issue.

FED. R. CIV. P. 50(a).

"It is well-established that arguments not made in a motion for judgment as a
matter of law under Rule 50(a) cannot then be advanced in a renewed motion for
judgment as a matter of law under Rule 50(b)." *Costa-Urena v. Segarra*, 590 F.3d 18,
26 n.4 (1st Cir. 2009) (citing *Correa v. Hosp. San Francisco,* 69 F.3d 1184, 1196 (1st
Cir. 1995) ("As the name implies, a renewed motion for judgment as a matter of law
under FED. R. CIV. P. 50(b) is bounded by the movant's earlier Rule 50(a) motion"));
5A JAMES W. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 50.08 (2d ed. 1994) ("[A]ny
argument omitted from the [Rule 50(a)] motion made at the close of evidence is
waived as a ground for judgment under Rule 50(b)").  Furthermore, "[t]he movant
cannot use such a motion as a vehicle to introduce a legal theory not distinctly
articulated in its close-of-evidence motion for a directed verdict." *Correa*, 69 F.3d at
1196.   Failure to raise an argument in a Rule 50(a) motion at the close of evidence
"is waived as a ground for judgment under Rule 50(b)."   5A MOORE'S FEDERAL
PRACTICE § 50.08.

In reviewing a motion for judgment as a matter of law, the Court must "view
the evidence 'in the light most favorable to the nonmoving party, drawing all
reasonable inferences in its favor.'" *McMillan v. Mass. Soc. for Prevention of Cruelty
to Animals,* 140 F.3d at 288, 299 (1st Cir. 1998) (quoting *Morrison v. Carleton Woolen
Mills, Inc.,* 108 F.3d 429, 436 (1st Cir. 1997)).  The Court's review "is weighted toward
preservation of the jury verdict"; the Court will uphold the jury verdict "unless the

evidence was so strongly and overwhelmingly inconsistent with the verdict . . . that no reasonable jury could have returned [it]." *Rodowicz v. Mass. Mut. Life Ins. Co.,* 279 F.3d 36, 41–42 (1st Cir. 2002) (internal quotations omitted). In making its determination, the court "may not make credibility determinations or weigh the evidence," as these are functions of the jury. *Reeves v. Sanderson Plumbing Prod., Inc.,* 530 U.S. 133, 150–51 (2000) (citations omitted).

## 2. Analysis

As a threshold issue, the Court considers whether Ocean Properties waived the arguments presented in its renewed motion by failing to raise them in its 50(a) motion at trial. Ocean Properties argues in its reply brief that "strict adherence to Rule 50 is not required," citing *Lynch v. City of Boston*, 180 F.3d 1, 13 n.9 (1st Cir. 1999), and *Simon*, 71 F.3d at 14. While it is true that courts have at times accepted Rule 50(a) motions that present arguments with varying degrees of specificity and completeness, the First Circuit has never wavered in its interpretation of the Federal Rule of Civil Procedure requirement that parties bring an argument in a 50(a) motion in order to later present the same argument in a renewed 50(b) motion. *See Jones ex rel. U.S. v. Mass. Gen. Hosp.,* 780 F.3d 479, 487-88 (1st Cir. 2015); *Segarra*, 590 F.3d at 26 n.4; *Correa,* 69 F.3d at 1196.

In *Lynch*, which Ocean Properties cites as support for its position that several of its arguments should be considered despite failing to raise them in a Rule 50(a) motion, the First Circuit stated:

> To be sure, [the movant] could have made the argument more precisely in her Rule 50(a) motion, but "[t]he rule does not require technical

precision in stating the grounds of the motion. It does require that they be stated with sufficient certainty to apprise the court and opposing counsel of the movant's position with respect to the motion." 9A C. Wright & A. Miller, *Federal Practice and Procedure,* § 2533, at 310–11 (1995).

180 F.3d at 13.

Ocean Properties raised four arguments in the form of Rule 50(a) motions: (1), that Mr. Burnett did not establish that Ocean Properties met the requirements for integrated employer, *Trial Tr. II* 270:16-21; (2) that Mr. Burnett also failed to prove that Ocean Properties met the requirements for joint employer, *id.*; (3) that the record did not contain sufficient evidence to support a punitive damages instruction,[3] *id.* 312:23-313:23; and (4) that judgment as a matter of law should be granted in its favor because Mr. Burnett failed to show the accommodation he requested was reasonable, *id.* 316:3-24.

As noted by Mr. Burnett in his opposition brief, Ocean Properties never argued in a Rule 50(a) motion that he failed to prove Ocean Properties had fifteen or more employees, the so-called "numerosity requirement" of the ADA. *Pl.'s Opp'n to Rule 50(b) Mot.* at 2. It also never argued that the administrative charge was defective because it failed to name Ocean Properties. Finally, Ocean Properties did not argue that it could not be held liable for punitive damages based on AmeriPort's conduct. *Id.*

Although the arguments brought on a Rule 50(a) motion need not be stated with "technical precision," the rule requires that the movant's arguments "be stated

---

[3] The 50(a) motion regarding punitive damages and failure to show a reasonable accommodation request was brought jointly by Ocean Properties along with AmeriPort.

with sufficient certainty to apprise the court and opposing counsel of the movant's position with respect to the motion." *Lynch*, 180 F.3d at 13. "As the name implies, a renewed motion for judgment as a matter of law under Fed. R. Civ. P. 50(b) is bounded by the movant's earlier Rule 50(a) motion." *Correa*, 69 F.3d at 1196. In *Lynch*, the arguments were raised by the movant artlessly or without specificity, but the First Circuit concluded that they were raised "with sufficient certainty to apprise the court and opposing counsel of the movant's position with respect to the motion." *Lynch*, 180 F.3d at 13. Here, they were not raised at all. As such, pursuant to established caselaw and Federal Rule of Civil Procedure 50, the Court finds these arguments are waived and are not available in support of Ocean Properties' renewed motion.

### a. Integrated Enterprise

Ocean Properties renews its Rule 50(a) argument that Mr. Burnett failed to establish an integrated employer relationship between AmeriPort and Ocean Properties; therefore, no reasonable jury can assign liability to Ocean Properties. *Def.'s Rule 50(b) Mot.* at 1.

In *Romano*, the First Circuit recognized the integrated enterprise test as what "currently appears to be the standard adopted, or at least applied, by a majority of circuits that have reached the issue in Title VII cases" of whether the minimum-employee threshold has been met to impose liability. 233 F.3d at 665-66. In *Moreno v. John Crane, Inc.*, the district court applied the First Circuit's recognition and adoption of the test in Title VII cases to an action under the ADA. 963 F. Supp. 72, 75 (D.P.R. 1997) (citing *Mas Marques v. Dig. Equip. Corp.*, 637 F.2d 24 (1st Cir. 1980).

Four factors are considered under the integrated enterprise test to determine "whether two or more entities are a single employer" are "(1) common management; (2) interrelation between operations; (3) centralized control over labor relations; and (4) common ownership." *Torres-Negron v. Merck & Co., Inc.,* 488 F.3d 34, 42 (1st Cir. 2007) (citing *Romano*, 223 F.3d at 662). However, "[a]ll four factors . . . are not necessary for single-employer status. Rather, the test should be applied flexibly, placing special emphasis on the control of employment decisions." *Id.* (citing *Romano*, 223 F.3d at 666).

The First Circuit has consistently held that "centralized control of labor relations [is] the 'primary consideration in evaluating employer status.'" *Torres-Negron*, 488 F.3d at 42 (citing *Romano* 233 F.3d at 666). This case is similar to *Torres-Negron* in that "there is a significant amount of evidence weighing in favor of a single-employer finding." *Id.* at 43. Mr. Burnett testified that he understood his employer to be Ocean Properties, *Trial Tr. I* 42:20-22; he signed a probationary hiring form stating his employer was "Ocean Properties," *id.* at 42:17-22; and he was given an Ocean Properties employee handbook, *Pl.'s Tr. Ex.* 3. *Pl.'s Opp'n to Rule 50(b) Mot.* at 10. Although Ms. Darsaoui claims the form was created in error, viewing all evidence in the light most favorable to Mr. Burnett, the hiring statement is strong evidence of centralized control of labor relations.

A hiring advertisement published by Ocean Properties, Ltd., stated "join our call center team! Ocean Properties, Ltd., is one of the largest privately held hotel management and development companies in North America." *Pl.'s Tr. Ex.* 65. On

the advertisement, Ms. Darsaoui's contact information is listed, along with her "@oceanprop.com" email address.  *Id*.  Although Ms. Darsaoui stated that she was an employee of AmeriPort, not Ocean Properties, the advertisement shows a link between the two entities.

Furthermore, although Ms. Darsaoui testified that her supervisor, Ms. Dawson, was an employee of Portsmouth Corporate Financial Services, Incorporated (PCFSI), a jury could reasonably infer based on Ms. Darsaoui's testimony and exhibits entered at trial that PCFSI is a corporate office associated with Ocean Properties.  The hiring statement signed by Mr. Burnett, acknowledging him as an "an employee of Ocean Properties Ltd. or Affiliated Companies," directs "all legal services, legal papers, contracts, leases, or written agreements" to PCFSI, at the address of the corporate office where it was established that Ms. Dawson's supervisor, Tom Varley, works, along with human resources employee, Cedric Rothkegel.  *Trial Tr. I* 124:23-125:1; *id*. 130:8-16.  Employees at the PCFSI corporate office gave Ms. Darsaoui's guidance on her human resources questions, further demonstrating shared control of labor relations.  *Id*.

Some of the evidence cited above could be construed by the jury as evidence of interrelation between operations, as well.  According to the First Circuit in *Romano*, "[e]xamples include: shared employees, services, records, office space, and equipment, commingled finances, and handling by the parent of subsidiary tasks such as payroll, books, and tax returns."  233 F.3d at 667.  Here, employees who worked at AmeriPort were supervised by employees of PCFSI, which as noted, a jury could infer is

connected to Ocean Properties. Moreover, as testified by Ms. Darsaoui, after she conducted payroll, she routinely sent it to the payroll administrator at PCFSI to process the payroll and send it to another entity to issue paychecks. *Trial Tr. II* 240:12-18.

The parties dispute whether evidence of common ownership was brought at trial; they also dispute the importance of this factor in the single-enterprise test. *See Pl.'s Opp'n to Rule 50(b) Mot.* at 9; *Def.'s Rule 50(b) Mot.* at 8. According to Ocean Properties, "[t]here was not a scintilla of evidence presented to the Jury as to who owned AmeriPort or who owned OPL." *Def.'s Rule 50(b) Mot.* at 8. The Court agrees that the record lacks overwhelming evidence of common ownership or financial control between the entities; however, that is not to say that the record lacks sufficient evidence to support a reasonable jury concluding that common ownership existed. In fact, the evidence the district court cited as establishing common ownership in *Arroyo-Perez* is similarly demonstrated here. 762 F. Supp. 2d at 385-88.

In *Arroyo-Perez*, as noted by Ocean Properties, employees of one entity "directed and managed the affairs" of the other entity.[4] *Id.* at 8 (citation omitted).

---

[4]     In its motion, Ocean Properties asserts that the *Arroyo-Perez* order is a decision of the First Circuit. *Def.'s Rule 50(b) Mot.* at 8 ("The importance of the presence of common ownership facts is exemplified in the First Circuit's decision in *Arroyo-Perez v. Demir Group International*, 762 F. Supp. 2d 374 (1st Cir. 2011)"). It is not. The author of *Arroyo-Perez* is Magistrate Judge Arenas of the District of Puerto Rico. 762 F. Supp. 2d at 375. The proper citation is *Arroyo-Perez v. Demir Group International*, 762 F. Supp. 2d 374 (D.P.R. 2011).

The distinction is significant because this Court is bound by the decisions of the First Circuit Court of Appeals, but not the decisions of the United States District Court of Puerto Rico. Despite the miscitation, the Court assessed with respect Judge Arenas' decision as his considered judgment. In addition, Judge Arenas cited the four-factor test set forth in *Romano*, which is a First Circuit case. *Id.* 762 F. Supp. 2d at 385 (citing *Romano*, 233 F.3d at 665).

"The Court noted that evidence that documents bearing DGI Canada's name and emails on the Plaintiff's employer had been sent, unlike here, by a person expressly found to be and identifying himself as a DGI Canada employee." *Id.*[5] Here, although Ms. Darsaoui did not admit to being employed by Ocean Properties, she had an Ocean Properties email address, and a reasonable jury could find that Ms. Dawson was an employee of a corporate office connected with Ocean Properties. Ms. Darsaoui, who testified to running AmeriPort, testified that Ms. Dawson was her direct supervisor. *Trial Tr. II* 240:17. Furthermore, the fact that Mr. Burnett signed an Ocean Properties hiring statement is additional evidence of common ownership. *Pl.'s Tr. Ex.* 2.

The Court also does not agree with Ocean Properties' interpretation of *Arroyo-Perez* that "common ownership [is] a very important, if not indispensable fact toward establishing integrated employer." *Def.'s Rule 50(b) Mot.* at 8. In *Arroyo-Perez*, the district court listed four factors for the "integrated-enterprise test": "(1) interrelation of operations; (2) common management; (3) centralized control of labor operations; and (4) common ownership." 762 F. Supp. 2d at 385 (*citing Hisbrunner v. Martinez Ramirez*, 438 F. Supp. 2d 10, 14 (D.P.R. 2006) (*citing Molina Viera v. Yacoub*, 425 F. Supp. 2d 202, 204 (D.P.R. 2006) (*citing Romano v. U-Haul Int'l*, 233 F.3d 655, 666 (1st Cir. 2000)). In *Arroyo-Perez*, the district court found that "[t]he plaintiff submits sufficient evidence of the commonality of ownership, operation, and management

---

[5]     Ocean Properties recited these facts in *Arroyo-Perez* but did not provide a citation. It would have been helpful if counsel had cited the *Arroyo-Perez* case and provided a pin cite for the page setting forth these facts, instead of leaving it to the Court to find the reference.

between DGI Canada and DGI Florida to be counted as one company for the Title VII numerosity requirement," but the district court did not indicate that it weighed one factor more than the others in reaching this conclusion. *Id*. at 386.

Contrary to Ocean Properties' position, the First Circuit has held that centralized control of labor relations should be the "*primary* consideration in evaluating employer status." *Torres-Negron*, 488 F.3d at 42 (citing *Romano* 233 F.3d at 666) (emphasis added). In *Romano*, the First Circuit wrote that "[o]f the circuits that have applied the integrated-enterprise test, there is near unanimity that control of labor operations i.e. control of employment decisions, is the most important of the four factors." *Romano*, 233 F.3d at 666. Here, there is evidence of centralized control of labor relations, as well as the other factors in the integrated enterprise test, that, taken as a whole, is sufficient to support the jury's determination that Ocean Properties and AmeriPort were an integrated enterprise.

### b.   Joint Employer

"The joint employer doctrine seeks to hold an entity liable to an employee of another entity if the evidence shows that it sufficiently had power over the employee in question." *Acosta,* 674 F. Supp. 2d at 371. To determine whether two employers fall under the doctrine, it must be determined whether both control "the labor relations of a given group of workers." *Rivas,* 929 F.2d at 820 (citation and internal quotation marks omitted). "The joint employer concept recognizes that the business entities involved are in fact separate but that they *share* or co-determine those conditions of employment." *Id*. at 820 n.17. (emphasis in original) (citations omitted).

The First Circuit has "favorably acknowledged a host of factors used by other courts used in determining the existence of joint employer status." *Rivera-Vega*, 70 F.3d at 163 (citing *Holyoke,* 11 F.3d at 306; *Rivas,* 929 F.2d at 820-21). These include:

> Supervision of the employees' day-to-day activities; authority to hire, fire, or discipline employees; authority to promulgate work rules, conditions of employment, and work assignments; participation in the collective bargaining process; ultimate power over changes in employer compensation, benefits and overtime; and authority over the number of employees.

*Id.* (citing *W.W. Grainger, Inc. v. NLRB,* 860 F.2d 244, 247 (7th Cir. 1988); *Clinton's Ditch Coop. Co. v. NLRB,* 778 F.2d 132, 138-39 (2d Cir. 1985), *cert. denied,* 479 U.S. 814 (1986); *Ref-Chem Co. v. NLRB,* 418 F.2d 127, 129 (5th Cir. 1969)). Whether the respondents retained sufficient control over employees to be considered a joint employer is a factual issue. *Boire v. Greyhound Corp.*, 376 U.S. 473, 481 (1964).

The Court concludes there is enough evidence in the record to support a reasonable jury's finding that Ocean Properties acted as joint employer alongside AmeriPort. Although Mr. Burnett stated that he believed his employer to be Ocean Properties, there was evidence to show Mr. Burnett was employed by AmeriPort, including his W-2 form. *Pl.'s Tr. Ex.* 14. A jury could also reasonably conclude that Ocean Properties had the authority to promulgate work rules for the reservation center, since Mr. Burnett was provided with an Ocean Properties' Employee Handbook, he signed a form acknowledging a probationary period of employment with Ocean Properties, and his hiring statement referenced "Ocean Properties and Affiliated Companies." *Pl.'s Tr. Ex.* 1; *Pl.'s Tr. Ex.* 2; *Pl.'s Tr. Ex.* 4. Mr. Burnett also participated in an employee benefits program administered by Ocean Properties, not

AmeriPort. *Pl.'s Tr. Ex*. 13. Although Ms. Darsaoui testified that she ran the day-to-day operations of the AmeriPort reservation center, her direct supervisor, Joyce Dawson, also worked in the same building and was on the payroll of PCFSI, a corporate office connected with Ocean Properties. *Trial Tr. II* 230:6-21. A reasonable jury could find that Ms. Dawson, in her supervisory capacity, had authority over whether to hire, fire, or discipline employees. The evidence that Ocean Properties retained sufficient control over AmeriPort employees is satisfactory to maintain the jury's verdict that Ocean Properties and AmeriPort were joint employers of Mr. Burnett.

### c.     Minimum-Employee Threshold

Ocean Properties also avers that Mr. Burnett "failed to put on any proof at trial that OPL had any employees; therefore, he failed to show that Ocean Properties met the fifteen-employee requirement for application of Title VII and the ADA. *Def.'s Rule 50(b) Mot*. at 3. As discussed supra, the court finds that Ocean Properties failed to raise this argument in a Rule 50(a) motion, and it is waived. Even if the Court were to reach its merits, however, the argument would fail under the principle of aggregation.

Under 42 U.S.C. § 12112, only a "covered entity" is prohibited from discriminating against an employee. Section 12111(2) includes an employer as a covered entity. For purposes of the ADA, "employer" is defined as "a person engaged in an industry affecting commerce who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year,

and any agent of such person . . .." § 12111(5)(A). Courts must focus their inquiry on the calendar year in which the alleged discrimination occurred or the preceding calendar year in determining whether the employer was a covered entity. *De Jesús v. LTT Card Servs., Inc.*, 474 F.3d 16, 19 (1st Cir. 2007). The Supreme Court has interpreted the employee numerosity requirement as an element of the plaintiff's claim for relief, rather than "an ingredient of subject-matter jurisdiction in delineating diversity of citizenship jurisdiction under 28 U.S.C. § 1332." *Arbaugh v. Y&H Corp.,* 546 U.S. 500, 515 (2006); *see also De Jesús*, 474 F.3d at 19.

The First Circuit has not directly considered whether employers can be aggregated to meet the fifteen-employee threshold under § 12111(5)(A). However, the district court in *Rey-Cruz v. Forensic Science Institute* explained that "the ADA and Title VII are identical in many respects . . . [and] the ADA's definition of employer tracks that of Title VII, and similarly limits liability to employers with 15 or more workers." 794 F. Supp. 2d 329, 334 (D.P.R. 2011) (comparing 42 U.S.C. § 2000e(b) with § 12111(5)(A)); *Lopez v. Massachusetts*, 588 F.3d 69, 84 (1st Cir. 2009) ("employer" under Title I of the ADA has the same meaning as "employer" under Title VII of the Civil Rights Act); *see also Walsh v. Nev. Dep't of Human Res.,* 471 F.3d 1033, 1038 (9th Cir. 2006); *De Jesús*, 474 F.3d at 21. The Court, therefore, will consider relevant caselaw regarding the employee-numerosity requirement under Title VII in its analysis.

To prove the minimum-employee requirement, the plaintiff must show that "an employer has employment relationships with the requisite number of employees . . .

In this circuit, we have applied the common-law agency test to decide whether an individual is an employee for the purposes of the ADA." *Escribano-Reyes v. Prof'l Hepa Certificate Corp.*, 817 F.3d 380, 389 (1st Cir. 2016) (citations omitted). "Courts may rely on the 'payroll method,' or calculating the number of employees who are on the payroll for each day of a given week regardless of whether they were actually present at work each day, to determine whether an employer has reached Title VII's threshold number." *Aly,* 711 F.3d at 44-45 (citing *Walters v. Metro. Educ. Enters., Inc.,* 519 U.S. 202, 207 (1997); *De Jesús,* 474 F.3d at 21). Although Ocean Properties contends that the payroll method should be used to prove the minimum-employee threshold, *Def.'s Rule 50(b) Mot*. at 4, the First Circuit has clarified that "payroll records are not dispositive . . .. " *Escribano-Reyes*, 817 F.3d at 388 (citing *De Jesús,* 474 F.3d at 22).

In *Escribano-Reyes*, the First Circuit found that the plaintiffs failed to prove on summary judgment the employee-employer relationship, after considering a list of twenty-seven employee names with general job titles and rough estimates of the time periods during which some of them allegedly worked for the employer, which was based on the plaintiffs' personal knowledge. *Id*. The First Circuit concluded that "[w]ithout more concrete, specific evidence, a reasonable trier of fact simply could not find that the individuals on Escribano's list . . . were in an employment relationship with HEPA." *Id*. at 390. *Cf. Ost v. W. Suburban Travelers Limousine, Inc.,* 88 F.3d 435, 439–40 (7th Cir. 1996) (finding that an affidavit from an employee that her employer had twenty-four employees was "too vague a submission to carry her

burden" to prove that her employer was covered by Title VII)). The First Circuit also held that "[t]he evidence Escribano submitted was . . . insufficient to satisfy the temporal requirement in the definition of 'employer,' namely that HEPA had fifteen . . . 'or more employees were each working day in each of 20 or more calendar weeks in the current or preceding calendar year.'" *Id.* (citing 42 U.S.C. § 12111(5)(A); *see also* 29 U.S.C. § 630(b)).

In *Aly*, the First Circuit considered whether the record evidence of the minimum number of employees was sufficient to uphold a jury's verdict. 711 F.3d at 45. In that case, it was undisputed that the employer "employed fourteen employees full-time for a period of at least twenty weeks during the relevant period." *Id.* at 45-46. Additionally, "[t]he evidence of payroll and timecards submitted into the record show that most of the 61 part-time or seasonal workers were employed during the seven-week summer camp." The *Aly* Court concluded that "[a] reasonable jury could find, based on this evidence, that any one or combination of the sixty-one employees" could fill the eight-week gap between the fifteenth employee, who worked for twelve weeks, and the twenty-week threshold. *Id.* at 46.

Mr. Burnett contends that "there was ample evidence at trial from which the jury could determine that [Ocean Properties] had more than fifteen employees, thereby satisfying the numerosity requirements of the ADA and the MHRA." *Pl.'s Opp'n to Rule 50(b) Mot.* at 3. In support, Mr. Burnett cites Ms. Darsaoui's testimony that Ocean Properties is one of the largest privately held hotel companies in North America, as well as her statement that "if all the employees who worked at the

various [Ocean Properties] hotels and affiliates were added together, there would be over 500 employees." *Id*. at 4 (citing *Trial Tr. Vol. II* 223:20-22). Mr. Burnett also argues that because AmeriPort is "one of many [Ocean Properties] affiliates," and AmeriPort has 75 to 100 employees on average, Ocean Properties must have more than fifteen employees. *Id*. Mr. Burnett also testified that he understood his employer to be Ocean Properties, which is supported by evidence of a hiring statement, which states, "I, Ryan Burnett, recognize and accept as a term of hire a 90-day probationary period with Ocean Properties." *Pl.'s Tr. Ex.* 1. This is the most specific evidence in the trial record that goes to meet the minimum-employees threshold, but as Mr. Burnett is only one employee, it falls short.

Given that much more specific evidence than this was deemed insufficient in *Escribano*, the Court cannot find that Mr. Burnett showed Ocean Properties was independently an entity covered by the ADA. Mr. Burnett did not name a single employee of Ocean Properties, did not demonstrate an employer-employee relationship for any individuals, and did not establish the number of employees Ocean Properties had during 2014, the year that the discrimination allegedly took place. Based on the trial record, the Court finds that the evidence that Ocean Properties met the minimum-employee requirement was not sufficient for a reasonable jury to find that Ocean Properties was an entity covered by the ADA.

This does not end the matter, however. Where, as here, the plaintiff cannot demonstrate that the direct employer satisfies the minimum-employee threshold, some courts have aggregated the employees of the actual employer and a related

entity to meet the threshold through various theories of liability, including joint employer and integrated enterprise. *See Romano,* 233 F.3d at 655; *Armbruster v. Quinn,* 711 F.2d 1332, 1336 (6th Cir. 1983), *abrogated by Arbaugh v. Y&H Corp.,* 546 U.S. 500 (2006); *Astrowsky v. First Portland Mortg. Corp.*, 887 F. Supp. 332, 336 (D. Me. 1995); *Auslander v. Collier & Tiku Assocs.*, 94 Civ. 11228 (MEL), 1995 WL 381666, at *2 (D. Mass. June 9, 1995). Although whether multiple employers may be aggregated to meet the minimum-employee threshold required by § 12111(5)(A) has not been reached by the First Circuit, the analogous Title VII cases cited above support the Court's conclusion that aggregation is appropriate here.

As explained above, sufficient evidence exists on this record to support a reasonable jury finding a joint employer or integrated enterprise relationship between Ocean Properties and AmeriPort. Mr. Burnett established at trial that AmeriPort has between seventy-five and 100 employees. Under either a joint employer theory or an integrated enterprise theory, the jurisdictional threshold of fifteen or more employees has been met as to Ocean Properties through the principle of aggregation. The Court, therefore, declines to disrupt the jury's verdict as to Ocean Properties on the grounds that Mr. Burnett failed to establish the minimum-employee element required for him to succeed in his ADA claim.

### d. Jury Instructions and Verdict Form

Ocean Properties argues that it is entitled to judgment as a matter of law because the Court erred in its jury instructions and verdict form by failing to state that the jury could assign liability to Ocean Properties as a joint employer or an

integrated enterprise, but not both. *Def.'s Rule 50(b) Mot.* at 6. It further contends that this error is not harmless, because the determination of Ocean Properties' employer status impacts the numerosity requirement and punitive damages liability. *Id*. The Court disagrees.

Under Federal Rule of Civil Procedure 51, the court must give the parties an opportunity to object to its proposed jury instructions before closing arguments and the instructions are delivered. *Rosa-Rivera v. Dorado Health, Inc.*, 787 F.3d 614, 618 (1st Cir. 2015) (citing FED. R. CIV. P. 51(b)(2)). The rule also requires that:

> For an objection to be timely (except in circumstances not relevant here), it must be made at this point. Failure to do so means the objection is forfeited and reviewed for plain error only, the idea being that the trial judge should be afforded the opportunity to cure the alleged error and litigants stopped from ensuring a new trial in the event of an adverse verdict by covertly relying on the error.

787 F.3d 614, 618 (1st Cir. 2015) (citations and internal quotations omitted). The First Circuit has advised that "the requirements of Rule 51 'are not to be taken lightly' and 'there is a high price to be paid for noncompliance.'" *Booker v. Mass. Dep't of Pub. Health*, 612 F.3d 34, 41 (1st Cir. 2010) (quoting *DeCaro v. Hasbro, Inc.,* 580 F.3d 55, 60 (1st Cir. 2009)).

The Defendants did not object to the court's proposed jury instructions during the charge conference nor did they object to the instructions after they were presented to the jury. Although there was discussion during the charge conference regarding the definitions of joint employer and integrated enterprise that would be included in the instructions, the Defendants never argued that an instruction limiting the jury to assign liability under one or the other theory should be given.

Furthermore, the Defendants specifically agreed that Ocean Properties and AmeriPort could be found both joint employers and an integrated enterprise in response to the jury's question on the subject. The Court held a conference of counsel after receiving the following question from the jury during its deliberations: "[i]s it possible that both questions three and four [on the verdict form] could be answered yes?" *Trial Tr. III* 375:7-10. Question three of the verdict form stated: "[w]as Ocean Properties an employer or joint employer of Mr. Burnett?" *Verdict* at 1. Question four stated: "[w]ere Ocean Properties and AmeriPort integrated employers of Ryan Burnett?" *Id.* at 2. The following discussion ensued:

| | |
|---|---|
| THE COURT: | I don't think there's anything that prohibits them from answering both questions yes; do you agree? |
| MS. DESKINS: | I have no disagreement, no. |
| THE COURT: | So, what I'll do is just simply answer – I'll say in response to your question, the answer is yes, both questions 3 and 4 could be considered yes and leave it at that. Is there any objection to that? |
| MS. WHITE: | No, Your Honor. |
| THE COURT: | Any objection? |
| MS. DESKINS: | No. |

*Trial Tr. III* 375:16-376-1.

Not only did the Defendants fail to object when the issue was specifically raised, they agreed with the proposition that the jury could find liability on both theories. "The failure to object to the instructions at the time, and in the manner, designated by Rule 51 is treated as a procedural default, with the result that

the jury instructions, even if erroneous, become the law of that particular case." *Toscano v. Chandris, S.A.*, 934 F.2d 383, 385 (1st Cir. 1991). The issue, therefore, is subject only to plain error review, a standard reserved for "egregious circumstances" where "the alleged error seriously affected the fairness or integrity of the trial." *Id.* (citations omitted).

The Court recognizes that the verdict does not delineate whether the jury assigned liability to Ocean Properties as employer, as joint employer or as an integrated employer based on its answer to question three. In light of this ambiguity, the Court cannot know whether the jury found Ocean Properties liable as Mr. Burnett's employer, participating in an integrated enterprise with AmeriPort, or whether the jury found Ocean Properties liable under both the joint employer and integrated enterprise theories. There is, therefore, a possibility that the two answers are legally incongruent, but the Court will not second-guess the jury's findings in assigning liability in order to overturn a verdict that is entitled to substantial deference. As discussed above, the evidence presented at trial is sufficient to support either theory of liability; therefore, no harmful error resulted from the Court's failure to instruct the jury that the theories of liability presented were mutually exclusive.

Given the sufficiency of the evidence as to each theory, and due to the Defendants' waiver on the issue at multiple points at trial, the Court will not disrupt the jury's verdict on the contention that it erred in failing to instruct the jury that the theories of liability presented were mutually exclusive. Pursuant to Rule 51(d)(1)(b), the Defendants forfeited their objection by not raising it during trial, and they

subsequently waived the argument by failing to raise it in their 50(a) motion. "It strains credulity well past the breaking point to argue that the defendant's self-created plight can fit within so exclusive a classification" as the plain error standard. *Toscano*, 934 F.2d at 385. The Court denies Ocean Properties' Rule 50(b) motion.

## III. MOTION FOR NEW TRIAL

Ocean Properties also moves for a new trial based on the alleged inconsistency of the verdict discussed above. *Def.'s Mot. for New Trial* at 1-2.

### A. Positions of the Parties

#### 1. Ocean Properties' Motion

Ocean Properties reiterates one of its Rule 50(b) arguments, that "[t]he [j]ury's verdict was inconsistent with the jury instructions and internally inconsistent because it found that OPL was both a joint employer with AmeriPort and an integrated employed with AmeriPort," advancing it this time on the grounds of Rule 59(a). *Id.* at 1. According to Ocean Properties, "[t]he mutual exclusivity between 'joint employer' and 'integrated employer' and the different implications of each have been universally recognized." *Id.* at 3 (citing *Bouey v. Orange Cty. Serv. Unit*, 673 Fed. Appx. 952, 954 (11th Cir. 2016); *Browning-Ferris Indus. of Pa.*, 691 F.2d 1117, 1121-23 (3d Cir. 1982)). Ocean Properties contends that the inconsistent factual conclusions reached by the jury are harmful error, because of the implications of joint employer status on the numerosity requirement under the ADA as well as on liability for punitive damages. *Id.* at 3-4.[6]

---

[6] Quoting *Dunn v. United States*, 284 U.S. 390, 387 (1932), Ocean Properties contended in its memorandum that the Supreme Court has held that "no judgment is proper on inconsistent verdicts."

## 2. Ryan Burnett's Response

In his opposition, Mr. Burnett contends that Ocean Properties waived any inconsistency in the verdict form by failing to object to the court's instruction on the verdict form, by agreeing to the Court's proposed response to a jury question on the exact issue, and by failing to timely object to any alleged inconsistency after the verdict was read. *Pl.'s Opp'n to Mot. for New Trial* at 1-3.

According to Mr. Burnett, Ocean Properties has not met the standard for a new trial pursuant to Federal Rule of Civil Procedure 59. *Id.* at 3. Mr. Burnett notes the First Circuit's "'substantial reluctance' to ordering a new trial based on inconsistent civil jury verdicts," *id.* (quoting *McIsaac v. Didriksen Fishing Corp.*, 809 F.2d 129, 133 (1st Cir. 1987) (citing *Merchant v. Ruhle,* 740 F.2d 86, 91 (1st Cir. 1984)), as well as its view that "[a] special verdict will be upheld 'if there is a view of the case which makes the jury's answers consistent.'" *Id.* (quoting *McIsaac*, 809 F.2d at 133).

Addressing the merits of Ocean Properties' arguments, Mr. Burnett disputes its position that the integrated enterprise test and the joint employer test are "diametrically opposed," as the factors for each test are "highly similar." *Id.* at 4. Mr. Burnett cites caselaw in which the court found that under either an integrated enterprise or joint employer theory, the result was the same. *Id.* at 4-5 (quoting *Hamilton v. Partners Healthcare Sys., Inc.*, 209 F. Supp. 3d 379, 390 (D. Mass. 2016)

---

*Def.'s Mot. for New Trial* at 4-5. However, as the Court pointed out at the oral argument, the citation, though Ocean Properties presented it as the majority ruling of the Supreme Court, was actually from the dissent by Mr. Justice Butler. As the Court discusses, the majority rule is flatly to the contrary. *Dunn*, 284 U.S. at 393 ("Consistency in the verdict is not necessary"). Following oral argument, on July 26, 2019, Ocean Properties moved to formally withdraw portions of its post-trial brief, including its miscitation of *Dunn*. *Unopposed Mot. to Formally Withdraw Portions of the Post-Trial Br.* (ECF No. 237). The Court granted the motion the day it was filed. *Order* (ECF No. 239).

(citing *Anderson v. Theriault Tree Harvesting, Inc.*, 2010 WL 323530 (D. Me. Jan. 20, 2010))).  Because of this, Mr. Burnett disputes that the verdict was inconsistent, as Ocean Properties avers.  *Id.* at 5.

### 3.    Ocean Properties' Reply

In reply, Ocean Properties contends that it did not fail to object to the Court's proposed response to the jury question, but instead it agreed with the Court's "preference to allow [the jury] to proceed" because the Court implied that "it planned to work with the parties to figure out how to process that issue" if incompatible findings were reached.  *Def.'s Reply Mot. for New Trial* at 1-2.  According to Ocean Properties, the Court did not address the issue when the incompatible result was reached, because "the Court's priority was to move the jury into the punitive damages phase of their deliberations as quickly as possible."  *Id.* at 2.  Because the Court failed to act on the expectation it had conveyed to the parties, Ocean Properties contends that its failure to object should be excused.  *Id.*  Ocean Properties reiterates its position that the jury's determination that Ocean Properties was both a joint employer and an integrated employer is inconsistent and cannot be reconciled.  *Id.* at 3.

### B.    Discussion

### 1.    Legal Standard: Motion for a New Trial

Federal Rule of Civil Procedure 59(a) permits a party to move for a new trial, "after a jury trial, for any reason for which a new trial has heretofore been granted in

an action at law in federal court." FED. R. CIV. P. 59(a)(1). When assessing a motion for a new trial, a trial judge has limited discretion:

> A trial judge may not grant a motion for a new trial merely because he or she might have reached a conclusion contrary to that of the jurors, rather, the trial judge may set aside a jury's verdict only if he or she believes that the outcome is against the clear weight of the evidence such that upholding the verdict will result in a miscarriage of justice.

*Conway v. Electro Switch Corp.*, 825 F.2d 593, 598–99 (1st Cir. 1987).

## 2. Analysis

The Court retraces familiar ground with the Defendant's motion for a new trial. Ocean Properties hopes for a different result, noting that "[a] Rule 59 motion for a new trial is governed by a more lenient standard than a motion for judgment as a matter of law." *Def.'s Reply Mot. for New Trial* at 1. The Court, having addressed the issue of the alleged inconsistency in the jury's findings above, applies the Rule 59(a) standard.

Addressing inconsistent verdicts, the United States Supreme Court in *Dunn* stated definitively, "[c]onsistency in the verdict is not necessary." *Id.*, 284 U.S. at 393. Similarly, the Supreme Court held in *Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, Limited*:

> Where there is a view of the case that makes the jury's answers to special interrogatories consistent, they must be resolved that way. For a search for one possible view of the case which will make the jury's finding inconsistent results in a collision with the Seventh Amendment.

369 U.S. 355, 364 (1962) (citations omitted). The First Circuit maintains the same view. *See McIsaac,* 809 F.2d at 133 ("We note, initially, our 'substantial reluctance

to consider inconsistency in civil jury verdicts a basis for new trials'") (quoting *Merchant,* 740 F.2d at 91).

As discussed in the Court's analysis of the Ocean Properties' 50(b) motion, the Court does not find the jury's verdict necessarily inconsistent for several reasons. First, Ocean Properties mischaracterizes the verdict form. Ocean Properties contends that the verdict was "internally inconsistent because it found that [Ocean Properties] was both a joint employer with AmeriPort and an integrated employer with AmeriPort." *Def.'s Mot. for New Trial* at 1. In fact, question three of the verdict form states: "[w]as Ocean Properties an employer or joint employer of Mr. Burnett?" *Verdict* at 1. In response, the jury checked "yes." *Id.* Question four states: "[w]ere Ocean Properties and AmeriPort integrated employers of Ryan Burnett?" *Id.* at 2. The jury checked "yes." *Id.* In the Court's view, therefore, it is not clear based on the special interrogatories, agreed to by the parties, whether the jury found Ocean Properties to be an employer, a joint employer, an integrated employer, or all three.

The jury might have found Ocean Properties to be both an integrated employer and a joint employer of Mr. Burnett. Ocean Properties argues that given the different tests for the two employer theories of liability, this finding would be legally inconsistent. The Court acknowledges that the two theories are distinct, but it also agrees with Mr. Burnett that the tests for joint employer and integrated employer are "highly similar." *Pl.'s Opp'n to Mot. for New Trial at* 4. As concluded *supra*, sufficient evidence exists in the record to support a jury's finding of liability under either theory.

But the jury may have instead determined that Ocean Properties was both an employer and an integrated employer of Mr. Burnett. Because the integrated employer test is used to determine whether "separate entities will be deemed to be parts of a single employer," *Engelhardt*, 472 F.3d at 4, the Court does not view a determination by the jury that Ocean Properties was both Mr. Burnett's employer and his integrated employer as legally inconsistent. In any event, the Supreme Court has specifically warned against "search[ing] for one possible view of the case which will make the jury's finding inconsistent." *Atl. & Gulf Stevedores, Inc.,* 369 U.S. at 364. Here, there are views of the case that makes the jury's answers to the special interrogatories consistent. Furthermore, the jury's verdict is supported by the evidence, and no miscarriage of justice will result from upholding it.

The Court denies Ocean Properties' request for a new trial.

## IV. MOTION FOR REMITTITUR

Finally, in an alternative pleading, Ocean Properties requests the Court reduce or set aside the jury's verdict. *Def.'s Mot. for Remittitur* at 1.

### A. Positions of the Parties

#### 1. Ocean Properties' Motion

Ocean Properties argues that the damages award should be reduced on several bases. First, it contends that because Mr. Burnett did not bring sufficient evidence to show the number of individuals employed by Ocean Properties' and the evidence shows AmeriPort has fewer than 100 employees, the statutory cap on punitive damages is $50,000. *Id.* Next, Ocean Properties argues that "Plaintiff cannot obtain

duplicative recoveries of punitive damages under both the ADA and the MHRA." *Id.* at 1-2. The company finally asks the Court to "reduce the compensatory and punitive damages to a de minimis figure . . .," because the evidence at trial is insufficient, and because the jury's awards were "grossly excessive" and "shocking to the conscience." *Id.* at 2.

According to Ocean Properties, the compensatory damages award is "grossly disproportionate to any injury established by the evidence" and therefore "unconscionable as a matter of law." *Id.* at 5 (quoting *Koster v. Trans World Airlines, Inc.*, 181 F.3d 24, 34 (1st Cir. 1999)). Ocean Properties cites several cases from other circuits in which the plaintiff's own testimony was determined to be insufficient to support significant awards of compensatory damages for emotional distress. *Id.* (citing *Thomas v. Tex. Dep't of Criminal Justice*, 297 F.3d 361, 363, 370-72 (5th Cir. 2002); *Giles v. GE,* 245 F.3d 474, 489 (5th Cir. 2001); *Annis v. Cty. of Westchester*, 136 F.3d 239, 249 (2d Cir. 1998)). Ocean Properties says that the evidence at trial shows "an isolated incident of frustration from not having a person respond to an email communication[, which] hardly justifies an award of $150,000." *Id.* at 6. Mr. Burnett, Ocean Properties argues, "failed to prove that his employer's failure to provide him with a reasonable accommodation damaged him in any meaningful way . . .." *Id.* at 7.

With regard to the punitive damages award, Ocean Properties contends that the award of $500,000 is "so excessive as to violate due process." *Id.* (*citing Sony BMG Music Entm't v. Tenebaum*, No. Civ. 07-11446-RWZ, 2012 WL 3639053, at *11-

14 (D. Mass. Aug. 23, 2012)). According to Ocean Properties, the trial record showed AmeriPort believed the doors were ADA compliant, that automatic doors were not necessary for Mr. Burnett to perform the essential functions of his job, and that Mr. Burnett himself testified that it was his belief that Ms. Darsaoui did not treat him maliciously. *Id*. at 8.

In addition, Ocean Properties contends that the punitive damages award constitutes a double recovery, and "the Court should reduce the Plaintiff's punitive damages award to the higher of two (2) awards." *Id*. at 2-3. Ocean Properties cites caselaw from other circuits in support of its contention that "[i]f a federal claim and a state claim arise from the same operative facts, and seek identical relief, an award of damages under both theories will constitute double recovery." *Id*. at 3 (citing *Mason v. Okla. Tpk. Auth.*, 115 F.3d 1442, 1459 (10th Cir. 1997); *U.S. Indus., Inc. v. Touche Ross & Co.*, 854 F.2d 1223, 1259 (10th Cir. 1988); *Moses v. K-Mart Corp.*, 905 F. Supp. 1054, 1058 (S.D. Fla. 1995)).

Finally, Ocean Properties reiterates the argument it set forth in its motion for judgment as a matter of law and its motion for a new trial that it cannot be held accountable for the actions of AmeriPort with respect to punitive damages under a joint employer theory of liability. *Id*. at 8.

### 2.    Mr. Burnett's Response

Mr. Burnett opposes Ocean Properties' motion for remittitur, first noting the First Circuit's hesitance to reverse a jury's verdict for excessiveness. *Pl.'s Opp'n to Mot. for Remittitur* at 2 (*Marcano-Rivera v. Turabo Med. Ctr. P'ship*, 415 F.3d 162,

171 (1st Cir. 2004); citing *Nydam v. Lennerton*, 948 F.2d 808, 811 (1st Cir. 1991); *Rooney v. Sprague Energy Corp.*, 581 F. Supp. 2d 94 (D. Me 2008)). Mr. Burnett notes "the difficulty of converting 'intangible, non-economic losses into money damages.'" *Id.* (quoting *Rooney*, 581 F. Supp. 2d at 108).

Mr. Burnett disputes Ocean Properties' contention that the compensatory damages award for emotional distress is not supported by record evidence because it is based only on Mr. Burnett's testimony, citing First Circuit caselaw. *Id.* at 2-3 (citing *Rodriguez-Torres v. Caribbean Forms Mfr., Inc.*, 399 F.3d 52, 63–64 (1st Cir. 2005); *Koster,* 181 F.3d at 35; *Michaud v. Steckino*, 390 A.2d 524, 536 (Me. 1978)). Mr. Burnett notes that he testified to the fact that the Defendants' failure to respond to his request for an accommodation of automatic doors "made his difficult life even harder." *Id.* at 4. He also states that the record reflects he was injured as a result of struggling with the door. *Id.* He stated at trial that the lack of response made him feel "[s]ad, you know, frustrated, really down, self-esteem issues, you know, just that why should I try, you know, if they don't want to accommodate me or help me to help them." *Id.* (citing *Trial Tr. I* 82:18-21). His fiancée presented similar testimony at trial. *Id.*

In response to Ocean Properties' contention that the award of punitive damages should be remitted, Mr. Burnett notes that "[a] punitive damage award is entitled to deference." *Id.* at 5 (citing *Acevedo-Garcia v. Monroig*, 351 F.3d 547, 566 (1st Cir. 2003); *Romano*, 233 F.3d at 672). He states that relative to the compensatory damages award of $150,000, a $500,000 punitive damages award is not

disproportional, especially when it will be automatically capped at $500,000 due to the statutory caps of the MHRA and the ADA. *Id.* at 5-6. Mr. Burnett contends that Ocean Properties did not object to the Court's determination that the award under each statute would be added together, contrary to what it stated in its motion. *Id.* at 8.

Mr. Burnett disputes Ocean Properties' contention that the jury's awards under both the ADA and the MHRA are a double recovery, arguing that "the Plaintiff simply recovered under two different statutes." *Id.* Mr. Burnett cites caselaw from other districts in which courts rejected the argument and awarded damages under both a state statute and a federal statute, or two federal statutes. *Id.* at 8-9 (citing *Mathis v. Hous. Auth. of Umatilla Cty.*, 242 F. Supp. 2d 9 777, 790 (D. Or. 2002); *Fox v. Pittsburg State Univ.*, 257 F. Supp. 3d 1112, 1146 (D. Kan. 2017)). Mr. Burnett argues that the evidentiary burdens differ and the purposes supporting the ADA and the MHRA differ slightly, supporting "the conclusion that the statutes are intended to work in tandem, not limiting each other." *Id.* at 9.

Mr. Burnett notes, in response to Ocean Properties' argument that punitive damages should be capped at $50,000 because of failure to prove evidence of any employees, that the burden to establish the applicability of the statutory caps under a Title VII claim is on the defendant employer, who must affirmatively move to impose the cap and to present relevant evidence. *Id.* at 12. Because Ocean Properties "sought to minimize and obscure" the number of employees Ocean Properties had

during trial, it cannot now argue the affirmative defense of the statutory caps of the ADA and the MHRA. *Id.*

### 3. Ocean Properties' Reply

In reply, Ocean Properties reiterates the arguments it advanced in its motion for remittitur. *Def.'s Reply Mot. for Remittitur* at 1-2. Ocean Properties says that the case can be distinguished from *Rooney v. Sprague Energy*, which Mr. Burnett relies on in support of the reasonableness of the compensatory damages verdict, because here, there is no evidence that Mr. Burnett experienced "reputational harm or loss of social standing," whereas in *Rooney*, "ample evidentiary support" showed that Mr. Rooney did. *Id.* at 2 (citing *Rooney*, 581 F. Supp. 2d at 107-08).

According to Ocean Properties, Mr. Burnett's argument "that awards made under different statutes do not amount to a double recovery" is incorrect, because "a recovery is duplicative when a jury awards the same remedy under two separate statutes, which serve the same purpose and address the same injury." *Id.* at 4. Ocean Properties argues that the cases cited by Mr. Burnett refuting Ocean Properties' duplicative recovery theory are distinguishable. *Id.* In *Mathis*, unlike this case, Ocean Properties says, "the plaintiff sought to recover two separate remedies, related to two separate injuries, under two different statutes." *Id.* at 5 (citing *Mathis*, 2423 F. Supp. 2d at 789). Ocean Properties also argues that *Fox* is distinguishable because there are fundamental differences between Title IX and Title VII, under both of which the plaintiff brought claims. *Id.* (citing *Fox*, 257 F. Supp. 3d at 1147).

### B. Discussion

## 1.    Legal Standard: Remittitur

A party challenging an award of compensatory damages "must establish that the award is so grossly disproportionate to any injury established by the evidence as to be unconscionable as a matter of law." *Rooney*, 581 F. Supp. 2d at 107 (quoting *McDonough v. City of Quincy,* 452 F.3d 8, 22 (1st Cir. 2006)).  The First Circuit has cautioned:

> We do not reverse a jury verdict for excessiveness except on "the strongest of showings." The jury's award is not to be disturbed unless it is entirely disproportionate to the injury sustained. We have expressed the extent of distortion that warrants intervention by requiring such awards to be so large as to "shock the judicial conscience," "so gross or inordinately large as to be contrary to right reason," so exaggerated as to indicate "bias, passion, prejudice, corruption, or other improper motive," or as "clearly exceed[ing] that amount *any* reasonable man could feel the claimant entitled to."

*Nydam v. Lennerton,* 948 F.2d 808, 811 (1st Cir. 1991) (quoting *Caldarera v. E. Airlines, Inc.,* 705 F.2d 778, 784 (5th Cir. 1983) (emphasis in original)). The First Circuit in *Azimi v. Jordan's Meats, Inc.* acknowledged that "translating legal damage into money damages—especially in cases which involve few significant items of measurable economic loss—is a matter peculiarly within a jury's ken; [f]or just this reason, [w]e rarely will override the jury's judgment on the appropriate amount of damages to be awarded." 456 F.3d 228, 236 (1st Cir. 2006) (alterations in original) (quotations omitted).  When reviewing a jury's award of damages, a district court is expected to consider "local community standards and . . . the witnesses' demeanor at the trial." *Brown v. Freedman Baking Co.,* 810 F.2d 6, 11 (1st Cir. 1987).

Similarly, to successfully challenge a punitive damages award, a party must demonstrate that it is "'certain' that the amount in question exceeds that necessary to punish and deter the alleged misconduct." *Romano*, 233 F.3d at 672 (quoting *Quint v. A.E. Staley Mfg. Co.,* 172 F.3d 1, 14 n.11 (1st Cir. 1999)). The Supreme Court provided three guideposts used to determine whether a defendant received "fair notice that the conduct in question was prohibited and what the potential penalty for engaging in the conduct could be," thus entering "the zone of arbitrariness that violates the Due Process Clause of the Fourteenth Amendment." *Id*. (*citing BMW of N. Am., Inc. v. Gore,* 517 U.S. 559, 568 (1996)). The guideposts are: "(1) the degree of reprehensibility of a defendant's conduct; (2) the ratio between punitive and actual and potential damages; and, (3) a comparison of the punitive damages figure and other civil and criminal penalties imposed for comparable conduct." *Id*. at 673 (citing *BMW*, 517 U.S. at 574). The Court further stated that the "level of reprehensibility of appellants' alleged misconduct is 'perhaps the most important indicium.'" *Id*. at 672 (*citing BMW*, 517 U.S. at 575).

### 2.    Discussion

The jury found the defendants liable and awarded Mr. Burnett $150,000 in compensatory damages and $500,000 in punitive damages. While the compensatory damages were not apportioned between the federal and state statutes, the jury apportioned $200,000 of the punitive damages pursuant to the ADA and $300,000 pursuant to the MHRA. *Verdict* at 1; *Punitive Damages Verdict* at 1-2. Ocean

Properties moves to remit both the compensatory and punitive damages awarded by the jury on several bases. *Def.'s Mot. for Remittitur* at 1.

In its response to Ocean Properties' motion for remittitur, Mr. Burnett states that "the 650,000 total award will automatically be capped at $500,000 pursuant to the applicable state and federal statutes." *Pl.'s Opp'n to Mot. for Remittitur* at 5-6. Mr. Burnett does not elaborate on the basis for his position. *Id.* In its reply, Ocean Properties states, "[i]n his Opposition to AmeriPort's Rule 50 Motion, even Plaintiff conceded that a reduction of $150,000 is appropriate, see *Pl.'s Opp'n to Mot. for Remittitur* at 11, which reduction should be applied to OPL and further increased consistent with the arguments set forth within." *Def.'s Reply Mot. for Remittitur* at 2 n.1.

The Court considers Mr. Burnett's concession, and Ocean Properties' reply, as a stipulation by the parties agreeing to a reduced award of $500,000.[7] Accordingly, the Court finds the total award to be $500,000, with $150,000 in compensatory damages and $350,000 in punitive damages. The Court further concludes that the punitive damages award pursuant to the ADA must be reduced by $75,000, to the

---

[7]    The Court is not entirely clear about the basis for Mr. Burnett's concession that he must "automatically remit" the award from $650,000 to $500,000. *Pl.'s Opp'n to Mot. for Remittitur* at 6. Ocean Properties did not make this claim in its remittitur motion. *Def.'s Mot. for Remittitur* at 1-9. In his opposition, Mr. Burnett simply states that the "$650,000 total award will be automatically capped at $500,000.00 pursuant to applicable state and federal statutes." *Pl.'s Opp'n to Mot. for Remittitur* at 6. But he provides no citations. Ocean Properties' reply on the issue is not illuminating. *Def.'s Reply Mot. for Remittitur* at 2 n.1. Like Mr. Burnett, Ocean Properties cites no authority and it cites page 11 of a Mr. Burnett's six-page opposition memorandum. *Id.* at 2 n.1; *compare Pl.'s Opp'n to Def. AmeriPort's Mot. for Remittitur* at 1-6 (ECF No. 211). The Court assumes that counsel, who are experts in this field, stipulated for good and sufficient reason and the Court accepts the reduced award.

amount of $125,000, and the punitive damages award pursuant to the MHRA also must be reduced by $75,000, to the amount of $225,000.

### a.     Statutory Caps

Ocean Properties contends that the total damages award must be reduced to $50,000 pursuant to the applicable statutory caps, because Mr. Burnett failed to prove it has any employees, while AmeriPort admits to employing Mr. Burnett and having approximately 70 employees.  *Id.* at 2 (citing 42 U.S.C. § 1981a(b)(3)(A); 5 M.R.S. § 4613(2)(B)(8)(e)(i)).

"The Maine Human Rights Act sets a statutory cap on the sum of compensatory and punitive damages awarded to a successful plaintiff."  *Webber v. Int'l Paper Co.*, 307 F. Supp. 2d 119, 129 (D. Me. 2004) (citing 5 M.R.S.A. § 4613(2)(B)(8)).  For a respondent with more than fourteen and fewer than 101 employees, the statutory maximum is $50,000.  *See* § 4613(2)(B)(8)(e)(i).  For a respondent with more than 500 employees, the statutory maximum under the MHRA is $500,000.  *See* § 4613(2)(B)(8)(iv).  The ADA has a corresponding statutory cap on the sum of compensatory and punitive damages of $50,000 for an employer with more than fourteen and fewer than 101 employees, and $300,000 for an employer with 500 or more employees.  *See* 42 U.S.C. § 1981a(b)(3)(A),(D).

The First Circuit addressed the burden of proof for statutory caps under 42 U.S.C. §1981a(b)(3) in a Title VII employment discrimination action in *Hernandez-Miranda v. Empresas Diaz Masso, Inc.*, 651 F.3d 167 (2011), holding:

> The applicability of the caps is not an element of the Title VII claim.
> Instead, the defendant employer must affirmatively move to impose the

cap and to present relevant evidence. *Cf. Schaffer ex rel. Schaffer v. Weast,* 546 U.S. 49, 57 (2005) (burden of persuasion may appropriately be placed on defendant to prove affirmative defenses or exemptions); *see also Mashpee Tribe v. New Seabury Corp.,* 592 F.2d 575, 589 (1st Cir. 1979) ("[N]ormally the party asserting the affirmative of a proposition should bear the burden of proving that proposition."). Moreover, the "ordinary rule, based on considerations of fairness, does not place the burden upon a litigant of establishing facts peculiarly within the knowledge of his adversary." *Schaffer,* 546 U.S. at 60 (quoting *United States v. N.Y., N.H. & H.R. Co.,* 355 U.S. 253, 256 n.5 (1957)) (internal quotation marks omitted). It is clear that employers are in the best position to establish how many employees they have at a given time.

*Id.* at 176.

In light of the First Circuit's guidance, Ocean Properties' argument fails. As noted by Mr. Burnett, Ocean Properties did not present the number of employees it had in 2014, the year the discrimination was alleged, at trial or in its subsequent motion for remittitur. *Pl.'s Opp'n to Mot. for Remittitur* at 12. Instead, the defendants "repeatedly sought to minimize and obscure that information." *Id.* Ocean Properties, therefore, failed to meet its burden regarding the applicability of the caps. Because Ocean Properties has not shown that it has fewer than 500 employees,[8] the maximum statutory thresholds pursuant to § 1981a(b)(3)(d) and 5 M.R.S. § 4631 apply.

Given that the jury awarded Mr. Burnett $150,000 in compensatory damages without apportioning the award between the ADA and MHRA claims, the Court must also address whether the award exceeds the statutory maximum for the federal claim. If, for example, the entire compensatory award of $150,000 were apportioned to Mr.

---

[8]     In *Hernandez-Miranda*, the Court similarly ruled, "because [the defendant employer] has not shown that it has less than 200 employees during the years of discrimination, . . . the statutory cap in § 1981a(b)(3)(c) applies." 651 F.3d at 170.

Burnett's ADA claim, his total award under the ADA would be $350,000, or $50,000 more than the statutory maximum. Because the MHRA allows for a higher statutory maximum of $500,000, the same issue does not arise assuming the entire $150,000 in compensatory damages were apportioned to the state claim.

The issue was discussed in detail in *Rodriguez-Torres:*

> Several appeals courts have addressed the problem of allocating damages where the jury provides one damage award for parallel state and federal discrimination claims but the award exceeds the applicable federal cap. All have approved the method employed by the district court here, namely, considering the unspecified award as fungible between the state and federal claims and allocating the award so as to maximize the plaintiff's recovery while adhering to the Title VII cap.

399 F.3d at 66 (citing *Hall v. Consol. Freightways Corp.,* 337 F.3d 669, 678–79 (6th Cir. 2003); *Gagliardo v. Connaught Labs., Inc.,* 311 F.3d 565, 570–71 (3d Cir. 2002); *Passantino v. Johnson & Johnson,* 212 F.3d 493, 509–10 (9th Cir. 2000); *Martini v. Fed. Nat'l Mortgage Ass'n,* 178 F.3d 1336, 1349–50 (D.C. Cir. 1999); *Kimzey v. Wal–Mart Stores, Inc.,* 107 F.3d 568, 576 (8th Cir. 1997)).

The First Circuit explained the reasoning behind this methodology. First, when the jury makes an unapportioned award, there is no reason to believe that the jury wished to apply the damages to the federal over the state claim, which "is consistent with the district court's general obligation to preserve lawful jury awards to the extent possible." *Id.* (citing *Gagliardo,* 311 F.3d at 571; *Passantino,* 212 F.3d at 510). Second, the method "respects 'the local jurisdiction's prerogative to provide greater remedies for employment discrimination than those Congress has afforded under Title VII.'" *Id.* (quoting *Martini,* 178 F.3d at 1349–50; *see also* 42 U.S.C. §

2000e–7 ("Nothing in [Title VII] shall be deemed to exempt or relieve any person from any liability, duty, penalty, or punishment provided by any present or future law of any State.")).

Applying this method to the award at issue here, the Court considers the compensatory damages award to be "fungible between the state and federal claims," *Rodriguez-Torres*, 399 F.3d at 66, and allocates the award equally between them, apportioning $75,000 in compensatory damages pursuant to the ADA and $75,000 in compensatory damages pursuant to the MHRA. This maximizes Mr. Burnett's recovery while also adhering to the caps under the state and federal statutes.

### b.    Double Damages

Ocean Properties contends that Mr. Burnett cannot obtain what it deems a "double recovery" of punitive damages under the ADA and the MRHA, and asks that the Court reduce the $500,000 total punitive damages award to the higher of the two awards, or $300,000 under the MHRA. *Def.'s Mot. for Remittitur* at 2-3. According to Ocean Properties, the federal and state claims arise from the same facts and seek the same recovery, therefore, the jury's finding of liability on both counts constitutes unjust double recovery. *Id.* at 3 (citing *U.S. Indus., Inc. v. Touche Ross & Co.,* 854 F.2d 1223, 1226 (10th Cir. 1988), *overruled by Dullmaier v. Xanaterra Parks & Resorts,* 883 F.3d 1278 (10th Cir. 2018)).

First, the Court reiterates that Federal Rules of Procedure 49(a) and 51 require that a party state its objections after the charge but before the jury retires. "In this Circuit, "[s]ilence after instructions, including instructions on the form of the verdict

to be returned by the jury, typically constitutes a waiver of any objections." *Marcano-Rivera v. Pueblo Int'l, Inc.*, 232 F.3d 245, 253 n.4 (1st Cir. 2000) (quoting *Putnam Res. v. Pateman*, 958 F.2d 448, 456 (1st Cir. 1992)). Not only did Ocean Properties fail to object to the form of the verdict for punitive damages, but it assented to the Court's determination that the award under each statute would be added together when the jury expressly asked the question of the Court. *Trial Tr. III* 406:22-408:11. Furthermore, Ocean Properties made no objection to the punitive damages instructions and requested no additional instructions. *Id.* 405:20-23.

The jury's question to the Court during its deliberations in the punitive damages phase of the trial stated, "When considering punitive damages, should the amounts awarded to each violation, ADA and MHRA, be considered independent of each other or in the aggregate?" *Id.* 406:17-19. The following discussion ensued:

| | |
|---|---|
| THE COURT: | My proposal, we can do it one way or the other, but I think it makes sense to tell them the following. If you award punitive damages under both statutes, your punitive damages verdict would be the total of both the ADA and MHRA claims, so that that's clear. Otherwise, we won't know whether they intended to deduct one from the other and here, it's straightforward that they award whatever under the ADA and they award a separate amount under the MHRA that we're going to total. What do you think? |
| MS. WHITE: | That makes sense to me. |
| THE COURT: | What do you think? |
| MS. DESKINS: | I didn't have the form in front of me when I read the question, so my recollection was that we asked, like we did in question two, what amount, if any, do you award as punitive damages under the ADA and then |

|  |  |
|---|---|
|  | we put an amount and I thought – my recollection was we asked the same question, but for the MHRA so that they could put in a separate amount, so why would we ask them to add that since they will answer the questions individually? |
| THE COURT: | What they're curious about, I think, is – let's say they award $100 on the ADA claim and then they award $100 on the MHRA claim; is the verdict $100 or $200?  So, what I'm telling them is it's $200 so that they can decide, if they're answering both questions, they can know clearly what the award is going to be. |
| MS. DESKINS: | I see. Right, they're not – |
| THE COURT: | Are you with me? |
| MS. DESKINS: | Yes, sir, that they would be added together. |
| THE COURT: | Right. So, then they'll know, and we'll know, if they decided 100, that it's 200 and not – they didn't intend to have it be 100. All right? |
| MS. DESKINS: | It would be added together, right? |
| THE COURT: | They will be added together. They will know that by this response. |
| MS. DESKINS: | That they're giving double damages, not single damages. |
| THE COURT: | The fact – where they're giving damages under each statute. |
| MS. DESKINS: | Yes. |

*Id.* 406:22-408:11.  The record reflects that defense counsel made no objection to the

Court's response to the jury, which clarified that the punitive damages award would

be the total of the ADA and MHRA awards.[9] *Id.* In the absence of any objection by defense counsel to the punitive damages verdict form, the jury instructions on punitive damages, the Court's answer to the jury's question on the precise issue, and to the punitive damages verdict itself, the Court finds that Ocean Properties waived the argument in its instant motion.

Even considering the merits of the Defendant's argument, the Court is not convinced by the Defendant's argument as to the punitive damages award. Ocean Properties offers no caselaw in support of its argument, and the First Circuit has not directly addressed the issue. The District of Columbia Circuit, faced with a similar challenge to a punitive damages award, rejected the applicability of the double recovery rule:

> Punitive damages, unlike compensatory damages, are not aimed at making a plaintiff whole; thus the rule against double recovery is inapplicable when the damages awarded are punitive. *Cf. Kassman v. American University*, 546 F.2d 1029, 1033 (D.C. Cir. 1976) ("[A] cardinal principle of law is that in the absence of punitive damages a plaintiff can recover no more than the loss actually suffered." (quoting *Snowden v. D.C. Transit Sys., Inc.*, 454 F.2d 1047, 1048) (D.C. Cir. 1971)). *Compare Mason v. Okla. Turnpike Authority*, 115 F.3d 1442, 1460 (10th Cir. 1997) ("[M]ultiple punitive damage awards on overlapping theories of recovery may not be duplicative at all, but may instead represent the jury's proper effort to punish and deter all the improper conduct underlying the verdict."), *with Dopp v. HTP Corp.*, 947 F.2d 506, 517 (1st Cir. 1991)

---

[9] In its motion for remittitur, Ocean Properties asserted that it had objected to the Court's response to a jury question about whether the ADA and MHRA punitive damage awards were independent of each other or in the aggregate. *Def.'s Mot. for Remittitur* at 5 ("Not until jury deliberations when the jury asked a question did the Court indicate it would advise the jury that it could add together the punitive damages under the ADA and MHRA, *to which Defendants' legal counsel objected*") (emphasis supplied). During oral argument, the Court closely questioned Ocean Properties' counsel because the transcript of the chambers conference did not support his assertion. On July 26, 2019, counsel for Ocean Properties wrote the Court moving to withdraw the portion of his memorandum that asserted defense counsel had objected, and the Court granted the motion the same day. *Mot. to Formally Withdraw Portions of the Post-Trial Br.* at 2 (ECF No. 237); *Order* (ECF No. 238). The upshot is that Ocean Properties did not object to the Court's response to the jury's inquiry.

51

> ("[T]he law abhors duplicative recoveries. That is to say, a plaintiff who is injured by reason of a defendant's behavior is, for the most part, entitled to be made whole—not to be enriched.").

*Medina v. D.C.,* 643 F.3d 323, 329 (D.C. Cir. 2011).

In light of the question posed by the jury regarding the aggregation of the award under the applicable state and federal statutes, the Court finds it highly likely that the jury sought to "punish and deter all the improper conduct underlying the verdict" by allocating the award across the two statutes, which would not be considered a duplicative verdict. *Mason*, 115 F.3d at 1460.

The Court rejects Ocean Properties' contention that the punitive damages should be reduced to the MHRA award of $300,000.

### c.   Supported by the Evidence

Finally, Ocean Properties contends that both the punitive and compensatory damages awards are not supported by the record evidence, and are disproportionate to the harm evidenced at trial. *Def.'s Mot. for Remittitur at 5.*

### i.   Compensatory Damages Award

The jury awarded Mr. Burnett $150,000 in compensatory damages. *Verdict* at 1. At trial, Mr. Burnett and his fiancée, Jaclyn Goodwin, testified about the harm the Defendants' actions caused Mr. Burnett. Mr. Burnett testified extensively about the difficulty he faces in his day-to-day activities and the additional effort required for him to get to work as a T-9 complete paraplegic. *Trial Tr. I.* 56:1-60:5. When asked why he filed a complaint of discrimination with the Maine Human Rights Commission, the Plaintiff testified:

MR. BURNETT: I was tired, frustrated, angry that I never heard a response from my request even as to why they could or could not or if they were or were not compliant with the handicapped doors.

MS. WHITE: How did that make you feel?

MR. BURNETT: Sad, you know, frustrated, really down, self-esteem issues, you know, just that why should I try, you know, if they don't want to accommodate me or help me to help them.

*Trial Tr. I.* 82:13-21.

He later testified, on cross-examination:

MS. DESKINS: [T]heir lack of communication to you, your inability to know whether or not they were checking on or confirming the ADA accessibility was a source of stress for you; wasn't it?

MR. BURNETT: Yes.

MS. DESKINS: It was a source of stress for you; wasn't it?

MR. BURNETT: It was.

MS. DESKINS: On a frequent basis it was a source of stress for you, correct?

MR. BURNETT: Correct.

*Id.* 106:4-12. Mr. Burnett also testified that he injured his wrist while struggling with the door and the incline leading up to it, resulting in his supervisor filling out an incident report. *Id.* 75:13-18. This injury took place after the defendants had failed to respond to Mr. Burnett's request for automatic doors. *Id.* 75:23-25.

Mr. Burnett's fiancée, Ms. Goodwin, testified that while Mr. Burnett was going through the process of having to struggle to get through the door to his workplace

every day, "[h]e seemed very depressed about going to work," and that Mr. Burnett talked with her about how he felt. *Trial Tr. II* at 258:18-23. Ms. Goodwin also testified "that she was 'frustrated'" because "a lot of his supervisors I didn't feel were doing enough to be more understanding" about the fact that the entry doors were "very heavy and difficult to open," and these struggles at times caused conflict in their relationship. *Pl.'s Opp'n to Mot. for Remittitur* at 4 (citing *Trial Tr. II* 257:7-17).

The Court notes that Ocean Properties "is attacking the area of the verdict to which the greatest deference is accorded: the translation of tangible, non-economic losses into money damages." *Rooney*, 581 F. Supp. 2d at 108 (citing *Azimi*, 456 F.3d at 236). In examining the evidence presented at trial, Mr. Burnett presented as an individual who tried extremely hard to be able to work and be independent despite the significant obstacles he faced because of his disability. He made a request that most would consider reasonable: to be able to get through the door to his place of employment without a daily struggle, a struggle that drew attention to his disability. He testified that the lack of response on the part of the Defendants made him feel frustrated and angry, lowered his self-esteem, caused him stress and depression about going to work. After receiving no response from the Defendants regarding his requested accommodation, Mr. Burnett was injured while struggling with the door, which led to his supervisor filling out an incident report, but still no action was taken by the Defendants. Mr. Burnett's testimony conveyed a sense of frustration and betrayal resulting from being repeatedly ignored by the company that employed him. Furthermore, Mr. Burnett's injury was repeated every day for months, and was not

resolved until he found employment elsewhere and left his position at the call center. The harm he experienced was, as he noted, compounded by the everyday challenges he faced in getting to work and living as independent a life as possible with a significant disability.

In light of the evidence presented at trial, the Court does not view the compensatory damages award of $150,000 as "so grossly disproportionate to the injury established . . . as to be unconscionable as a matter of law." *Id*. at 109.

### ii. Punitive Damages Award

Ocean Properties argues that the punitive damages award of $350,000 has "no justifiable basis" and is "grossly excessive." *Def.'s Mot. for Remittitur* at 7-8. However, the caselaw it cites in support of its contention is on the unrelated issue of statutory damages awards in copyright infringement cases, and does not discuss punitive damages awarded by a jury. *Id*. at 7 (citing *Sony BMG Music Entm't*, 2012 WL 3639053, at *5). Mr. Burnett, meanwhile, fails to respond to Ocean Properties' argument in his opposition, but does, as discussed *supra*, contend that its position that the award be reduced by $150,000 serves as an "automatic remittitur" in light of any argument of excessiveness put forth by Ocean Properties. *Pl.'s Opp'n to Mot. for Remittitur* at 5-6.

The cursory argument advanced by the Defendant has fallen short of the rather steep climb he faces to successfully challenging a jury's verdict as excessive. Given the evidence presented, it is not "certain that the amount in question exceeds that necessary to punish and deter the alleged misconduct . . . ." *Romano*, 233 F.3d at 672.

Furthermore, the fact that the punitive damages award falls within the statutory maximums set forth under 5 M.R.S. § 4613(B)(8) and 42 U.S.C. § 1981a(b)(3) "provides strong evidence that a defendant's due process rights have not been violated . . ." as the court "accords substantial deference to legislative judgments concerning appropriate sanctions for the conduct at issue." *Id.* (citations and internal quotations omitted).

The Court examines the $350,000 verdict against the three guideposts set forth by the Supreme Court in *BMW*. Mr. Burnett, who is paraplegic, requested an accommodation to be able to access his workplace without struggling with a heavy wooden door in an entrance on an incline. His request went unanswered, and he continued to struggle with the same accessibility issue each day upon reporting to work for months, until he found other employment and left his position with AmeriPort. Even after he was injured while struggling with the door, prompting his supervisor to fill out and file an incident report, Mr. Burnett's request was ignored. Viewing the evidence in the light most favorable to Mr. Burnett, here, like in *Romano*, the lack of response on the part of the Defendants could be considered "a blatant disregard of federally and state-mandated anti-discrimination laws." 233 F.3d at 673. This fact, coupled with the fact that "the harms inflicted upon [the plaintiff] were more than 'purely economic in nature,'" *id.* (citing *BMW*, 517 U.S. at 576), is enough to support the jury's award with respect to the first prong of the analysis.

Considering the second prong of the *BMW* analysis—proportionality—the Court has upheld a broad range of ratios between compensatory and punitive

damages, and instead recommends a "general inquiry into reasonableness." *BMW*, 517 U.S. at 582-83. "Most ratios will fall within an acceptable range, with only a 500 to 1 disparity being explicitly cited by the Court as "rais[ing] a suspicious judicial eyebrow." *Romano*, 233 F.3d at 673 (quoting *BMW*, 517 U.S. at 583). The First Circuit in *Romano* upheld a disparity of 19:1 as a "constitutionally acceptable ratio." *Id.* Here, the ratio is just over 2:1, which the Court finds proportional to the damages awarded by the jury for economic harm.

In light of the above analysis, the Court concludes that the punitive damages award in this case is not constitutionally excessive,[10] and upholds the jury's punitive damages award, reduced to $350,000 as agreed by the parties.

## V.    CONCLUSION

The Court hereby DENIES Ocean Properties' Motion for Judgment as a Matter of Law (ECF No. 200); Ocean Properties' Motion for a New Trial (ECF No. 201); and Ocean Properties' Motion for Remittitur (ECF No. 202). Based on the applicable statutory damage maximums, the Court AFFIRMS and AMENDS the judgment as follows:

1) The Court AFFIRMS the compensatory damage award of $150,000;

2) The Court REDUCES the punitive damages award on the ADA claim from $200,000 to $125,000 and REDUCES the punitive damages award on the MHRA claim from $300,000 to $225,000; and

---

[10]    Here, like in *Romano*, "there are no civil or criminal penalties imposed for comparable misconduct," thus, the third prong of the *BMW* analysis does not apply. *Romano,* 233 F.3d at 673.

3) The Court directs the Clerk to issue an amended judgment in accordance with this Order.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 30th day of September, 2019