# UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

RYAN D. BURNETT,          )
                           )
        Plaintiff,     )
                           )
        v.          )     2:16-cv-00359-JAW
                           )
OCEAN PROPERTIES, LTD.   )
and AMERIPORT, LLC,     )
                           )
        Defendant.   )

## ORDER DENYING AMERIPORT LLC'S POST-TRIAL MOTIONS

Faced with an adverse verdict in this action for failure to accommodate in violation of the Maine Human Rights Act, 5 M.R.S. §§ 4551 *et seq.*, and the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101 *et seq.*, a defendant filed several post-trial motions to vacate, or in the alternative, reduce the jury's verdict. The Court denies the motions.

## I. BACKGROUND

On November 1, 2018, at the close of a three-day trial, a jury returned a verdict for Plaintiff Ryan Burnett and awarded $150,000 in compensatory damages and $500,000 in punitive damages. *Jury Verdict* at 1 (ECF No. 179) (*Verdict*); *Jury Punitive Damages Verdict* at 1 (ECF No. 180). As part of its verdict on compensatory damages, the jury made the following findings of fact: (1) that Ocean Properties was an employer or joint employer of Mr. Burnett; (2), that Ocean Properties and AmeriPort were integrated employers of Mr. Burnett; and (3) that Mr. Burnett's employer had more than 500 employees when he worked there. *Verdict* at 1-2.

1

Judgment was entered on behalf of Mr. Burnett on November 13, 2018. *J.* (ECF No. 188).

On December 11, 2018, AmeriPort, LLC (AmeriPort) filed a renewed motion for judgment as a matter of law, a motion for a new trial, and a motion for remittitur. *Def. Ameriport, LLC's Mot. for J. as a Matter of Law* (ECF No. 196) (*Def.'s Rule 50(b) Mot.*); *Def., Ameriport LLC's Mot. for New Trial* (ECF No. 197) (*Def.'s Mot. for New Trial*); *Def., Ameriport, LLC's Mot. for Remittitur* (ECF No. 198) (*Def.'s Mot. for Remittitur*). On February 5, 2019, Mr. Burnett responded in opposition to each of AmeriPort's motions. *Pl.'s Opp'n to Def. Ameriport's Mot. for J. as a Matter of Law* (ECF No. 213) (*Pl.'s Opp'n to Rule 50(b) Mot.*); *Pl.'s Opp'n to Def. Ocean Properties, LTD.'s Mot. for New Trial* (ECF No. 214) (*Pl.'s Opp'n to Mot. for New Trial*); *Pl.'s Opp'n to Def. Ameriport's Mot. for Remittitur* (ECF No. 211) (*Pl.'s Opp'n to Mot. for Remittitur*). On March 1, 2019, AmeriPort replied. *Def., Ameriport, LLC's Reply to Mot. for J. as a Matter of Law* (ECF No. 219) (*Def.'s Reply Rule 50(b) Mot.*); *Def., Ameriport, LLC's Reply in Support of the Mot. for New Trial* (ECF No. 220) (*Def.'s Reply Mot. for New Trial*); *Def., Ameriport, LLC's Reply in Support of the Mot. for Remittitur* (ECF No. 221) (*Def.'s Reply Mot. for Remittitur*).

## II.    MOTION FOR JUDGMENT AS A MATTER OF LAW

### A.    Positions of the Parties

#### 1.    AmeriPort's Motion

AmeriPort LLC (AmeriPort) moves for judgment as a matter of law pursuant to Federal Rules of Civil Procedure 50 and 59 and District of Maine Local Rule 7.

*Def's Rule 50(b) Mot.* at 1. AmeriPort advances three arguments in support of its position.[1] First, it contends that Mr. Burnett's administrative charge is defective and does not put Ocean Properties on notice of the conduct raised in Mr. Burnett's Complaint. *Id.* at 2 (citing *First Am. Compl.* (ECF No. 7); *Pl.'s Tr. Ex. 63, EEOC Complaint of Discrimination* (*EEOC Charge*)). According to AmeriPort, because Mr. Burnett failed to exhaust his administrative remedies before filing suit for damages under the ADA and the MHRA, compensatory and punitive damages are not available. *Id.* Second, AmeriPort argues that the trial record established that Mr. Burnett was "able to perform the essential functions of his job without accommodation . . . [and] his claim must fail as a matter of law because he never established that automatic or push-button doors were necessary for him to perform the essential functions of his job." *Id.* at 9-10. Third, AmeriPort contends that Mr. Burnett "failed to establish that the Defendants acted with malice or reckless indifference," therefore, the Court erred in instructing the jury on punitive damages, and the jury's punitive damages verdict should be overturned. *Id.* at 11.

As evidence of its first argument, AmeriPort states, "Plaintiff's trial was about a single failure to accommodate, that [Ocean Properties] and AmeriPort purportedly ignored, an August 28, 2014 request for an accommodation for heavy wooden doors— *this was never included in the Charge.*" *Id.* at 2 (emphasis supplied). AmeriPort contends that this argument "has been raised and is ripe" because AmeriPort and

---

[1] AmeriPort also "joins and adopts Ocean Properties, Ltd.'s separate Motion for Judgment as a Matter of Law, filed on December 11, 2018, and incorporates it as if fully set forth therein." *Def.'s Mot.* at 1.

Ocean Properties raised Mr. Burnett's failure to exhaust administrative remedies in its Partial Motion to Dismiss, its Answer and Affirmative Defenses, and its Final Pretrial Memoranda. *Id.* (citing *Mot. to Dismiss for Lack of Jurisdiction* at 4 (ECF No. 19); *Answer to Am. Compl.* at 12 (ECF No. 20); *Final Pretrial Mem.* at 1 (ECF No. 84)). According to AmeriPort, "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Id.* at 4 (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002); *Ledbetter v. Goodyear Tire & Rubber Co., Inc.*, 550 U.S. 618, 639 (2007)). AmeriPort states that the administrative claim serves the important purpose of giving notice to the EEOC and the employer of the alleged violation, which allows the employer to take corrective action." *Id.* at 5 (citing *Thornton v. United Parcel Serv., Inc.*, 587 F.3d 27, 31 (1st Cir. 2009); *Powers v. Grinnel Corp.*, 915 F.2d 34 (1st Cir. 1990)).

Second, AmeriPort contends that judgment as a matter of law should be granted in its favor because Mr. Burnett's request for push-button door access was not necessary for him to perform the essential functions of his job, and therefore was not a "reasonable accommodation." *Id.* at 7. It cites this Court as stating in its prior order on the Defendants' motion for summary judgment that when an employer has already taken "plainly reasonable" measures to accommodate an employee's disability, summary judgment should be granted in the Defendant's favor. *Id.* (citing *Mot. for Summary J.* at 63 (ECF No. 81) (*Mot. for Summary J.*)). AmeriPort also states that the plaintiff bears the burden of showing that the requested accommodation would effectively enable him to perform his job. *Id.* (citing *Reed v.*

*LePage Bakeries, Inc.*, 244 F.3d 254, 259 (1st Cir. 2001); *Corujo Martinez v. Triple-S, Inc.*, 519 F. Supp. 2d 201, 216 (D.P.R. 2007)). The Defendant claims that "the record evidence established that Mr. Burnett was able to perform the essential functions of his job without accommodation." *Id.* at 9 (citing *Trial Tr. Vol. I* at 85, 107 (ECF No. 190) (*Trial Tr. I*); *Trial Tr. Vol II* at 284-85 (ECF No. 191) (*Trial Tr. II*)).

Finally, AmeriPort argues that Mr. Burnett failed to satisfy his burden of providing malice or reckless indifference by a showing of clear and convincing evidence as required to prove punitive damages. *Id.* at 10 (citing 42 U.S.C. § 1981a(b)(1); 5 M.R.S. § 4613(2)(B)(8)(c); *Batchelder v. Realty Res. Hosp., LLC,* 2007 ME 17, ¶ 20, 914 A.2d 1116, 1123). AmeriPort notes that courts have exercised caution in allowing punitive damages and have set limits on their availability. *Id.* at 11 (citing *Kolstad v. Am. Dental Assoc.*, 527 U.S. 526, 535-36 (1999); *Kinnon v. Kwong Wah Rest.*, 83 F.3d 498, 508 (1st Cir. 1996) (citing *Lee v. S. Home Sites Corp.*, 429 F.2d 290, 294 (5th Cir. 1970)); *Aladdin Mfg. Co. v. Mantle Lamp Co.*, 116 F.2d 708, 717 (1st Cir. 1941) (alteration in ordering)). AmeriPort also cites *Marcano-Rivera v. Pueblo Intern., Inc.* 232 F.3d 245, 249 (1st Cir. 2000), in which the First Circuit affirmed the district court's decision not to instruct the jury on punitive damages where the plaintiff "had failed to generate any facts that would demonstrate that the defendant was aware that its actions were in violation of federal law." *Def.'s Rule 50(b) Mot.* at 12-13 (citing *Marcano-Rivera*, 232 F.3d at 254). Here, AmeriPort states that "Plaintiff presented no evidence that AmeriPort or Ocean Properties, Ltd., knew

that their failure to provide Plaintiff with automatic or push-button doors was a violation of federal law." *Id*. at 14.

### 2. Ryan Burnett's Opposition

In response, Mr. Burnett argues that AmeriPort is "severely limited in the arguments it can advance at this stage" because "a post-trial motion for judgment can be granted only on grounds advanced in the pre-verdict motion." *Pl.'s Opp'n to Rule 50(b) Mot.* at 1-2 (quoting *Robles-Vazquez v. Tirado Garcia*, 110 F.3d 204, 206 (1st Cir. 1997)). According to Mr. Burnett, AmeriPort made no motion for judgment as a matter of law prior to the verdict in this case, and Ocean Properties only moved for judgment as a matter of law on whether Mr. Burnett had established Ocean Properties and AmeriPort to be integrated or joint employers. *Id*. at 2 (citing *Trial Tr. II* 269:16-21). Mr. Burnett avers that if the Court were to proceed on the merits of AmeriPort's arguments, the burden for successfully challenging a jury's verdict is that the Defendant "must prove that 'as a matter of law, the facts and inferences are such that no reasonable fact finder could have reached a verdict against the movant.'" *Id*. at 2 (citing *Palmquist v. Shinseki*, 808 F. Supp. 2d 322, 338-339 (D. Me. 2011) (quoting *Webber v. Int'l Paper Co.*, 326 F. Supp. 2d 160, 165 (D. Me. 2004))). Furthermore, Mr. Burnett states that in ruling on a post-trial motion for judgment as a matter of law, the Court must view the evidence in the light most favorable to the non-movant, "drawing all reasonable inferences in its favor." *Id*. (quoting *McMillan v. Mass. Soc'y for the Prevention of Cruelty to Animals*, 140 F.3d 288, 299 (1st Cir. 1998)).

In answer to AmeriPort's contention that Mr. Burnett's administrative charge did not specifically list Ocean Properties and is therefore defective, Mr. Burnett argues that there is a clear identity of interests between Ocean Properties and AmeriPort, which allows the action to proceed. *Id.* at 3 (citing *Russell v. Enter. Rent-A-Car Co. of R.I.*, 160 F. Supp. 2d 239, 254 (D.R.I. 2001)). Mr. Burnett also contends that the theory of constructive notice applies "when the original and added parties are so closely related in business or other activities that it is fair to presume the added parties learned of the institution of the action shortly after it was commenced." *Id.* (quoting *Hernandez Jimenez v. Calero Toledo*, 604 F.2d 99, 102-103 (1st Cir. 1979)). Here, Mr. Burnett argues, the parties are sufficiently related because the same attorney represented both AmeriPort and Ocean Properties at trial, and "Mr. Burnett received contradictory documentation about who his employer was." *Id.* at 4.

In response to AmeriPort's related contention that Mr. Burnett did not include his request for push-button doors in the Complaint, Mr. Burnett contends that pursuant to the scope of investigation doctrine, his allegation is encompassed in the charge "because it reasonably could have been discovered in the Commission's investigation." *Id.* at 5 (citing *Davis v. Lucent Technologies, Inc.*, 251 F.3d 227, 233 (1st Cir. 2001); *Thornton v. United Parcel Service, Inc.*, 587 F.3d 27, 31-32 (1st Cir. 2009)). Mr. Burnett notes that the administrative charge referenced the issue of the doors not being handicap accessible. *Id.* (citing *EEOC Charge*).

Mr. Burnett distinguishes the cases AmeriPort cited in support of its contention that Mr. Burnett's request for automatic doors was not reasonable. *Id.* at 6. According to Mr. Burnett,

> There is a marked difference between the questionable conflict-avoidance mechanism requested by the employee in *Reed* [,102 F. Supp. 2d at 35], which did not actually concern the essential functions of the plaintiff's job, and the request for a recording device in *Pollack* despite a lack of apparent benefit, and Burnett's reasonable request to have a door to his workplace that he could effectively enter.

*Id.* at 7-8.

Finally, Mr. Burnett opposes AmeriPort's contention that he failed to meet his burden of showing that AmeriPort "acted 'with malice or reckless indifference to the plaintiff's federally protected rights' to warrant an award of punitive damages." *Id.* at 8 (citing *Che v. Mass. Bay Transp. Auth.*, 342 F.3d 31, 41 (1st Cir. 2003) (quoting *Kolstad*, 527 U.S. at 535)). Mr. Burnett cites the record evidence demonstrating that AmeriPort employee Lori Darsaoui failed to respond to Mr. Burnett's request, failed to investigate the possibility of installing automatic doors, and did not recall discussing the issue with Mr. Burnett, even when Mr. Burnett subsequently injured his wrist trying to get through the door. *Id.* at 9-11 (citing *Trial Tr. II* 305:10-19; *id.* 231:4-12; *id.* 231:15-232:8; *Trial Tr. I.* 71:19-72:12; *id.* 76:1-5).

Mr. Burnett further points out that the Court denied AmeriPort's request not to instruct the jury on punitive damages, explaining on the record that "it seems to me that the evidence here of an employee . . . repeatedly struggling to get in the front door, asking for an accommodation and never having a response may be evidence of

reckless indifference to the rights of the employee." *Id*. at 10 (citing *Trial Tr. I* 315:3-17).

### 3. AmeriPort's Reply

In reply, AmeriPort reiterates its argument that it raised the alleged deficiencies in Mr. Burnett's charge in pre-verdict motions. *Reply to Resp. to Mot. for J. as a Matter of Law* at 1 (ECF No. 19) (*Def.'s Reply Rule 50(b) Mot.*). As such, according to AmeriPort, "[t]he issue has been raised, and the Court should consider the motion as deferred under Rule 50(a), which allows it to be renewed at this juncture." *Id*. at 1-2.

AmeriPort also repeats its contention that Mr. Burnett's specific request for automatic doors was not included in the Plaintiff's charge and refutes Mr. Burnett's argument that the scope of the investigation doctrine applies, because of "the level of specificity as to the other allegations." *Id*. at 2. Furthermore, according to AmeriPort, if Mr. Burnett's request for automatic doors fell within the scope of the investigation, it is time barred. *Id*. at 2-3. On whether Mr. Burnett met his burden of proving malice or reckless indifference to support an award of punitive damages, AmeriPort argues that he did not meet the clear and convincing evidence standard. *Id*. at 5 n. 2 (citing *Batchelder,* 2007 ME 17, ¶ 20, 914 A.2d 1124). AmeriPort repeats its contention that Mr. Burnett "presented no evidence that AmeriPort knew that its failure to accommodate Plaintiff's request for push-button doors was a violation of federal law." *Id*. at 5.

### 4. Oral Argument

During oral argument, AmeriPort took the position that because the doors at issue were ADA compliant, it was not required to respond to Mr. Burnett's request for accommodation. The company contends that Mr. Burnett's request was inherently unreasonable if the doors were compliant with the ADA. The Court requested that the parties provide controlling supplemental authority on the issue. *Def. AmeriPort's Statement of Case Authorities* (ECF No. 236). In its filing, AmeriPort referred the Court to the following cases: *Kvorjak v. State of Maine*, 259 F.3d 48, *52-*54 (1st Cir. 2001); *Charette v. St. John Valley Soil & Water Conservation Dist.*, 332 F.Supp.3d 316, *361-362 (D. Me. 2018); *Kezer v. CMMC*, 2012 ME 54, ¶¶ 26-27; *McBride v. BIC Consumer Products Mfg. Co., Inc.* 583 F.3d 92, 99-101 (2nd Cir. 2009); *Rehling v. City of Chicago*, 207 F.3d 1009, 1016-1016 (7th Cir. 2000). *Id.* at 1-2.

Mr. Burnett's response to this argument is two-fold. First, he contended that no evidence was presented at trial to prove that the doors were, in fact, ADA compliant. Second, he argued that the provisions of the ADA and relevant case law do not support AmeriPort's claim that proving ADA compliance eliminates the company's obligation to engage in the interactive process and provide reasonable accommodations to a disabled employee in order to enable them to perform the essential functions of his or her employment. In support, Mr. Burnett filed a statement of supplemental authorities, which includes *Higgins v. New Balance Athletic Shoe, Inc.*, 194 F.3d 252, 264 (1st Cir. 1999); *Sanchez-Rodriguez v. AT&T Mobility PR, Inc.*, 673 F.3d 1, 12 (1st Cir. 2012); and *Tobin v. Liberty Mutual Ins. Co.*,

553 F.3d 121, 136 (1st Cir. 2009). *Statement of Case Authorities by Ryan Burnett* at 1-2 (ECF No. 235).

## B.    DISCUSSION

### 1.    Legal Standard: Judgment as a Matter of Law

Federal Rule of Civil Procedure 50(a) governs the procedure for a judgment as a matter of law.   Generally, once a party has been fully heard on an issue at trial,

> and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may: (A) resolve the issue against the party; and (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

FED. R. CIV. P. 50(a).

"It is well-established that arguments not made in a motion for judgment as a matter of law under Rule 50(a) cannot then be advanced in a renewed motion for judgment as a matter of law under Rule 50(b*).*" *Costa-Urena v. Segarra*, 590 F.3d 18, 26 n.4 (1st Cir. 2009) (citing *Correa v. Hosp. San Francisco,* 69 F.3d 1184, 1196 (1st Cir. 1995) ( "As the name implies, a renewed motion for judgment as a matter of law under Fed. R. Civ. P. 50(b) is bounded by the movant's earlier Rule 50(a) motion."); James W. Moore, 5A MOORE'S FEDERAL PRACTICE 50.08 (2d ed. 1994) ("[A]ny argument omitted from the [Rule 50(a)] motion made at the close of evidence is waived as a ground for judgment under Rule 50(b).").   As noted by the Court of Appeals for the First Circuit, "[t]he 2006 Amendments to the Federal Rules of Civil Procedure were intended to solidify this requirement." *Jones ex rel. U.S. v. Mass. Gen. Hosp.,* 780 F.3d 479, 487-88 (1st Cir. 2015) (citing FED. R. CIV. P. 50 advisory

committee's note, 2006 amendments ("Because the Rule 50(b) motion is only a renewal of the preverdict motion, it can be granted only on grounds advanced in the preverdict motion." (Emphasis added))).

The standard of review for motions for judgment as a matter of law requires the Court "to view the evidence 'in the light most favorable to the nonmoving party, drawing all reasonable inferences in its favor.'" *McMillan,* 140 F.3d at 299 (quoting *Morrison v. Carleton Woolen Mills, Inc.,* 108 F.3d 429, 436 (1st Cir. 1997)). A jury verdict should not be set aside as a matter of law "unless there was only one conclusion the jury could have reached." *Id.* (citing *Conway v. Electro Switch Corp.,* 825 F.2d 593, 598 (1st Cir. 1987)). Specifically, the Court's review "is weighted toward preservation of the jury verdict;" the Court will uphold the jury verdict "unless the evidence was so strongly and overwhelmingly inconsistent with the verdict . . . that no reasonable jury could have returned [it]." *Rodowicz v. Mass. Mut. Life Ins. Co.,* 279 F.3d 36, 41–42 (1st Cir. 2002) (internal quotations omitted). In making its determination, the court "may not make credibility determinations or weigh the evidence," as these are functions of the jury. *Reeves v. Sanderson Plumbing Prod., Inc.,* 530 U.S. 133, 150–51 (2000) (citations omitted).

## 2.    Analysis

### a.    AmeriPort's 50(a) Motion

As a threshold issue, the parties dispute whether AmeriPort made a motion for judgment as a matter of law pursuant to Rule 50(a).[2] The record reflects that

---

[2]      The Plaintiffs contend that "AmeriPort made no pre-verdict motion for judgment as a matter of law . . . Therefore, the Court's review is constrained at this juncture." *Pl.'s Opp'n* at 2. Upon

following the close of evidence, after the jury was excused, the Defendants jointly moved for a directed verdict on two of the three arguments AmeriPort now brings in its instant 50(b) motion. *Trial Tr. II* 313:9-316:8. The Defendants first argued that no evidence of reckless disregard or malice was introduced at trial to support a jury instruction on punitive damages. *Id*. 313:15-23. The Court found that evidence was brought that could support a reasonable jury's finding of reckless disregard or malice and denied the motion to bar a punitive damages instruction. *Id*. 315:9-316:2. Second, Defendants argued that Mr. Burnett's request for automatic doors was not a reasonable accommodation because the evidence showed he was able to perform the essential functions of his job without it. *Id*. 316:3-8. The Court denied the motion after concluding that whether the accommodation was reasonable was a mixed matter of law and fact that should properly be considered by the jury. *Id*. 318:8-11.

AmeriPort failed to argue in its 50(a) motion, however, that Mr. Burnett was barred from obtaining a damages award because he did not specifically state his complaint regarding automatic doors in his administrative charge. This limitation, as set forth in Rule 50(b) and as established in the body of relevant case law, is unequivocal. "The movant cannot use . . . a [renewed] motion [for judgment as a matter of law] as a vehicle to introduce a legal theory not distinctly articulated in its close-of-evidence motion for a directed verdict." *Correa*, 69 F.3d at 1196. AmeriPort contends that its argument is purely legal in nature and does not rely on the evidence

---

reviewing the trial record, the Court finds that the Plaintiffs are mistaken, as the Defendants brought a motion for judgment as a matter of law on two of the three arguments they renew here following the close of evidence. *See Trial Tr. II* at 313:9-316:8.

in the record; therefore, it is "ripe for this Court's adjudication at this time." *Def.'s Rule 50(b) Mot.* at 3. It also notes that it raised the issue in pre-trial motions, so it should not be barred for failing to allege it in a 50(a) motion.[3] *Id.* AmeriPort cites no caselaw in support of its contention that raising an issue in a pre-trial motion is construed by the courts as complying with Rule 50(b) or that an exception to the Rule 50 requirements exists in such circumstances.

Although circuits vary in the rigidity with which they define a 50(a) motion for purposes of appellate review, the First Circuit has consistently held that moving for judgment as a matter of law under Rule 50(a) is "a prerequisite for later consideration of the legal sufficiency of the evidence." *Jusino v. Zayas*, 875 F.2d 986, 991 (1st Cir. 1989); *see also Keisling v. SER-Jobs for Progress, Inc.,* 19 F.3d 755, 758 (1st Cir. 1994); *Correa*, 69 F.3d at 1196. The First Circuit has also held that raising an argument in a motion for summary judgment does not substitute for the required 50(a) motion. *Jones*, 780 F.3d at 488 ("After trial, a party may not invoke any sufficiency challenges included only in a motion for summary judgment"). The Court concludes that because AmeriPort failed to assert its argument regarding the sufficiency of the administrative charge during trial, it is precluded from making the argument in the form of a renewed motion under Federal Rule of Civil Procedure 50(b).

---

[3]     AmeriPort asserts that it raised the issue of the allegedly defective charge in its motion to dismiss, its Answer and Affirmative Defenses, its final pretrial memorandum, and it raised the issue regarding the availability of damages in a motion in limine. *Def.'s Mot.* at 3 (*citing Mot. to Dismiss for Lack of Jurisdiction* (ECF No. 19) (*Defs.' Mot. to Dismiss*); *Mot. in Limine to Exclude Evidence and/or an Award of Damages or Relief Other Than Inj. Relief* (ECF No. 106) (*Defs.' Mot. in Limine*); *Final Pretrial Memorandum by AmeriPort LLC, Ocean Properties Ltd.* (ECF No. 83) (*Defs.' Pretrial Memorandum*)).

### b.     Merits

Even setting aside procedural errors that limit the availability of judgment under Rule 50(b), AmeriPort fails to meet the stringent standard that must be met to overturn a jury verdict.  To obtain a judgment as a matter of law, AmeriPort must demonstrate that the facts introduced at trial, including all reasonably available inferences, "are such that no reasonable factfinder could have reached a verdict against [it]." *Webber*, 326 F. Supp. 2d at 165 (citing *Santos v. Sunrise Med., Inc.*, 351 F.3d 587, 590 (1st Cir. 2003)).  AmeriPort does not clear this high hurdle with respect to its three arguments, and the court will not disturb the jury's verdict.

### i.     Defective Administrative Charge

AmeriPort contends that the administrative charge Mr. Burnett filed against the Defendants is defective for two reasons: first, because "the Charge fails to name OPL and therefore does not give OPL any notice that it—a legally distinct entity— needed to engage in an interactive process . . .," and second, because Mr. Burnett did not include a request for an accommodation for heavy wooden doors specifically in the charge.  *Def.'s Rule 50(b) Mot.* at 2.  AmeriPort states that it raised the first argument in its motion to dismiss and the second argument in a motion in limine and in its pre-trial memorandum.  *Defs.' Mot. in Limine* at 2; *Pretrial Mem.* at 1.  Neither argument was raised at trial, however.

With respect to AmeriPort's contention that the Court should consider whether Mr. Burnett failed to exhaust his administrative remedies by failing to list OPL in his administrative charge, AmeriPort first avers that its argument is ripe for review

because it is purely legal in nature, and does not require a review of the trial record.[4] *Def.'s Rule 50(b) Mot.* at 3. This argument is flawed. First, the Court denied the Defendants' motion to dismiss on the basis that "a more detailed factual record is necessary to determine if the two entities share an identity of interest." *Order on Mot. to Dismiss* at 1 (ECF No. 37). Second, the Defendants never argued at trial that the administrative charge was defective.[5]

AmeriPort also contends that the EEOC charge is defective because Mr. Burnett's request for an accommodation for heavy wooden doors was not included in the Charge, and "damages are not recoverable in a civil action when a complainant has failed to properly notify the employer administratively." *Def.'s Mot.* at 2. As with its first argument, AmeriPort does not identify any evidence in the trial record that shows it raised the issue regarding Mr. Burnett's claim that it failed to respond to his request for push-button doors in his EEOC charge.

The Rule 50 motion is available only "if a party has been fully heard on an issue during a jury trial." FED. R. CIV. P. 50(a)(1); *Williamson v. Horizon Lines LLC*, No. CV-06-119-B-W, 2008 WL 2222052, at *1 (D. Me. Feb. 11, 2008) (citing *Summers*

---

[4] Moreover, the Court notes that if the argument were purely legal and not influenced by any evidence brought at trial, the appropriate vehicle to advance such an argument is a motion for summary judgment, especially given that the Court rejected the argument on the Defendants' motion to dismiss, noting that "[w]hether the identity of interest exception applies requires a more detailed factual record . . . and is better suited for resolution at summary judgment." *Order on Mot. to Dismiss* at 18 (quoting *DePaolo v. Ocean Properties*, No. 2:16-cv-468-NT, 2017 U.S. Dist. LEXIS 12793, at *5 (D. Me. Jan. 31, 2017)). The Defendants failed to include this argument in their motion for summary judgment, and instead seek to bring it in a procedurally improper 50(b) motion.

[5] The corporate relationship between AmeriPort and Ocean Properties was a central issue at trial, and evidence in the record was brought by both parties to prove or disprove the corporate structure of Ocean Properties and the relationship between the two entities. However, neither party contends that the argument raised here—that Mr. Burnett's charge was defective—was raised at trial, and the Court's review of the transcript confirms this fact.

*v. Delta Air Lines, Inc.,* 508 F.3d 923, 928–29 (9th Cir. 2007); *Jaasma v. Shell Oil Co.,* 412 F.3d 503, 506 n.4 (3d Cir. 2005) (stating that the trial court acted prematurely in granting a Rule 50(a) motion before the commencement of trial); *Echeverria v. Chevron USA Inc.,* 391 F.3d 607 (5th Cir. 2004) (concluding that a Rule 50 motion should not be acted upon until the non-movant has presented all its evidence)).

Here, the Defendants never argued at trial that Mr. Burnett's administrative charge was defective; therefore, the Court cannot analyze whether "a reasonable jury would . . . have a legally sufficient evidentiary basis to find for the party on that issue." FED. R. CIV. P. 50(a)(1). A Rule 50(b) motion cannot be used as a means for a party to re-litigate the Court's determination of an issue raised in pre-trial motions when the issue has not been raised subsequently at trial. Moreover, the fact that AmeriPort raised a defense in pre-trial motions but not at trial, and brought no Rule 50(a) motion at the close of evidence, "did nothing to put the district court or defendants on notice that [the Plaintiff] would argue that, as a matter of law, the defendants had failed to put forth sufficient admissible evidence such that no jury could return a verdict in defendants' favor." *Jones*, 780 F.3d at 489 (internal citation omitted). The Court rejects AmeriPort's request for judgment as a matter of law on the issue.

### ii.     Reasonable Accommodation

AmeriPort contends that a judgment as a matter of law should be granted in its favor because Mr. Burnett failed to prove that push-button doors were a

reasonable accommodation, as they are not necessary for him to perform the essential functions of his job. *Def.'s Mot.* at 6. AmeriPort contends that "record evidence demonstrated that Mr. Burnett was not only able to perform the duties of his position, but exceeded his employer's expectations without the requested accommodation." *Id.* at 10.

The ADA and Maine Human Rights Act require employers to assist an otherwise qualified employee who has a disability by providing reasonable accommodations that would enable him to perform his job. 42 U.S.C. § 12112(b)(5)(A); 5 M.R.S. § 4572. "In order to prove 'reasonable accommodation,' a plaintiff needs to show not only that the proposed accommodation would enable her to perform the essential functions of her job, but also that, at least on the face of things, it is feasible for the employer under the circumstances." *Reed*, 244 F.3d at 259. Whether an employer failed to grant a reasonable accommodation is a question of fact to be determined by the jury. *Valle-Arce v. Puerto Rico Ports Auth.*, 651 F.3d 190, 201 (1st Cir. 2011).

Here, sufficient evidence was presented at trial for a reasonable jury to conclude that Mr. Burnett's request for automatic doors was a reasonable accommodation, as it would enable him to enter the building without difficulty and perform the essential functions of his job.[6] For example, Plaintiff's Exhibit 58 is an

---

[6] AmeriPort's argument has a Catch-22 ring. JOSEPH HELLER, CATCH-22 (1961). Mr. Burnett could perform his job if he could open the door to the workplace, but because he cannot open the door to his workplace, he cannot perform his job. From the Court's perspective, the concepts of reasonable accommodation in the ADA and Maine Human Rights Act are sufficiently broad to capture not just an employee's duty station but also his access to the place of employment in the first place. The Court is deeply skeptical about AmeriPort's claim that an employer could actively discriminate against a

email from Mr. Burnett to acting office manager Nick Robertshaw, in which Mr. Burnett states, "Nick, I am request[ing] that we need to put push button automatic doors in for the entry of building. Doors are heavy and hard to hold open while I push myself [through] without them closing on me." *Pl.'s Tr. Ex. 58* at 1. Mr. Burnett also testified at trial:

> MS. WHITE: Tell us a little bit more about – we keep talking about the heavy wooden doors, but what exactly was the issue with the doors once you started working at the end of 2013 at the new reservation call center?
>
> MR. BURNETT: They were heavy pull out doors that had the piston on the top so they automatically close, and with the downward slope to enter the building, the doors would be closing on me as I would enter and I would have to kind of fight the door off as I push myself through.
>
> MS. WHITE: And when you say the slope, why was that a problem?
>
> MR. BURNETT: It's just a negative slope to make me roll backwards. I have to put more force in going forward and fighting the door and the slope to go backwards.

*Trial Tr. I* 73:25-74:11. Mr. Burnett also testified that he injured his wrist trying to access the building, as recorded in an incident report. *Pl.'s Tr. Ex.* 60 at 1 ("Ryan twisted wrist opening the front door, while trying to wheel himself through the door.").

> MS. WHITE: Showing you now Plaintiff's Exhibit 60; can you tell us what this is, Mr. Burnett?
>
> MR. BURNETT: One morning in entering work, I pulled on the door to open up and quickly tried to push myself through and when I did, my wrist popped, snapped, made my hand kind of tingly. It was nothing that

---

disabled employee's ability to get inside its building so long as once inside, the employee could perform assigned work.

lasted. I had a conversation with my immediate supervisor entering the building after I got upstairs and she filed this incident report for me.

MS. WHITE:   Did anything else come of that? Did you go to the doctor, did you meet –

MR. BURNETT:  Nothing long-lasting. It was just a momentarily of pulling on the heavy door.

*Trial Tr. I* 75:11-75:22.

"A directed verdict is proper at the close of plaintiffs' case only when the plaintiffs' evidence, viewed in [the] light [most favorable to the nonmovant], would not permit a reasonable jury to find in favor of the plaintiffs on any permissible claim or theory." *Murray v. Ross-Dove Co.,* 5 F.3d 573, 576 (1st Cir. 1993). Here, the Court finds that a reasonable jury could find the evidence of the difficulty Mr. Burnett faced in accessing his workplace supports the conclusion that his request for an accommodation of automatic doors was reasonable. The Court, therefore, declines to disrupt the verdict on this basis.

### iii. ADA Accessibility and the Interactive Process

AmeriPort contends that the doors themselves were compliant with ADA accessibility standards; therefore, the company was under no obligation under the ADA to engage with Mr. Burnett on his request for an accommodation with regard to the doors. As support, AmeriPort cites the following cases: *Kvorjak*, 259 F.3d at 52-54; *Charette,* 332 F. Supp. 3d at 361-362; *Kezer*, 2012 ME 54, ¶¶ 26-27; *McBride,* 583 F.3d at 99-101; *Rehling,* 207 F.3d at 1016-1016. *Def. AmeriPort's Statement of Case Authorities* at 1-2.

As an initial matter, the Court does not find that the evidence admitted at trial supports a finding that the doors at issue were in fact compliant with the ADA.  Even if this conclusion were supported by the record evidence, the Court does not find that any of the cases cited by AmeriPort support its theory of the law, and the Court is not aware of any other caselaw that stands for this proposition.  The First Circuit states in *Kvorjak* that a company's rejection of a "request for the accommodation without further discussion" "is not a failure to provide a reasonable accommodation that amounts to a violation of the ADA" when the facts support "a finding that the plaintiff could perform the duties of the job, with or without reasonable accommodation." 259 F.3d at 52-53.  *Charette* and cases from other Circuit Courts of Appeal support the same proposition.  Whether the doors already met ADA accessibility standards is a separate question from whether a request for accommodation is reasonable under the law.  The First Circuit stated unequivocally that under the ADA, "an employer who knows of a disability yet fails to make reasonable accommodations violates the statute." *Higgins v. New Balance Athletic Shoe, Inc.,* 194 F.3d 252, 264 (1st Cir.1999).  To prove a failure to accommodate claim, the plaintiff must show: (1) that he is disabled within the meaning of the ADA; (2) that he was able to perform the essential functions of the job with or without a reasonable accommodation, and (3) that the employer, despite knowing of the plaintiff's disability, did not reasonably accommodate it. *Rocafort v. IBM Corp.,* 334 F.3d 115, 119 (1st Cir. 2003) (citations omitted).  Whether an employer has a duty to engage in the interactive process,

therefore, does not depend on whether it has met separate accessibility requirements under the ADA.

### vi.    Punitive Damages

Finally, AmeriPort contends that it is "entitled to judgment as a matter of law" because the Court erred in instructing the jury on punitive damages and because Mr. Burnett failed to establish by a standard of clear and convincing evidence that AmeriPort acted with malice or reckless indifference as is required to support a punitive damages award. *Def.'s Rule 50(b) Mot.* at 11.

Under § 1981a(b)(1), "[a] complaining party may recover punitive damages under this section against a respondent . . . if the complaining party demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual."  In *Kolstad*, 527 U.S. at 534, the United States Supreme Court defined "the terms 'malice' and 'reckless indifference' as they relate to the standard for punitive damages under Title VII and the ADA." *Marcano-Rivera,* 232 F.3d at 254 (citing *Kolstad*, 527 U.S. at 534).  For punitive damages to be available, "an employer must at least discriminate in the face of a perceived risk that its actions will violate federal law . . .." *Kolstad*, 527 U.S. at 536.  Whether sufficient evidence exists to support punitive damages is a question of law.  *Marcano-Rivera,* 232 F.3d at 254 (citing *EEOC v. Wal–Mart Stores, Inc.*, 187 F.3d 1241, 1244 (10th Cir. 1999)).

Following the close of evidence, AmeriPort moved for judgment as a matter of law and requested that the Court abstain from instructing the jury on punitive damages. The Court denied the motion, stating:

> It seems to me – and I'm not—I don't know what the jury is going to do with this case, but it seems to me that the evidence here of an employee struggling—repeatedly struggling to get in the front door, asking for an accommodation and never having a response may be evidence of reckless indifference to the rights of the employee.

> Now, fortunately, I'm not required to make that evaluation, but there's sufficient evidence . . . on this record that not responding is indifference and not responding, simply forcing the employee to face the burden of trying to open the door in a wheelchair, heavy wooden door in a wheelchair, may be sufficient. I'm not saying it will, but it may be sufficient to reach -- to allow the jury to infer that the employer was indifferent to his rights, and that indifference was reckless.

*Trial Tr. II* 315:2-17.

In its Rule 50(b) motion, AmeriPort renews its argument that Mr. Burnett failed to show, by clear and convincing evidence, that AmeriPort acted with malice or reckless indifference to his federally protected rights. According to AmeriPort,

> [T]here was a total absence of evidence showing that Lori Darsaoui, the only person handling HR functions for AmeriPort, could have acted willfully or with reckless indifference. Darsaoui's testimony was clear and unequivocal: "I was aware that the doors were ADA compliant and I wanted to be sure because I don't have knowledge of the regulations, make sure that nothing had changed and that we were still in compliance."

*Def.'s Reply Rule 50(b) Mot.* at 5-6 (citing *Trial Tr. II* 244:2-4).

The Court disagrees. As argued by Mr. Burnett, and as stated by the Court in response to the Defendants' Rule 50(a) motion, "the jury heard evidence that showed a pattern of at least reckless indifference to Mr. Burnett's federally protected right to

request a reasonable accommodation." *Pl.'s Opp'n to Rule 50(b) Mot.* at 8-9.  The jury heard no evidence to show that any employee of AmeriPort or Ocean Properties ever responded to Mr. Burnett's request for accommodation and Mr. Burnett testified that "no one ever responded to or followed up with him about the accessibility issue that he raised in his email." *Id.* at 9-10 (*citing Trial Tr. I* 71:19-72:12; 76:1-5).  The record shows the only action taken by Ms. Darsauoi was sending two emails to a maintenance worker inquiring as to whether the doors were ADA compliant when they were built.  *Trial Tr. II* 227:14-228:24.  Although Ms. Darsaoui testified that she was unfamiliar with the specific requirements of the ADA, *id.* 229:6-10, a reasonable jury could still conclude that Ms. Darsaoui was aware that requirements to accommodate Mr. Burnett's disability existed under the ADA, and that she was aware that AmeriPort risked violating Mr. Burnett's federally protected rights under the ADA, but still failed to communicate with Mr. Burnett or look into whether his requested accommodation was reasonable.  This pattern of failure to respond occurred with Ms. Darsaoui's work station in close proximity to the building entrance, where Mr. Burnett continued to struggle daily to get through the door in his wheelchair.  *Trial Tr. I* 94:2-18.  Furthermore, an incident report was completed after Mr. Burnett injured his wrist opening the door months after his original request; the record reflects that AmeriPort still did not consider his request or communicate with Mr. Burnett after this incident.  *Id.*

The evidence also shows that human resources personnel within Ocean Properties, which Mr. Burnett testified is one of the largest hotel companies in the

world, were made aware of Mr. Burnett's complaint. *See Pl.'s Tr. Ex.* 59. Plaintiff's Exhibit 59 is an email chain between Nicholas Robertshaw, who Mr. Burnett testified was a supervisor at the call center, Lori Darsaoui, Joyce Dawson, who Ms. Darsaoui testified is her supervisor, is an employee of the Ocean Properties corporate office, *Trial Tr. II* 230:6-11, and Cedric Rothkegel, who, according to Ms. Darsaoui, works in the human resources department at Ocean Properties' corporate office. *Trial Tr. I* 130:8-13. The same day he received it, Nicholas Robertshaw forwarded the "Chatter" message from Mr. Burnett to Joyce Dawson and copied Ms. Darsaoui, stating "I know I'm not supposed to be working but I didn't want to let this go too long without you seeing this. He sent it to me privately through chatter." *Pl.'s Tr. Ex. 59* at 1. Mr. Robertshaw's email was forwarded by Ms. Darsaoui to Mr. Rothkegel. *Id*. Ms. Darsaoui testified that she could contact Mr. Rothkegel or other human resources personnel at the corporate office for guidance on human resources questions. *Trial Tr. I.* 130:8-13. She stated that although she handles human resources issues for the call center, "I can contact them for knowledge so that I can make the best decision possible for my location." *Id*. This evidence demonstrates that human resources personnel in the corporate office of Ocean Properties were made aware of Mr. Burnett's request for an accommodation of automatic doors, and that Mr. Rothkegel specifically was in the position to advise Ms. Darsaoui on her human resources questions.

AmeriPort argues that under *Kolstad*, "a positive element of conscious wrongdoing is always required" to support an award of punitive damages, and that

there is no evidence of conscious wrongdoing here. *Def.'s Reply Rule 50(b) Mot.* at 12

(citing *Kolstad*, 527 U.S. at 538). Viewing the evidence in the light most favorable to

Mr. Burnett, the Court disagrees. As explained above, the record shows that two

individuals in the corporate office of a large hotel company, one of whom works in the

human resources department, were aware of Mr. Burnett's request, which supports

a reasonable jury finding that the organization knew their actions were in violation

of federal law. In *Vera v. Alstrom Power, Inc.*, for example, the court upheld an award

of punitive damages to a former employee, citing the employer's size and

sophistication as a relevant factor in the employer's awareness of federal anti-

discrimination law. 189 F. Supp. 3d 360, 380 (D. Conn. 2016). Furthermore, although

*Kolstad* rejected a requirement that egregious conduct must be shown to support a

punitive damages award, "[e]gregious misconduct may certainly be 'evidence of the

requisite mental state . . ..'" 527 U.S. at 535 (citations omitted). As noted by the Court

in its reasoning for rejecting the Defendants' 50(a) motion, repeatedly ignoring a

paraplegic employee's request for an accommodation to allow him to more easily

access his workplace could be viewed by a jury as the type of egregious misconduct

that shows AmeriPort was aware it risked violating Mr. Burnett's rights in failing to

accommodate him.

Taking the evidence as a whole, the jury could have reasonably concluded that

AmeriPort acted with reckless difference in failing to acknowledge or address Mr.

Burnett's request for an accommodation. AmeriPort's 50(b) motion is, therefore,

denied on the issue of punitive damages.

## III.    MOTION FOR A NEW TRIAL

AmeriPort moves, in the alternative, for a new trial pursuant to Federal Rules of Civil Procedure 50 and 59. *Def.'s Mot. for New Trial* at 1.

### A.    Positions of the Parties

#### 1.    AmeriPort's Motion

In its motion, AmeriPort contends that it did not receive a fair trial for four reasons.  First, according to AmeriPort, "a fact witness properly disclosed according to pre-trial disclosures was prohibited from testifying during the trial."  *Id.* AmeriPort contends that it "was prejudiced by Plaintiff's move to strike Mark Mooney as a witness during the trial even after his intended testimony had been disclosed and after the defense had made extensive reference to his intended testimony during [its] opening statement."  *Id.* at 2.  AmeriPort argues that: [p]rior to trial, Plaintiff filed a Motion in Limine to prohibit Mark Mooney from utilizing photographs of the door pressure gauge during his testimony. . . It was not until mid-trial that he first raised his objection to allowing Mark Mooney to testify in any form. This objection was an ambush to AmeriPort's case."  *Id.* at 3.

AmeriPort's second basis for a new trial is that Plaintiff's counsel improperly suggested specific award amounts during her closing arguments.  According to AmeriPort, "[c]ourts have long recognized that statements of counsel's opinions or personal beliefs have no place in a closing argument . . ."  *Id.* at 8 (quoting *Polansky v. CNA Ins. Co.*, 852 F.2d 626, 628 (1st Cir. 1988); *see also United States v. Young*, 470 U.S. 1 (1985); *United States v. Cresta*, 825 F.2d 538, 555 (1st Cir. 1987); *NLRB v.*

*Friendly Ice Cream Corp.*, 677 F.2d 170, 171 n.1 (1st Cir. 1982); *Olenin v. Curtin &*
*Johnson, Inc.*, 137 U.S. App. D.C. 281, 424 F.2d 769 (D.C. Cir. 1970)). It also cites
First Circuit caselaw prohibiting an attorney from arguing a specific amount of
damages to the jury, *id.* at 9 (citing *Bielunas v. F/V Misty Dawn, Inc.*, 621 F.3d 72,
79 (1st Cir. 2010); *Wilson v. Brandlees of New Eng., Inc.*, 250 F.3d 10, 23 n.25 (1st
Cir. 2001)), and contends that outside of the First Circuit, courts have found this error
to be reversible error. *Id.* (citing *Waldorf v. Shuta*, 896 F.2d 723 (3d Cir. 1990)).

AmeriPort argues that Plaintiff's counsel also erred in her closing argument
because she violated the "Golden Rule" in asking the jurors to "imagine how difficult
life is for Mr. Burnett." *Id.* at 10 (citing *Trial Tr.* 352:7; *id.* 336:18; *id.* 353:9). This,
according to AmeriPort, is "prohibited in the First Circuit." *Id.* at 11 (citing *Granfield*
*v. CSX Transp., Inc.*, 597 F.3d 474, 491 (1st Cir. 2010)). AmeriPort argues that "in
combination, these errors are so prejudicial that a failure to grant Defendants a new
trial will result in a grave miscarriage of justice." *Id.* at 12.

Finally, AmeriPort says that it was not allowed to rebut repeated evidence of
Mr. Burnett's physical limitations with "impeachment evidence of his otherwise
active lifestyle." *Id.* at 12. According to AmeriPort, Plaintiff's counsel "opened the
door" by discussing Mr. Burnett's disability, and it should have been allowed to "rebut
his evidence with documentation, photographs, and cross examination demonstrating
that Plaintiff, apparently, still had the ability to hunt and shoot in the woods." *Id.* at
13. This disparity, AmeriPort argues, was unfairly prejudicial. *Id.* at 14.

## 2. Ryan Burnett's Opposition

Mr. Burnett opposes AmeriPort's request for a new trial. *Pl.'s Opp'n to Mot. for New Trial* at 1. First, Mr. Burnett contends that the Court properly excluded evidence in response to his motion in limine after AmeriPort failed to inform him that their contractor tested the doors in question and determined them to be ADA compliant until "the eve of trial." *Id.* at 2 (citing *Mot. in Limine* (ECF No. 159)). Mr. Burnett states that Federal Rule of Civil Procedure 26 required AmeriPort to disclose the information during the discovery period. *Id.* at 3. Regardless of discovery violations, Mr. Burnett argues that "***the Court never prohibited Mr. Mooney from testifying***." *Id.* (emphasis in original). Mr. Burnett says that instead, "the parties discussed with the Court the parameters of Mooney's testimony, and his email stating that the doors to Plaintiff's workplace were ADA compliant when the building was constructed. Defendants made their own choice not to call Mooney to testify on that subject." *Id.* at 3-4 (citing *Trial. Tr. I.* 181:3-25). Despite the fact that "the Court specifically instructed counsel not to mention the door testing issue during her opening," she did so; therefore "AmeriPort has suffered no injustice that would require a new trial." *Id.* at 4.

In response to AmeriPort's argument that Mr. Burnett's testimony of his physical difficulties was unfairly prejudicial, Mr. Burnett argues that because he had the burden to prove emotional distress, "the Court gave Plaintiff some latitude to elicit testimony that might satisfy this burden," but cautioned him not to "overdo" it such that he prejudiced AmeriPort. *Id.* at 5 (citing *Trial Tr. I.* 65:3-21).

Finally, addressing the alleged errors of Plaintiff's counsel during her closing argument, Mr. Burnett argues that the alleged errors "must be viewed alongside the actual verdict returned by the jury, in order to determine if the statement unduly prejudiced or affected the outcome of the trial." *Id.* Mr. Burnett argues that "although it may have been error, the numbers mentioned in closing were intentionally low so as to avoid inflaming the jury to return a potentially high number", which would have been considered prejudicial. *Id.* at 6 (citing *Waldorf*, 896 F.2d at 743). He says that in light of the verdict, which was significantly higher than the amount mentioned, the error was harmless. *Id.* Mr. Burnett cites caselaw stating:

> [I]n evaluating counsel's error during trial to determine if it warrants a new trial, the court must examine "the totality of the circumstances, including (1) the nature of the comments; (2) their frequency; (3) their possible relevance to the real issues before the jury; (4) the manner in which the parties and the court treated the comments, including any curative instructions; (5) the strength of the case, and (6) the verdict itself."

*Id.* at 7 (quoting *Bartlett v. Mutual Pharmaceutical Company, Inc.*, 760 F. Supp. 2d 220, 253 (D.N.H. 2011) (citing *Granfield*, 597 F.3d at 490)). Applying the above factors to the case, Mr. Burnett argues, that the comments were "rhetorical in nature, . . . were few in number", and appeared to have "had little effect on [the jury's] ultimate deliberations", pointing to harmless error. *Id.* at 7- 8.

Mr. Burnett also argues that AmeriPort failed to object to the specific amount stated by Plaintiff's counsel and rejected the Court's offer of a curative instruction when the issue was raised by the Court. Instead, AmeriPort moved for a mistrial,

but requested that the judge not rule on the motion until the jury returned with a verdict. *Id*. at 6-7 (citing *Trial Tr. III*. 372). Mr. Burnett states that "[a]fter the jury returned a verdict of $150,000.00, Defendants renewed their motion for mistrial, which was denied pending briefing on these motions for new trial." *Id*. at 7 (citing *Trial Tr. III* 386:2-17).

### 3. AmeriPort's Reply

In response, AmeriPort reiterates its contention that it complied with the relevant discovery rules with regard to witness Mark Mooney's testimony. *Def.'s Reply Mot. for New Trial* at 1-2. The company then states the following:

> Plaintiff rests only on the shaky ground that Defendants made their own choice not to call Mooney to testify on whether the building was ADA compliant when the building was constructed, *Pl.'s Opp'n to Mot. for New Trial* at 4 (citing *Trial Tr. I* 181:3-25). Just before Plaintiff's citation to the transcript, the Court clearly excluded any testimony as to the testing that Mark Mooney performed on the doors that are the subject of Plaintiff's complaints, *id*. 178, and appears to have prohibited AmeriPort from explaining the email, which included ADA compliance when the building was constructed, *id*. 180: 3-8.

*Def.'s Reply Mot. for New Trial* at 2. AmeriPort also contends that the motion in limine on the issue of the demonstrative aids "barely mentions testimony," *id*. at 3 (citing *Mot. in Limine* (ECF No. 159), and it refutes Mr. Burnett's contention that AmeriPort discussed Mr. Mooney's testimony in its opening statement against an instruction of the Court. *Id*. (citing *Trial Tr. I*. 10-11).

With regard to what it considers Mr. Burnett's conceded errors during closing arguments, AmeriPort contends that it did object to the error, preserving it for appellate review, and requiring the Court to conduct a harmless error analysis. *Id*.

at 4.  AmeriPort disagrees with Mr. Burnett's characterization of the errors as harmless.  *Id.*

## B.    Discussion

### 1.    Legal Standard

Pursuant to Federal Rule of Civil Procedure 59(a), a party can move for a new trial, "after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court."  FED. R. CIV. P. 59(a)(1).  When assessing a motion for a new trial, a trial judge has limited discretion, and "may not grant a motion for a new trial merely because he or she might have reached a conclusion contrary to that of the jurors."  *Conway*, 825 F.2d at 598–99.  Instead, as the First Circuit has cautioned, a trial judge may only set aside a verdict "if he or she believes that the outcome is against the clear weight of the evidence such that upholding the verdict will result in a miscarriage of justice."  *Id.*

### 2.    Analysis

#### a.    Mark Mooney's Testimony

AmeriPort argues that a new trial is warranted because it was prejudiced by the fact that Mark Mooney, a contractor for AmeriPort, was prohibited by the Court from testifying at trial.  *Def.'s Mot. for New Trial* at 1.   AmeriPort does not provide any citation to the trial record in support of its position.  Mr. Burnett, in response, argues that Mr. Mooney was never prohibited from testifying at trial; the Defendants simply failed to call him as a witness.  *Pl.'s Opp'n Mot. for New Trial* at 2.  The Court agrees that it did not prohibit Mr. Mooney from testifying at trial, but instead set

limits on the contents of his testimony as a sanction for AmeriPort's failing to comply with the Rule 26(a) disclosure requirement. *Trial Tr. I.* 177:2-178:8. AmeriPort cannot now convince the Court that it was prejudiced by the Court's limitation on Mr. Mooney's testimony on whether he tested the doors and determined them to be ADA compliant when the Court's prohibition was the direct result of AmeriPort's own discovery violation.

The Court heard the parties on the issue at length during trial, examined the relevant interrogatories and disclosures provided as exhibits by the parties, and concluded that the Defendants did not disclose evidence of specific tests performed by Mark Mooney to determine ADA compliance within the applicable discovery deadline, and therefore, Mr. Mooney would not be allowed to testify about the specific tests he performed. On October 30, 2018, the first day of trial, the Court addressed the Mooney issue:

> THE COURT: My ruling on this is that it seems to me that the question of what Mark Mooney did in December of 2013 and January of 2014 is central to the defendant's defense, and it's a highlight of what the defendant is going to say in terms of why they believe that they were not required to take any action in response to the complaint about the doors because the defendants' contending that they were already ADA compliant. That seems to me to be something that the defendant should have revealed and should have revealed long prior to October 24th of 2018 when that happened. We're in trial on October 30, 2018. The jury was picked -- when was the jury picked in this case?
>
> MS. WHITE: October 1, Your Honor.
>
> THE COURT: Right. So, it was even after the jury was selected, and I believe that -- I credit the plaintiff's representation because I think it's logical that had they been aware of this specific test that Mr. Mooney ran back in December of 2013 and January of 2014, they would have taken some action in further discovery or in furtherance of their

prosecution of the case. That action could have been to depose Mr. Mooney and find a basis of -- the test that he ran, but also, it seems to me, that the plaintiff would likely have sought an expert to test Mr. Mooney's test against more -- against a separate expert to determine whether those tests were in compliance with the ADA. So, what I'm worried about, frankly, is trial by ambush. That this information was known or should have been known by the defendants perhaps as early as December of 2013, January of 2014. It wasn't revealed until October 24, 2018, and I'm not going to allow it.

*Trial Tr. I.* 177:2-178:8.

Later in the discussion, the parties debated whether an e-mail exchange with Mark Mooney would be admitted, and if so, how the Defendants could respond, given the Court's ruling defining the parameters of his testimony and excluding evidence of the specific tests performed by Mr. Mooney that the Defendants failed to reveal during discovery. *Id.* 178:9- 181:22.

THE COURT: ...[A]gain, the disclosures are serious business and they're not to be gamed, and it seems to me that the whole purpose of disclosure is to alert the other party this is what -- these are the people we know have knowledge and this is a general view of their knowledge, and therefore you can rely on this to frame your own discovery in your case. And when the discovery is not complete, then it places the other party at a disadvantage. I know that the ruling places you at a disadvantage, but it's a consequence of your failure to be as fulsome and as appropriate as you should have been -- I'm not blaming you individually as an attorney -- but your client should have been more forthcoming and said we've got this guy Mooney and this is what he knows and alerted the defendant -- the plaintiffs. So, I mean I hear you that it places you in a difficult position, but I don't know that I can save you from the position you yourself created.

MS. DESKINS: I understand, Your Honor. So, I think the way that we can address this is I think that Mark Mooney can explain his response to the e-mail without talking about the testing. He can say that the doors were original and they never changed and not talk about testing at all.

THE COURT: I think that's implicit in his -- that's implicit in what he said, basically. The -- he said when the building was built, they were ADA compliant. You knew that, Ms. White, correct? You didn't know the basis for it, but you knew that that's what he believed.

MS. WHITE: Yes, Your Honor.

THE COURT: And why don't you talk to each other about whether, given the ruling I've just made that excludes the specific tests which I think should have been revealed, what the parameters of his testimony can be so that when he gets up there, he's not going to blurt out something that's in violation of the Court order and yet allows him to testify to the substance of his own e-mail, which you've had for some period.

*Id*. 180:10-181:21.

Not only did the Court not prohibit the defendants from calling Mark Mooney as a witness, as AmeriPort contends, defense counsel herself acknowledged during trial that she could still call Mr. Mooney as a witness, and communicated her plan for his testimony to the Court in light of the parameters the Court placed on his testimony. *Id*. AmeriPort's representation that the Court prohibited Mr. Mooney from testifying is fundamentally incorrect and directly contradicted by the record. The Court rejects the argument.

### b. Moose Hunting Photograph

Next, AmeriPort contends that it was prejudiced by the Court's exclusion of a photograph of Mr. Burnett taking part in the Maine Moose Hunt, which it would have used to rebut the "repeated, self-serving evidence of Plaintiff's physical ability and physical issues. . . with impeachment evidence of his otherwise active lifestyle." *Def.'s Mot. for New Trial* at 12. Mr. Burnett responds that evidence of Mr. Burnett hunting

"had no relevance to the ADA accommodation issue before the Court." *Pl.'s Opp'n Mot. for New Trial* at 4.

Shortly before trial, Mr. Burnett filed a motion in limine, one subject of which was the admissibility of a photograph of Mr. Burnett moose hunting. *Mot. in Limine* (ECF No. 159). In the motion, Mr. Burnett asked the Court to exclude the evidence of Mr. Burnett hunting as unfairly prejudicial under Federal Rule of Evidence 403. *Id.* at 6. The motion remained pending at the start of trial. Prior to opening arguments, the Court stated that it would not allow defense counsel to refer to Mr. Burnett hunting during her opening statement. *Trial Tr. I* 11:14-20. The Court and defense counsel had the following exchange:

> THE COURT: . . . The other one was something about him hunting; did you intend to refer to that in your opening?
>
> MS. DESKINS: I wasn't going to specifically talk about hunting, no.
>
> THE COURT: Okay. Well, I'm not going to allow that.

*Id.* Consistent with her promise, defense counsel did not discuss hunting in her opening statement and did not raise hunting in her cross-examination of Mr. Burnett.

On the third day of trial, Mr. Burnett called Jaclyn Goodwin as a witness. *Id.* 255:22-267. Direct examination by Attorney White, cross-examination by Attorney Hayes, and redirect examination by Attorney White were completed without relevant controversy. *Id.* 255:22-264:16. Then, during defense counsel's re-cross-examination of Ms. Goodwin, Attorney Hayes asked:

> MR. HAYES: On the weekends, is there any particular activities you enjoy together?

MS. GOODWIN:     It varies from weekend to weekend.

MR. HAYES:     Okay. What about now in the fall, hunting season; do you enjoy hunting?

Plaintiff's counsel objected and asked that the discussion take place at sidebar. *Id.*

265:18-22. The following discussion ensued:

MS. WHITE:     It's already out. No door's been opened to hunting.

MR. HAYES:     The picture may very well be out, Your Honor, but the testimony that was provided is that his day is hard enough that he doesn't need to be opening doors -- to open the door, and my whole point is that his -- recreationally, he puts himself in these situations that –

THE COURT:     Why didn't you approach the bench?

MR. HAYES:     I apologize, Your Honor.

THE COURT:     Well, that's not a little apology.

MR. HAYES:     I'm sorry, Your Honor?

THE COURT:     The question already is in front of the jury about his hunting.

MR. HAYES:     My apologies, Your Honor. I was not aware that the Court ruled that hunting was out.

THE COURT:     Well, you knew it was an issue.

MR. HAYES:     I knew that -- my understanding was –

THE COURT:     There was a motion in limine.

MR. HAYES:     The motion in limine, my understanding, was related -- related to the photograph, not to –

THE COURT:     Only to the photograph?

MR. HAYES:     That was my understanding.

THE COURT:     What was the purpose of the photograph?

37

| | |
|---|---|
| MR. HAYES: | The purpose – |
| THE COURT: | To demonstrate he was hunting. |
| MR. HAYES: | To demonstrate his ability to engage in – |
| THE COURT: | Right. |
| MR. HAYES: | -- activities. |
| THE COURT: | I'm going to sustain the objection. |

*Id.* 265:21-266:25.

The Court has judicial discretion to control the manner of questioning witnesses pursuant to Federal Rule of Evidence 611, which states: "[t]he court should exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to: (1) make those procedures effective for determining the truth; (2) avoid wasting time; and (3) protect witnesses from harassment or undue embarrassment." FED. R. EVID. 611. Furthermore, "[t]o the extent practicable, the court must conduct a jury trial so that inadmissible evidence is not suggested to the jury by any means." FED. R. EVID. 103(d). Here, defense counsel, despite knowledge of a pending motion in limine, despite the Court's clear instruction to counsel that the hunting would not be raised before the jury, and despite defense counsel's promise not to raise the issue in her opening statement, asked Ms. Goodwin about hunting during re-cross-examination, in the presence of the jury, without approaching the bench to determine whether the testimony would be admissible. In the context of the trial, the Court viewed defense counsel's blurting out the issue of hunting as an

egregious violation of the clear implication of its instruction to defense counsel that there would be no reference to hunting until the Court ruled on its admissibility.

As a result, even though the jury is instructed not to consider questions by lawyers as evidence, the question presented an issue, namely hunting, before the jury without first giving the Court an opportunity to rule on its admissibility. The Court, which has a duty to control the manner of questioning at trial, sanctioned the Defendants for its impermissible questioning by sustaining the Plaintiff's objection. AmeriPort cannot now claim that it was prejudiced by the Court's exclusion of evidence of Mr. Burnett engaging in moose hunting, when such exclusion was the direct result of AmeriPort's own improper questioning of a witness.

Furthermore, there is no evidence of prejudice. The Court allowed limited questioning during Plaintiff's counsel's direct examination of Mr. Burnett regarding his disability and its impact on his day-to-day life. As noted by Mr. Burnett, this questioning was limited by the Court to avoid unfair prejudice. For example, the Court excluded evidence of the cost of parts to repair Mr. Burnett's wheelchair, explaining:

> THE COURT:      My thought about this is he can -- he's got a claim for emotional damages as a consequence of being unable to navigate the front door, and the fact that he has to do so much in order simply to get to work reflects his dedication to work and his importance to work in his life, but it's not -- it is a limited amount to which you can squeeze on this particular sponge. And he can testify that he makes a lot of efforts to get to work, that he's repaired his truck, that he's -- he has already given us an idea of what he goes through on a day-to-day basis to get to work, but I don't think you need to overdo it and there's a point where the relevance is overshadowed by its prejudicial impact.

*Trial Tr. I* 65:8-21.

AmeriPort argues that Mr. Burnett "opened the door by discussing difficulties unrelated to the request for an automatic door; OPL and AmeriPort should have been able to rebut his evidence with documentation, photographs and cross examination demonstrating that Plaintiff, apparently, still had the ability to hunt and shoot in the woods." *Def.'s Mot. for New Trial* at 13.

The Court disagrees that Mr. Burnett "opened the door" as AmeriPort contends. Mr. Burnett never contended he is unable to engage in recreational activities because of his disability. He only testified to the fact that day-to-day activities take him longer and are more involved and difficult than they would be for a person who is not paraplegic. The Court does not find that AmeriPort was prejudiced by exclusion of testimony on the subject of Mr. Burnett hunting.

Nor did defense counsel make an offer of proof. Although it might be assumed that defense counsel was going to refer to the hunting photograph that was the subject of the motion in limine, defense counsel made no record of what he expected the evidence to be, when Mr. Burnett had been hunting, the circumstances of his moose hunting, and whether his moose hunting undercut any of his trial testimony. Defense counsel also did not ask the Court to excuse the jury so that the evidence could be properly brought before the Court for a ruling.

Compounding the issue of prejudice is Plaintiff's counsel's representation at oral argument that if the photograph of Mr. Burnett's hunting had been admitted into evidence or if, more broadly, evidence of his moose hunting had been admitted, witnesses would have testified that Mr. Burnett had wished to go moose hunting for

an extended time and after he finally won the Maine moose hunting lottery, his family made an extraordinary effort to transport him to moose hunting territory and to fix him in a hunting blind, so that he could realize his dream of successfully hunting a moose. Accepting Plaintiff's counsel's representation as an offer of proof, it is difficult to conceive how AmeriPort was prejudiced by the exclusion of this topic. In fact, the admission of the entire hunting story and AmeriPort's attempt to undercut Mr. Burnett's credibility because he had engaged in a successful moose hunt might well have harmed, not helped AmeriPort's defense.

### c. Suggestion of Specific Damages Amount

AmeriPort next contends that a new trial should be granted because Plaintiff's counsel committed harmful error in suggesting in closing argument specific damages amounts for Mr. Burnett's pain and suffering. *Id.* at 8. During her closing arguments in the compensatory damages phase of trial, Ms. White stated:

> MS. WHITE:      We're not here today to talk about whether they did it on purpose or whether they just did it by mistake. Maybe it was just someone overlooked something, but how it felt to Ryan is why we're here and the number that you put on that, there's nothing specific that I can tell you, which I do recognize makes your job difficult, but what I can say is that we think it's significant. Do we think it's, you know, 20,000, 50,000? I don't know. I think it's more significant, but it's for you to decide exactly what number you would put on this period of time in his life, this two years, little over two years that he suffered this way every day unnecessarily, again because here's a law that says you can't do this and they broke that law.

*Trial Tr. III* 354:2-15. At the time of the statement, AmeriPort did not object.[7] Nor did AmeriPort object at the conclusion of Ms. White's closing argument. AmeriPort

---

[7]      The record does not support AmeriPort's bald assertion that "AmeriPort and OPL undisputedly objected in a timely fashion and moved for a mistrial" *Def.'s Mot. for New Trial* at 10 n.3.   Neither

went on to complete its own closing argument, *id*. 354:24-362:17, and Ms. White put on a rebuttal. *Id*. 362:23-366:25. After the Court read the jury instructions and dismissed the jury for deliberations, it addressed counsel:

> THE COURT: So, are there any objections to the instructions on the part of the plaintiff?
>
> MS. WHITE: No, Your Honor.
>
> THE COURT: Any additions?
>
> MS. WHITE: No.
>
> THE COURT: Any objections on the part of the defendants?
>
> MS. DESKINS: Yes. We would reassert our objection as to the instruction on the number of employees.
>
> THE COURT: Okay. Any additions?
>
> MS. DESKINS: No, sir, Your Honor.
>
> THE COURT: So, I have a problem and I don't know what the solution is. I think you violated, Ms. White, the long-standing rule in the 1st Circuit not to mention a damage figure. You said was it 20,000 or 50,000, I don't know. That's a violation. You've got it in their head. That's the first time in 15 years anyone's violated it. This is not news. It's in Judge Hornby's summary of 1st Circuit authority concerning closing arguments. It's set forth in Bartlett versus Mutual Pharmacy Company, 678 F.3d 30 at 42, a 1st Circuit case (2012), in Bielunas versus F/V Misty Dawn, Inc., 621 F.3d 72 at 79, 1st Circuit (2010), and the 1st Circuit has said allowing counsel to request a dollar amount for pain and suffering, or allowing counsel to do so, was error under 1st Circuit precedent. They say lawyers cannot state in summation the number they think jurors should award for pain and suffering, and it precludes counsel from requesting a pain and suffering dollar amount in closing. You did it a little subtly, but I've never heard anyone ever go near it. I've heard lawyers say I can't suggest under 1st Circuit authority any dollar amount, but I think you've stuck the 20 to 50 in their head and I don't

AmeriPort nor Ocean Properties ever objected to Mr. Burnett's closing argument on such a basis. *See Trial Tr. III* 369:24-372:22.

know what to do with it. There is a statement of one -- there was no objection made to it, so they found it wasn't plain error on appeal for the judge to have allowed the lawyer to make the argument. Let me tell you what my problem is and, that is, I don't know how to fix it without overemphasizing it and there was suggestion that -- in the Bartlett matter, there was a suggestion that any amount mentioned by counsel is not evidence. It may be better to leave it alone. I don't know. I'll be guided by what you want me to do. Not what you -- you violated the rule -- I'll be guided by what you want me to do. If you want me to say something like any amount that counsel has suggested is not evidence and should not be considered by you, I'll do that. I think it may be not worth the candle, but that's what the 1st Circuit authority is, or I can just leave it alone. Whatever -- I'll do what you want me to do.

MS. DESKINS:    And I was aware when plaintiff's counsel mentioned the number that if I stood up and objected that I would call attention to it.

THE COURT:    Right.

MS. DESKINS:    And so I was in a situation where I couldn't -- was going to be caught no matter what I did, and I'm sensitive to the Court's position on it now that if the Court gives a curative instruction that we will calling more attention to. So, we are in definitely a bind here. I don't know how to fix this.

THE COURT:    Okay. I don't either and that's the reason why I didn't interrupt her. I just thought it would be –

MS. DESKINS:    And I had the same problem. I couldn't stand on my feet without calling attention to it.

THE COURT:    Yeah, the cure is worse than the problem. So, I mean I'll do what you want me to do.

MS. DESKINS:    I understand.

THE COURT:    I'll either ignore it or I'll instruct that -- I think the only other way to do it is to do what Bartlett did and state that -- remind them that any amount that counsel has suggested is not evidence.

MS. DESKINS:    I think that would be calling attention to it. What I think I'm going to do is make a motion for a mistrial on that issue because the bell has been rung and you can't take that out, and now that

that figure has been out there, I guess I would ask the Court to reserve until the jury comes back on that particular issue.

THE COURT:       So, you're moving for mistrial, but you don't want me to rule on it until they come back?

MS. DESKINS:       Yes, sir.

THE COURT:       So, if they come back at 20 or 50, you can say well, they obviously were unduly influenced?

MS. DESKINS:       Yes, sir.

THE COURT:       Okay. I'll reserve judgment on it.

*Id.* 369:24-372:22.

As the Court stated when addressing counsel at trial, the First Circuit held in *Bielunas* 621 F.3d at 79, that allowing counsel to suggest a damage award to the jury in an opening statement or closing summation is error. *Id.* The *Bielunas* Court explained:

> We forbid counsel from asking jurors to consider the amount of a party's ad damnum in crafting a damage award, *see Davis v. Browning–Ferris Indus., Inc.,* 898 F.2d 836, 837–38 (1st Cir.1990); *see also Wilson v. Bradlees of New England, Inc.,* 250 F.3d 10, 23 n. 25 (1st Cir.2001)—and we have cited approvingly a case outside this circuit for the point that lawyers cannot state in summation the number they think jurors should award for pain and suffering. *See Davis,* 898 F.2d at 837 (highlighting *Waldorf v. Shuta,* 896 F.2d 723 (3d Cir.1990)). Building on this foundation, we held in an unpublished opinion that *Davis* precludes counsel from requesting a pain-and-suffering dollar amount in closing. *Kimberly F. v. Mary Hitchcock Mem. Hosp. & Hitchcock Clinics, Inc.,* No. 93–1438, 1993 WL 498026, at *9–10 (1st Cir. Dec.3, 1993) (unpublished). Consistent with the *Davis* line of cases, district judges in this circuit have stopped lawyers from doing just that. *See Wilson,* 250 F.3d at 23 n. 25; *see also generally Budet–Correa v. United Parcel Serv.,* 322 F.Supp.2d 139, 141–42 (D.P.R. 2004) (discussing and applying *Davis* and the like). Consequently, measured by our precedents we conclude that the district judge here made a mistake, and that the mistake is obvious enough.

44

621 F.3d at 79.

AmeriPort argues that any suggestion of a specific damages amount is reversible error regardless of the facts of the case, citing *Wilson*, 250 F.3d at 10, and *Waldorf*, 896 F.2d at 723. *Def.'s Mot. for New Trial* at 9. The Court does not view the relevant caselaw as supporting this broad proposition. While the *Wilson* Court rejects the plaintiff's argument that the district court erred by failing to allow her to argue an ad damnum to the jury, stating in dicta "it would have been reversible error for the court to have allowed such an argument," the case did not actually involve counsel suggesting an ad damnum amount to the jury; therefore, the court did not address what it means for the court to "allow such an argument." 250 F.3d at 23 n.25 (citing *Davis*, 898 F.2d at 837. Likewise, in *Davis*, the First Circuit concluded that a district judge erroneously charged the jury according to state law practice regarding counsel's statement of the ad damnum amount, but that this did not rise to the level of plain error. *Id.* at 837. In *Waldorf*, cited by the First Circuit in *Davis*, the Third Circuit stated "[w]hile we hold that it is reversible error in this case, we recognize that each record must be examined to determine whether such an error may have sufficiently influenced the jury to constitute reversible error." 896 F.2d at 744 n.31.

The issue was addressed most recently, and most directly, by the First Circuit in *Bielunas*. 621 F.3d at 79. Like here, the defendant in *Bielunas* failed to object to comments regarding a specific damages award in the plaintiff's opening and closing statements, leaving the challenge unpreserved. *Id.* at 78. The First Circuit therefore evaluated the judge's denial of the motion for new trial under the plain error

standard, which requires "the mistake must also be prejudicial in a sense that there is a reasonable probability (not just a theoretical possibility) that it affected the result, and the result must be unjust, too." *Id.* at 79 (citing *United States v. Marcus,* 560 U.S. 258 (2010); *United States v. Padilla,* 415 F.3d 211, 225 (1st Cir. 2005) (Boudin, C.J., concurring) (en banc)). The First Circuit questioned whether the defendants could show, absent the comments of plaintiff's counsel, that a different damages award would have been returned by the jury, but ultimately based its conclusion that the plain error standard was not reached based on the fact that the district judge "made it clear that the lawyers' statements and arguments were not evidence and that the verdict must be reached on the evidence alone" and in light of the lack of any objection on the issue at trial. *Id.* In conclusion, the *Bielunas* Court stated, "[p]lain error is not an 'appellant-friendly' standard, and rightfully so: it keeps parties from rolling the dice on a favorable verdict and then raising problems on appeal that could have been easily fixed below." *Id.* at 80 (citations omitted).

The trial record in this case supports review under a plain error standard. AmeriPort did not object when Plaintiff's counsel suggested a specific amount during her closing statement, and did not object at the close of the argument or at the close of trial. After the jury was excused for deliberations, the Court specifically asked the parties if they objected to anything said during closing arguments. Both parties stated they had no additional objections. The Court raised the error and asked AmeriPort how it would like to proceed. AmeriPort moved for a mistrial, but asked

the Court to reserve ruling until the jury returned the verdict. AmeriPort rejected the Court's offer of a curative instruction.

To warrant a new trial, AmeriPort must demonstrate that it was prejudiced by the statement of specific damages. It failed to do so, and the record does not support a conclusion of prejudice. First, AmeriPort itself took no action at trial to mitigate any prejudice. It did not object to the suggestion of a specific damages amount at any time, even after being given a specific opportunity by the Court to do so. It was the Court that raised the issue. Moreover, AmeriPort rejected the Court's offer of a curative instruction, which the Court views as a rejection of the opportunity to mitigate any potential for prejudice. At the same time, the Court acknowledges that defense counsel acted well within her discretion in concluding that as a matter of trial strategy, it was wiser not to raise the issue in post-argument instructions because to do so might emphasize the Plaintiff's lawyer's suggested figures.

Second, AmeriPort offers no argument that Plaintiff's counsel's suggestion of $20,000 to $50,000 in damages, or a number "more significant", *Trial Tr. III* 354:9-12, had a reasonable probability of influencing the jury's compensatory award of $150,000. In *Bielunas*, the court questioned whether the defendant could show that it was reasonably probable that the jury would have awarded a different amount if plaintiff's counsel had not suggested the specific amounts in his opening and closing statements, where plaintiff's counsel "pushed for a $2,500,000 damages award, which he upped to $3,328,767 in his closing [and] the jury returned a $2,775,000 verdict . . ." 621 F.3d at 75. *Id.* at 79. Here, the numbers are nowhere near as similar as those

47

in *Bielunas*, where the First Circuit questioned whether they presented a reasonable probability of influencing the verdict. Furthermore, as in *Bielunas*, the Court in this case instructed the jury that the opening statements and closing arguments of counsel are not evidence in this case, *Trial Tr. I* 16:13:20, *id*. 23:24-24:4, and there is nothing to suggest that the jury failed to heed the Court's instructions and considered the impermissible suggestion of a damages amount.

Finally, the Court does not view the jury's award of $150,000 in compensatory damages as an "unjust outcome". As discussed in its order on co-defendant Ocean Properties' post-trial motions (ECF No. 240), the compensatory damages award of $150,000 is supported by the record evidence of the harm caused to Mr. Burnett by the Defendants when they failed to respond to his request for an accommodation. *Id*. at 52-54. The Court may only order a new trial when "the outcome is against the clear weight of the evidence such that upholding the verdict will result in a miscarriage of justice." *Conway*, 825 F.2d at 599. Here, despite the error of plaintiff's counsel, the outcome is supported by the evidence, and the Court denies the motion for a new trial.

### d. "Golden Rule"

Finally, AmeriPort alleges that "Plaintiff's counsel made Golden Rule arguments during closing arguments," a violation which "constituted reversible error. *Def.'s Mot. for New Trial* at 1, 11. According to AmeriPort, the following statements violated the "Golden Rule":

> For that period of two years, he dreaded it not just the days he would go, but can you imagine -- I mean sometimes we all dread going to work,

> you know, after a weekend or something, but for him it was that much
> worse because it just was a reminder every workday that he's disabled,
> people are looking at me, I feel ashamed, ignored and like I don't matter,
> and that's exactly why we're asking you to award damages . . . .

*Trial Tr. III* 352:7-18.

> First, I want you to keep in mind that this is about the fact that he had
> to fight and struggle just to get to work, and we all know that it can be
> hard just to get to work every day and you've heard evidence about just
> how hard it was for Mr. Burnett, and this was one more thing that he
> had to do to struggle to try to be normal.

*Id.* 336:18-23. AmeriPort objected after the second statement, during the closing argument. *Id.* 353:13-14 ("Your Honor, we're getting a little bit into Golden Rule. She keeps saying you, if you."). The Court overruled the objection. *Id.* 353:15.

In the First Circuit, it is improper for counsel to "suggest[] to the jury that it put itself in the shoes of a plaintiff to determine damages . . . because it encourages the jury to depart from neutrality and decide the case on the basis of personal interest and bias rather than on the evidence." *Forrestal v. Magendantz*, 848 F.2d 303, 309 (1st Cir. 1988). Courts have held arguments that use the phrase "can you imagine" to be impermissible under the Golden Rule, in some cases holding reversible error. *See Whitehead v. Food Max of Miss., Inc.,* 163 F.3d 265, 278 (5th Cir. 1998) ( "And I want for you to just for a couple of seconds to see-when I say start, that's ten seconds. Ten seconds. *And can you imagine how it would feel to have a knife in your side or a knife on your leg or a pistol at your neck for ten seconds?*" was impermissible Golden Rule argument constituting reversible error) (emphasis in original); *compare with Marcoux v. Farm Serv. and Supplies, Inc.*, 290 F. Supp. 2d 457, 465 (remarks such as "[c]an you imagine if you broke your wrist like this and had to have it put back

together with plates and screws, what that must have been like?" did not violate the Golden Rule "because they invited the jury to focus on the gravity of plaintiff's injuries, but did not tell the jurors directly or implicitly that they should award plaintiff the sum of damages that they themselves would desire if they found themselves 'in the plaintiff's shoes.'").

In *Okraynets v. Metropolitan Transportation Authority*, the court differentiated between cases like *Marcoux*, cited above, and those in which counsel directly "asked jurors to compensate plaintiff 'in such amounts as you jurors feel you, yourselves, would like to be compensated if the conditions happened to you the same as happened to [plaintiff]'" 555 F. Supp. 2d 420, 432 (S.D.N.Y. 2008) (quoting *Weintraub v. Zabontinsky*, 19 A.D.2d 906, 244 N.Y.S.2d 905 (2d Dep't 1963); (*citing Callaghan v. A Lague Express,* 298 F.2d 349, 350–51 (2d Cir.1962) (concluding that counsel cannot ask the jury to "treat [plaintiff] as you would like to be treated")); *Klotz v. Sears Roebuck & Co.,* 267 F.2d 53, 54–55 (7th Cir. 1959) (plaintiff's counsel asked jury to "give us the kind of deal that you would want to get").

The Court views the comments made by Plaintiff's counsel to be less direct, and therefore less prejudicial, than those deemed impermissible Golden Rule violations in analogous cases. Ms. White stated: "but can you imagine—I mean sometimes we all dread going to work, you know, after a weekend or something, but for him it was much worse because it was just a reminder every workday that he's disabled . . ." *Trial Tr. III* 352:7-18. This statement is a far cry from asking the jury to put themselves in the shoes of the Plaintiff or the Plaintiff's mother or father, as

in *Forrestal*, 848 F.2d at 303, or asking them to count to ten while imagining a knife being held to their necks. *Whitehead,* 163 F.3d at 278.

Even if the comments were considered a violation of the Golden Rule, a court must evaluate the case based on "the totality of the circumstances, including the nature of the comments, their frequency, their possible relevancy to the real issues before the jury, the manner in which the parties and the court treated the comments, the strength of the case . . ., and the verdict itself" to determine whether "the remarks constituted reversible error." *Forrestal*, 848 F.2d at 309 (citing *City of Cleveland v. Peter Kiewit Sons' Co.,* 624 F.2d 749, 756 (6th Cir. 1980)).

In this case, Plaintiff's counsel did not specifically ask the jury to put themselves in Mr. Burnett's shoes, so the nature of the comments does not weigh in favor of reversible error. With regard to frequency of the comments, AmeriPort claims two Golden Rule violations, but the Court only views the "can you imagine" comment of Plaintiff's counsel as a possible violation[8]; this, too, points toward harmless error. In contrast, the fact that Plaintiff's counsel made the possible error while describing the day-to-day harm suffered by Mr. Burnett, and then asked the jury to award damages, weighs in favor of reversible error. So too, does the manner

---

[8]     The second claimed violation is Plaintiff's counsel's statement:

First, I want you to keep in mind that this is about the fact that he had to fight and struggle just to get to work, and we all know that it can be hard just to get to work every day and you've heard evidence about just how hard it was for Mr. Burnett, and this was one more thing that he had to do to struggle to try to be normal.

*Trial Tr. III* 336:18-23.

The Court does not view this comment as a request for the jury to put itself in Mr. Burnett's shoes, but rather as a straightforward statement of the challenges Mr. Burnett faces.

in which the parties and the Court treated the comments, since AmeriPort timely objected, and the Court overruled the objection. Finally, considering the strength of the case and the verdict itself, the Court has already concluded that the compensatory damages verdict of $150,000 is supported by the evidence in the trial record of the harm suffered by Mr. Burnett as a result of the Defendants' failure to respond to his request, which points toward harmless error.

The *Forrestal* Court also considered the district court's instructions to the jury important to the analysis, concluding that "the district court effectively nullified the effect of the Golden Rule argument" by instructing the jury repeatedly that it must consider only the evidence when determining damages. 848 F.2d at 310. This Court provided similar instruction to the jury to decide the case based only on the evidence heard at trial. For example, in its preliminary instructions to the jury, the Court stated:

> The evidence from which you'll find the facts will consist of the testimony of witnesses, documents and other things received into the record as exhibits, and any facts to which the lawyers agree to or stipulate or that the Court may instruct you to find. Certain things are not evidence and must not be considered by you. I'll list them for you now. Statements, arguments and questions by lawyers are not evidence.

*Trial Tr. I.* 16:18-21.

> Mr. Burnett as the plaintiff has the burden of proving his case by what is called the preponderance of the evidence. That means that the plaintiff has to produce evidence which, considered in light of all of the facts, lead you to believe that what the plaintiff claims is more likely than not. To put it differently, if you were to put the plaintiff's and defendants' evidence on opposite sides of the scales, the plaintiff would have to make the scale tip somewhat on his side.

*Id.* 18:18-19:2.

I've just told you the opening statements by lawyers are not evidence. The same applies to closing arguments. They are not evidence either. In their closing arguments, the lawyers for Mr. Burnett and defendants will attempt to summarize and help you understand the evidence that was presented.

*Id.* 23:24-24:4.

The Court reinforced these preliminary instructions in its final instructions.

The Court stated:

In reaching your verdict, you may consider only the testimony and the exhibits received into evidence. Certain things are not evidence and you may not consider them in deciding what the facts are. I will list them for you. Arguments and statements by lawyers are not evidence.

*Id.* 324:18-23.

The plaintiff, Ryan Burnett, has the burden of proving his case by what is called the preponderance of the evidence. That means that Mr. Burnett has to produce evidence that, when considered in light of all the facts, lead[s] you to believe that what Mr. Burnett claims is more likely true than not. If the plaintiff fails to meet this burden, the verdict must be for the defendants.

*Id.* 324:4-10.

As the party bringing the claim, Mr. Burnett bears the burden of proof to show both the existence and the amount of his actual damages by a preponderance of the evidence. . ..

*Id.* 333:14-16. The Court views its preliminary and final instructions as likely having a similar effect on the jury as the instructions provided by the district judge in *Forrestal*.

Considering the totality of the circumstances surrounding the comments of Plaintiff's counsel, the Court concludes that they do not rise to the level of reversible error such that a new trial is warranted. A trial judge must uphold a verdict unless

it is "against the clear weight of the evidence such that upholding [it] will result in a miscarriage of justice." *Conway,* 825 F.2d, 598-99. The Court sees no indication that the errors made by Plaintiff's counsel during her closing argument prejudiced the Defendants, and the Court denies AmeriPort's motion for a new trial.

## IV. MOTION FOR REMITTITUR

AmeriPort advances identical arguments to those set forth in Ocean Properties' Motion for Remittitur (ECF No. 202), which was denied by the Court. The Court, therefore, denies AmeriPort's motion on the same basis.

## V. CONCLUSION

The Court DENIES Defendant AmeriPort LLC's Motion for Judgment as a Matter of Law (ECF No. 196); Motion for New Trial (ECF No. 197), and Motion for Remittitur (ECF NO. 198).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 30th day of September, 2019